UNITED STATES DISTRICT COURT
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

**MATTHEW EBO**

　　　　　**Petitioner**

**vs.**                                                                  No: ___2:22-CV-930___

　**ERIC TICE, SUPERINTENDENT,**

　**SCI-SOMERSET**

　　　　　**Respondents**

## PETITIONER'S COUNSELED PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY PURSUANT TO 28 U.S.C. §2254

## Procedural Background

1. Defendant was arrested and charged with, *inter alia*, criminal homicide and robbery for the May 16, 2011, at the Leechburg Garden apartment complex in Verona, Pennsylvania.

2. At trial Defendant was represented by Randall McKinney.

3. After a two-week trial Defendant was found guilty on all charges.

4. On November 28, 2012 Defendant was sentenced at Count 1, Criminal Homicide — First Degree to a term of life imprisonment; at Count 2, Robbery — Serious Bodily Injury to No Further Penalty; at Count 3, Robbery of a Motor Vehicle to a term of ten (10) to twenty (20) years of confinement to be served consecutively to Count 1; at Count 4, Carrying a Firearm Without a

License to a term of three and a half (3 ½) to seven (7) years to be served consecutively to Count 3; at Count 5, Persons Not to Possess a Firearm to a term of two and a half (2 1/2) to five (5) years of confinement to be served consecutively to Count 4; at Count 6, Conspiracy — Robbery — Serious Bodily Injury to a term of ten (10) to twenty (20) years of confinement to be served consecutively to Count 5; and at Count 7, Conspiracy — Criminal Homicide to a term of twenty (20) to forty (40) years of confinement to be served consecutively to Count 6.

5. After trial, Defendant had retained and was appointed several different appeals counsel.

6. Defendant's initial direct appeal resulted in his sentence being vacated and remanded for a re-sentencing on counts 3 and 6.

7. Defendant was resentenced accordingly on February 28, 2018.

8. Defendant's post sentence motion was denied, and he timely appealed.

9. Defendant discontinued his appeal on May 30, 2018.

10. On June 29, 2018, Defendant filed both a *pro se* Post-Conviction Collateral Relief Act Petition, as well as having had one filed by court appointed counsel Ms. Stavroulakis.

11. On December 13, 2019 Defendant's PCRA petition was denied.

12. The denial of this PCRA petition was subsequently affirmed by the Superior Court, and on July 26, 2021, Defendant's Petition for Allowance of Appeal was denied by the Supreme Court.

13. Thus, for the purpose of calculating Defendant's deadline for filing the instant Petition, Defendant has 335 days from July 26, 2021 or until June 26, 2022, to timely file.

14. The instant Petition is therefore timely.

**Factual Background**

15. On May 16, 2011, a shooting occurred in the parking lot at the Leechburg Garden apartment complex in Verona, Pennsylvania. (T.T. 8/20/12, p. 240).[1]

16. The shooting stemmed from the alleged robbery of Todd Mattox. (T.T. 8/20/12, pp. 246-261, Ex. 4-16).

17. During the alleged robbery Mr. Mattox suffered three gunshot wounds and subsequently died before first responders were able to arrive. (T.T. 8/20/12, at 246-261, Ex. 4-16).

18. Two eyewitnesses to the shooting, Saday Robinson and John Gardone, gave detailed reports to law enforcement about what they had seen .

19. Saday Robinson testified that she told law enforcement the following:

---

[1] The notation "T.T. 8/20/12" refers to Volumes I and II of the trial transcript for August 20,2012 through September 4, 2012.

a. She heard the sounds of an altercation above her apartment minutes before the shooting, followed by the sound of people running down stairs. (T.T. 8/20/12 at 527-528).

b. She looked out of her apartment window and saw Mr. Mattox being pushed out the front door of the apartment complex by two African American males with handguns. (T.T. 8/20/12 at 528- 529).

c. She heard Mr. Mattox pleading for his life offering the two males everything that he had as he backed away from them with his hands up while the men continued to walk towards him. (T.T. 8/20/12 at 529,531).

d. With their backs facing her one of the males shot at Mr. Mattox three (3) times.[2] (T.T. 8/20/12 at, 531, 580).

e. Ms. Robinson reported this male was a 5'7-5'9 tall with a medium build. (*Id*.)

f. She saw one of the males going through the pants pockets of Mr. Mattox before she saw the other male walk up to Mr. Mattox, stand

---

[2] On July, 24, 2012, Saday identified this individual as Defendant Matthew Ebo who is 6'3.

over his body, and shoot him directly in the head.[3] (T.T. 8/20/12 at 532-534).

g.  She then indicated that she saw the males get into Mr. Mattox's white Nissan and speed out of the parking lot. (T.T. 8/20/12 at 534).

h.  Ms. Robinson was unable to identify the shooters at that time.

20. John Gardone testified that Mr. Mattox was chased by two African American males before being shot several times in the parking lot of the Leechburg Gardens apartment complex. (T.T. 8/20/12 at 591-592). Mr. Gardone also saw the two suspects enter a white vehicle and speed out of the parking lot. (T.T. 8/20/12 at 492-493). Mr. Gardone was unable to identify the shooters.

21. Several other witnesses were interviewed by either Penn Hills police officers or Allegheny County detectives and none were able to positively identify the actors at that time.

22. The Defendants became suspects in this matter following a string of events which occurred over the course several months following the shooting.

23. On June 2, 2011, Defendant Thaddeus Crumbley was involved in a shooting in Swissvale, Pennsylvania. (T.T. 8/20/12 at 855-858). Two types of shell casings were recovered from the scene, including the same type of shell

---

[3] On July 24, 2012, Saday identified this individual as Defendant Thaddeus Crumbley.

casings that were found at Mr. Mattox's murder scene, those being from a .40 caliber Smith and Wesson Springfield Armory pistol. (T.T. 8/20/12 at 885-886).

24. One week later, on June 9, 2011, Asa Thompkins, a friend of Defendant Crumbley, was pulled over for a traffic stop in South Park, Pennsylvania. (T.T. 8/3/12 at 20; TR 8/20/12 at 1009).

25. Asa Thompkins was present during the June 2nd shooting. (T.T. 8/20/12 at 847, 852).

26. As a result of this traffic stop a Springfield Armory pistol was found under the front passenger seat of the car. When questioned about the pistol Mr. Thompkins said that the gun belonged to Crumbley. (T.T. 8/20/12 at 1010-1011).

27. On September 6, 2011, Thomas Julian Brown, an inmate at the Allegheny County Jail, wrote a letter to a detective working for Allegheny County Police Department requesting to speak with the detective who was handling the Todd Mattox homicide.

28. Mr. Brown indicated that he was willing to provide information pertaining to that case; specifically, that several months earlier he overheard Defendant

Crumbley bragging to his son, Leron Brown,[4] that he had "smoked" Todd Mattox. (T.T. 8/20/12 at 697-699).

29. Sometime before September 2011, Allegheny County Police received a letter from an inmate, Richard Carpenter, who was incarcerated at the Allegheny County Jail.

30. In the letter Mr. Carpenter informed the police that he had eyewitness information pertaining to the Mattox murder and wanted to come forward. (T.T. 08/28/12 1108).

31. After receiving the letter Mr. Carpenter was interviewed and informed detectives that on the day of the shooting he saw two men in a hallway with guns at a building next to the Leechburg Garden Apartments. (T.T. 08/21/2012 at 131-132). During the interview Mr. Carpenter told detectives he watched as the defendants followed Mr. Mattox across the parking lot and shot him. (T.T. 08/21/2012 at 132).

32. On December 2, 2011, Mr. Carpenter identified both defendants from a photo array as the men he saw shoot Mr. Mattox. (T.T. 08/22/12 at pp. 365).

---

[4] Leron Brown was killed in a shooting which occurred in the winter of 2012 and therefore was unable to testify at trial.

33. Relying on Mr. Carpenter's account of the murder and recognizing Mr. Carpenter as a material eyewitness, police decided to rule out Asa Thompkins as a potential suspect and focused on the Defendants. (T.T. 365), (T.T. 1108).

34. With the focus of the investigation now solely on the Defendants, the police went back and interviewed Saday Robinson to see if she would be able to pick the Defendants out of a photo array. Ms. Robinson was shown photo arrays of the Defendants on three separate occasions. Ms. Robinson was first shown a photo array on September 16, 2011, which contained an image of Defendant Crumbley. (T.T. 8/20/12, pp. 356-357). Ms. Robinson was unable to identify Defendant Crumbley. (T.T. 8/20/12, pp. 356-357). On November 4, 2011, Ms. Robinson was shown a photo array containing images of both Defendants and was unable to identify either of the Defendants. (T.T. 8/20/12, pp. 356-357).

35. On December 7, 2011, based only on information provided by Mr. Carpenter, police arrested and charged Defendant Ebo with Criminal Homicide and other crimes related to the May 16, 2011 shooting.[5]

---

[5] One count of Robbery, one count of Robbery of a Motor Vehicle, one count of Persons not to Possess Firearms, one count of Carrying Firearm without a License, and two count of Criminal Conspiracy to the Crime of Robbery and Conspiracy to Murder.

36. In October 2011, after failing to identify the Defendants, Ms. Robinson moved across the country, but she later returned to Allegheny County upon the request of Police who had informed her that they had suspects in custody.

37. On July 24, 2012, when presented with a photo array of the Defendants for a third time, Ms. Robinson identified both Defendants becoming only the second eyewitness to do so. (T.T. 8/20/12 at 540-543).

38. On August 21, 2012, a jury trial was held.

39. During opening arguments prosecutor Steve Stadtmiller referenced Mr. Carpenter's statements to the detectives about his eyewitness accounts of the shooting as well as his positive identifications of the Defendants. (T.T. 08/21/2012, pp. 131-132).

40. Specifically, Attorney Stadtmiller told the jury the following:

So they say what happened and in this case Richard Carpenter came forward in just such a manner. He was in trouble, he got caught with a gun, he was scared, he called the police. He tells the police I was in the building in the hallway with the defendants prior to the shooting and they both had guns. He describes the guns, he tells and he follows them as they go into the next building over at Leechburg Garden Apartments where Mr. Mattox is, and they both draw these firearms. Mr. Carpenter is now watching as these two men follow Mr. Mattox across the parking lot and shoot him and kill him. He was shown photo arrays, you say you know these guys, can you pick them out for us. Mr. Carpenter picked both defendants from separate photo arrays saying this was a shooter, this was a shooter. (T.T. 08/12/2012, pp. 131-132).

41. After opening statements concluded the Commonwealth called multiple witnesses to testify including Ms. Robinson and Mr. Carpenter.

42. When the Commonwealth called Ms. Robinson to testify, in addition to testifying to the above mentioned facts, she testified that when she had been shown the photo arrays she had mislead police when she was unable to identify the Defendants and on one occasion deliberately misidentified Defendant Ebo as someone else. (T.T. 8/20/12, p. 549).

43. However, when the Commonwealth called Mr. Carpenter to testify he did not appear.[6]

44. Upon finding out that Mr. Carpenter would not show up to testify, a Material Witness warrant was issued.[7]

45. Although Mr. Carpenter did not testify and had never provided any sworn statements, multiple law enforcement witnesses- including a prosecutor- testified to his account of the shooting and his positive identifications of the Defendants. (T.T. 1146) & (T.T. 08/21/2012, pp. 131-132) (T.T. p. 365,  p. 523, p. 1108, p. 1137)

46. On September 4, 2012, the trial concluded, and the jury found Defendant Ebo guilty on all charges.

---

[6] After providing police with his account of events Mr. Carpenter, in exchange for testifying at trial, was released from jail and into protective custody. In addition, Mr. Carpenter was given a subpoena to testify a week prior to the trial.

[7] Detective Anthony Perry was communicating with Mr. Carpenter through texts during trial and Mr. Carpenter would not show up to court. (T.T. 1203).

47. On November 28, 2012, Mr. Ebo was sentenced to life imprisonment.

**Petitioner Received Ineffective Assistance of Counsel**

A. DEFENDANT'S PROCEDURAL DEFAULT MAY BE EXCUSED
   PURSUANT TO *MARTINEZ V. RYAN*, 566 U.S. 1 (2012)

48. Defendant avers two core claims of trial counsel's ineffectiveness in the

instant matter.  First, trial counsel was ineffective for failing to object to any

reference to Carpenter's alleged identification of Defendant or request a

mistrial after Carpenter failed to appear; and second, that trial counsel was

ineffective for failing to ensure that a proper *Kloiber* instruction was given

to the jury.

49. Neither of these core claims were raised in state court collateral proceedings.

50. Procedural default occurs when "the prisoner ha[s] failed to meet a state law

procedural requirement." *Coleman v. Thompson*, 501 U.S. 722, 730 (1991).

Pennsylvania's procedural rules state that a defendant waives an ineffective

assistance of counsel claim unless he or she raises it during the first state

collateral review proceeding. *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d

726, 738 (Pa. 2002).

51. Defendant's procedural default may be excused if he can show cause for the

default and prejudice arising from failure to consider the claim. *United*

*States v. Frady*, 456 U.S. 152, 167-68 (1982). If cause and prejudice are

12

shown and the default excused, review of Ebo's claim is *de novo* because the state court did not consider the claim on the merits. *Bronshtein v. Horn*, 404 F.3d 700, 710 n.4, 715 (3d Cir. 2005).

52. Here, Ebo's claims relative to trial counsel's ineffectiveness for failing to preserve the *Crawford* and *Kloiber* issues were procedurally defaulted because they were not raised in PCRA proceedings.

53. Nevertheless, pursuant to the Supreme Court's decision in *Martinez v. Ryan*, 566 U.S. 1 (2012), counsel's failure to raise an ineffective assistance claim on collateral review may excuse a procedural default if: "(1) collateral attack counsel's failure itself constituted ineffective assistance of counsel under *Strickland*, and (2) the underlying ineffective assistance claim is "a substantial one.'"

54. Ebo satisfies these standards.

55. To prove ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), Ebo must prove "(1) that his counsel's performance was deficient, that is, it fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced his client," i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*

13

B. <u>Counsel was ineffective for failing to raise the claim that the trial court violated Defendant's 6th amendment right to confront witnesses against him when multiple Commonwealth witnesses referred to Carpenter's out-of-court statements to law enforcement that identified Ebo as one of the shooters, and for failing to request a mistrial, and PCRA counsel was ineffective for waiving this claim.</u>

56. In the instant case, trial counsel was ineffective for failing to object to hearsay testimony at trial and moving for a mistrial and PCRA counsel was ineffective by failing to raise an ineffective assistance of counsel claim based on a violation of Defendant's 6th amendment right under both the United stated constitution and the Pennsylvania Constitution to confront witnesses against him.[8]

57. The Sixth Amendment's Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. Amend. VI; *see United States v. Berrios*, 676 F.3d 118, 125, 56 V.I. 932 (3d Cir. 2012).

58. Where out of court "testimonial evidence" is at issue, the Sixth Amendment demands the unavailability of the witness *and* a prior opportunity for cross-examination of the declarant in order to be admissible at trial. *Crawford v. Washington*, 541 U.S. 36 (2004)(emphasis added).

---

[8] The Confrontation Clause of U.S. Const. amend. VI applies to the states through application of U.S. Const. amend. XIV.

59. The Confrontation Clause is therefore violated when hearsay evidence is admitted as substantive evidence against a defendant who has no opportunity to cross examine the declarant, or when the hearsay statement of an unavailable witness does not bear adequate indicia of reliability. *Kentucky v. Stincer*, 482 U.S. 730, 737 (1987).

60. Here, the Commonwealth and several of its witnesses testified to statements made by the Commonwealth's material witness Richard Carpenter and the statements he made to law enforcement regarding Defendant and Defendant's alleged involvement in the shooting.

61. During the Commonwealth's opening argument, the prosecutor informed the jury that an eyewitness, Richard Carpenter, had come forward to inform the police of his knowledge of the events. Counsel stated that Mr. Carpenter had witnessed the entire event, described the guns used in the shooting, watched as Mr. Mattox was killed, and picked both defendants from separate photo arrays identifying Defendants. (T.T. 08/22/12 at 131-132).

62. During trial, Commonwealth witness Detective Anthony Perry introduced photo arrays of Defendant and testified that he had shown them to Mr. Carpenter. (T.T. 08/23/12 at 338-339). After being recalled as a witness, Perry testified on direct that Defendant had become a suspect when he created the photo array in September 2011. (T.T. 08/29/12 at 1017). This

photo array was created after Carpenter was interviewed by Detectives. By

September 2011 no other witness besides Richard Carpenter had identified

Defendant as being involved with the shooting. Perry was in contact with

Mr. Carpenter via text messages in the days leading up to the trial and was in

contact with Mr. Carpenter the day of the trial when Carpenter informed

Perry that he would not be testifying. (T.T. at 08/29/12 at 1042-1043).

63. The Commonwealth also called District Attorney Mark Tranquilli to testify.

On direct examination Tranquilli actually testified to conversations he had

with Carpenter, identified Carpenter as an eyewitness to the shooting, and

testified to Carpenter's history of non-compliance with court orders. (T.T.

08/29/2012 at 1108). Mr. Tranquilli also testified that Mr. Carpenter was an

eyewitness to the events but had never testified under oath to statements he

made to police. (08/29/12 at 1108, 1146). On cross-examination by co-

defendant's counsel, Mr. Tranquilli testified that no homicide charges were

filed against Defendants until Mr. Carpenter came forward as an eyewitness.

(T.T. 08/29/2012 at 1137).

64. These multiple references to Carpenter's inculpation of Ebo were admitted

as substantive evidence.

65. There can be no dispute that Carpenter's out of court statements to law

enforcement- *including a prosecutor*- were "testimonial." *Accord, United*

*States v. Hinton*, 423 F.3d 355 (3rd Cir.)(identification of gunman while in the police cruiser was testimonial under *Crawford*).

66. It is impossible to conjure up a conceivably reasonable basis for Ebo's trial counsel to allow multiple references to Carpenter's statements to be introduced at trial.  Trial counsel could have no reasonable basis for failing to move for a mistrial after the Commonwealth's opening argument once trial counsel became aware that Mr. Carpenter would not be testifying at trial, and there can be no conceivably justifiable explanation for counsel to repeatedly allow law enforcement witnesses, including a prosecutor, to tell the jury what this corrupt and polluted source told them.

67. As the record currently stands, trial counsel's inaction was *per se* unreasonable.

68. Trial counsel's ineffectiveness denied Defendant his 6th amendment right to confront his accusers. "The right guaranteed by the Confrontation Clause includes not only a "personal examination, but also "(1) ensures that the witness will give his statements under oath—thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the 'greatest legal engine ever invented for the discovery of truth'; and (3) permits the jury that is to decide the defendant's fate to observe the

demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility." *Commonwealth v. Dixon*, 2022 PA Super 96.

69. Defendant was prejudiced by trial counsel's failure to object to testimony about Mr. Carpenter's statements to law enforcement implicating Defendant in the shooting.

70. The statements were not harmless as they substantially contributed to the verdict against Defendant as there was only one other witness-Saday Robinson- who identified Defendant as the shooter, Defendant would not have been charged without the statements made by Mr. Carpenter, and Mr. Carpenter was the only individual the Commonwealth mentioned as an eyewitness during their opening. Indeed, Mr. Carpenter was an important enough witness to be deemed "material" by the Commonwealth.

71. The only other eyewitness' testimony was inherently unreliable given the multiple inconsistencies in her testimony and her own admission that she lied to the police.

72. Allowing Carpenter's untested statements to be heard by the jury served not only as damning substantive evidence against Ebo, but also effectively rehabilitated Saday Robinson's otherwise incredible testimony.

73. Trial counsel's stunning failure in this regard is therefore a "substantial" instance of ineffectiveness.

74. Moreover, given the obvious s nature of trial counsel's failure in this regard, PCRA counsel was ineffective for failing to raise trial counsel's ineffectiveness.

75. There can be no reasonable basis for failing to raise a claim that implicated Ebo's fundamental right to confrontation- the violation of which sealed his fate at this trial.

76. Had PCRA counsel raised this claim, Ebo would have been awarded a new trial.

77. Consequently, Ebo's Sixth Amendment right to effective assistance of both trial and PCRA counsel was violated, as well as his 6th Amendment right to confront his accuser.

78. Given the foregoing, Ebo's procedural default should be excused, his core claim of ineffectiveness shoud be reviewed, and he should be awarded a new trial.

C. Trial Counsel was ineffective for failing to ensure a proper and adequate *Kloiber* Jury Instruction and PCRA counsel was ineffective for failing to raise the issue in collateral proceedings.

79. "When reviewing a challenge to jury instructions, the reviewing court must consider the charge as a whole to determine if the charge was inadequate, erroneous, or prejudicial." *Commonwealth v. Estepp*, 2011 PA Super 53, 17 A.3d 939, 946.

80. "Where a witness is not in a position to clearly observe the assailant, or he is not positive as to identity, or his positive statements as to identity are weakened by qualification or by failure to identify defendant on one or more prior occasions, the accuracy of the identification is so doubtful that the Court should warn the jury that the testimony as to identity must be received with caution." *Commonwealth v. Kloiber*, 378 Pa. 412, 106 A.2d 826-827 (Pa. 1964).

81. "A *Kloiber* instruction informs the jury that an eyewitness identification should be viewed with caution when either the witness did not have the opportunity to view the defendant clearly, equivocated on the identification of the defendant, or has had difficulties identifying the defendant on prior occasions." *Commonwealth v. Sanders*, 2012 PA Super 53, 42 A.3d 325, 332 (Pa. Super. 2012).

82. "A defendant is entitled to a *Kloiber* instruction where a witness: (1) was not in a position to clearly observe the defendant or is not positive as to identity; (2) equivocated on the identification; or (3) failed to identify the defendant on prior occasions." *Commonwealth v. Ali*, 608 Pa. 71, 10 A.3d 282, 303 (Pa. 2010).

83. Here, trial counsel was ineffective by failing to request the trial court to instruct the jury of all of the applicable factors in Jury Instruction 4.07A and 4.07B pertaining to Identification Testimony.[9]

84. PCRA counsel was ineffective for not raising this claim in Ebo's PCRA petition.

85. At trial the Commonwealth called Sanday Robinson to testify to what she witnessed on the night of the incident.

86. At trial Ms. Robinson testified to being shown photo arrays of Defendants on three prior occasions. On the first two occasions Ms. Robinson failed to identify the Defendants.

87. At trial Ms. Robinson testified that when she was first interviewed by law enforcement around the time of the incident she told them: the shooting occurred at night, she was scared during the shooting, she witnessed the incident transpire from her apartment window, the individuals who shot Mr. Mattox had their backs facing her during the incident, and initially reported that the individual who shot at Mr. Mattox was 5'7-5'8 with a medium build. (T.T.08/20/12 at 527-534).

88. At the time of the shooting Ebo was 6'3 and had a large build.

---

[9] In 2016, Jury Instruction 4.07A & 4.07B were combined into 4.07A alone.

89. When it came time to charge the jury the judge determined that a cautionary charge was required as a matter of law for the testimony given by Ms. Robinson.

90. During the jury charge the judge used the cautionary jury instruction 4.07A Identification Testimony. The judge administered the First Alternative During the jury charge the judge used the cautionary jury instruction 4.07 Identification Testimony. The judge administered the Second Alternative, and told the jury that:

In her testimony Saday Robinson has identified the defendants as the persons who have committed the crimes. There is a question of whether this identification is accurate. A victim or other witness will sometimes make a mistake when trying to identify a criminal. If certain factors are present the accuracy of identification testimony is so doubtful that a jury must receive it with caution

Identification testimony must be received with caution if the witness' positive testimony as to identity is weakened by her not identifying the defendants or identifying someone else as the criminals when shown photo arrays at various times before trial.

If you believe that this factor is present then you must consider with caution Saday Robinson's testimony identifying the defendants as the person who committed the crime. If, however, you do not believe that this factor is present, then you need not receive the testimony with caution. You may treat it like any other testimony.

The purpose of this jury instruction is to caution jurors of a witnesses' testimony when certain factors are present which may weaken a witness's ability to properly observe the perpetrators of a crime.

91. Jury Instruction 4.07 incorporates several aspects from *Kloiber.*

92. The factors applicable to the current matter from Jury Instruction 4.07A include, the witness's ability to witness the events due to poor lighting, the distance from where the witness observed the events to note their facial and other physical characteristics, whether the witness identified anyone else as the perpetrator, whether the witness was under high levels of stress during the incident and if so how did it affect their ability to accurately identify the perpetrators, and whether or not a witness previously misidentified the defendants.

93. Although the trial court instructed the jury to proceed with caution when considering Ms. Robinson's eyewitness identification based on her prior omissions and misidentifications the trial court did not instruct the jury as to all of the other appliable factors from Jury Instruction 4.07A listed above.

94. As Ms. Robinson was the only witness to testify at trial as to the identification of Ebo *any and all* factors which would weigh on her credibility to do so was of the utmost importance for the jury to consider.[10]

---

[10] Studies have  concluded that jurors misunderstand the accuracy of eyewitness identification. See, e.g., Elizabeth F. Loftus, et. al., Juror Understanding of Eyewitness Testimony: A Survey of 1000 Potential Jurors in the District of Columbia, 46 Jurimetrics J. 177 (2006); Handberg, Expert Testimony on Eyewitness Identification: A New Pair of Glasses for the Jury, 32 Am. Crim. L. Rev. 1013 (1995).

95. Rather than instructing the jury on all of the things it should have considered, the trial court only instructed the jury to focus on one thing, specifically, her prior omissions and misidentifications.

96. Ebo was prejudiced by trial counsel's ineffectiveness for failing to ensure that the jury should consider that all of the *Kloiber* factors were relevant in assessing Ms. Robinson's testimony.

97. This is a "substantial" claim of ineffectiveness because the trial court recognized that Robinson's testimony warranted a cautionary instruction, but it failed to give the complete and necessary instruction.

98. Trial counsel was duty bound to ensure that this did not happen. His failure caused Ebo to suffer prejudice because the admissible evidence against him was confined to questionable eyewitness testimony.

99. Moreover, Ebo was prejudiced by PCRA counsel's failure to raise this ineffective assistance of trial counsel claim.

100. PCRA counsel had no reasonable basis for failing to raise this claim because the importance of Robinson's "identification" was manifest and any instance of trial counsel's failure to challenge it doomed Ebo's chances at trial.

101. Had PCRA counsel raised this claim, Ebo should have been granted a new trial.

102.    As such, Ebo's Sixth Amendment right to effective assistance of trial

and PCRA counsel was violated by virtue of the above stated omissions.[11]

103.    Given the foregoing, Ebo's procedural default should be excused, this

claim should be reviewed, and he should be awarded a new trial.

**WHEREFORE**, Petitioner requests that a Writ of Habeas Corpus issue and

that he be released from custody if he is not re-tried within ninety (90) days of this

Court's decision.

**Respectfully Submitted:**

_____ /s/Todd M. Mosser_____
TODD M. MOSSER, ESQUIRE
Counsel for Matthew Ebo

DATE: 6/23/22

---

[11] These failures also deprived Ebo of his right to federal due process.  To be granted habeas relief based on an incorrect jury instruction, a petitioner must demonstrate that exclusion of the requested charge "violated some right which was guaranteed to the [petitioner] by the Fourteenth Amendment," not merely that it was "undesirable, erroneous, or even universally condemned." *Estelle v. McGuire*, 502 U.S. 62, 72, 116 L. Ed. 2d 385, 112 S. Ct. 475 (1991) (*citing Cupp v. Naughten*, 414 U.S. 141, 147, 38 L. Ed. 2d 368, 94 S. Ct. 396 (1973)). The federal habeas court must review the entire charge, because any single instruction-or lack thereof-is one of "several components of the trial that may result in the judgment of conviction." *Cupp,* 414 U.S. at 146.

## CERTIFICATE OF SERVICE

I hereby certify that I am this day serving the foregoing document upon the Respondent via first class mail to Eric Tice, Superintendent,  590 Walters Mill Rd, Somerset, PA 15510.


**RESPECTFULLY SUBMITTED,**


**/S/ Todd Michael Mosser**
**MOSSER LEGAL, PLLC**
**Attorney ID# 87534**
**448 North 10th St., Suite 502**
**PHILADELPHIA, PA 19123**
**215-567-1220**
**todd@mosserlegal.com**

**Date: 6/23/22**