IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | CRIMINAL DIVISION |
| VS. | CC 201202821 |
| MATTHEW EBO | MOTION IN LIMINE |

Judge Beth A. Lazzara

Filed on Behalf of the
Commonwealth of Pennsylvania

Counsel of Record for the
Commonwealth of Pennsylvania

STEPHEN A. ZAPPALA, JR.
DISTRICT ATTORNEY

By

Steven M. Stadtmiller
DEPUTY DISTRICT ATTORNEY
Pa. I.D. No. 53332

Office of the District Attorney
  of Allegheny County
401 Courthouse
Pittsburgh, Pennsylvania 15219

(412) 350-4407

FILED 2012 JUN -5 AM 8:55
DEPT OF COURT RECORDS
CRIMINAL DIVISION
ALLEGHENY COUNTY PA

Respondents' Exhibit 9

MOTION IN LIMINE

TO THE HONORABLE, THE JUDGE OF SAID COURT:

AND NOW, comes the Commonwealth of Pennsylvania by its attorneys, STEPHEN A. ZAPPALA, JR., District Attorney of Allegheny County, and STEVEN M. STADTMILLER, Deputy District Attorney, and represents the following:

1. On May 16, 2011 at approximately 7:35 PM Todd Mattox was shot multiple times and killed in the parking lot of the Leechburg Gardens Apartments in the Penn Hills section of Allegheny County, Pennsylvania. Police investigation into the matter locate several eye witnesses to the incident, stating that two black males shot and killed Mr. Mattox, then took his personal items, then left in his white car. One of those eye witnesses was able to identify the shooters by name and select them from photo arrays, said actors being Thaddeus Crumbley and Matthew Ebo. Trial of the above-captioned case is scheduled to proceed on June 11, 2012;

2. As part of the investigation into this shooting, Allegheny County Police Detectives obtained the emergency 911 recordings relating to the incident. Within minutes of the shooting, a number of people called in, describing the incident, with the actors, two black males, leaving in the victim's white

Respondents' Exhibit 9

car, and heading towards Leechburg Road. One of the 911 callers claimed to have witnessed the entire event, and gave his account of the incident, including a detailed description of the vehicle the shooters drove away from the scene in- a white four-door Saturn car, and a description of the shooter's outfit- a black t-shirt with gold markings. This witness gave only a first name, and has been unable to be identified or located for trial and is thus unavailable to the Commonwealth (or defense) to testify at trial. A copy of the transcript of this particular 911 caller has been attached as "Exhibit A";

    3. The Commonwealth posits that, given the available evidence and the legal standard which governs admissibility of such statements, the 911 transcript of the caller from the scene of the crime should be admitted into evidence at the trial via the **excited utterance** and the **present sense impression** exceptions to the hearsay rule. The facts of this case are squarely on point with those of Commonwealth v. Gray, 867 A.2d 560 (Pa.Super. 2005); Commonwealth v. Boczkowski, 846 A.2d 75 (Pa. 2004); and Commonwealth v. Hood, 872 A.2d 175 (Pa.Super. 2005). Gray tells us that excited utterances made to police which do not arise during the context of a formal, structured police interrogation are not

considered "testimonial statements" which would be inadmissible under Crawford v. Washington, 541 U.S. 36 (2004). Introduction of this 911 call into evidence at trial would not be a violation of the Confrontation Clause of the 6th Amendment of the United States Constitution, as the statements contained therein are not "testimonial" in nature. Rather, it is information given to 911 during the course of an ongoing police emergency, describing the number of actors and the escape vehicle, thereby permitting a bolo (be on the lookout) to be released moments after the shooting, in an attempt to apprehend the perpetrators and protect the community from an immediate danger. Such statements are admissible under the excited utterance exception to the hearsay rule. Pa. Rule of Evidence Rule 803(2), defines an excited utterance as "A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Also, "in order to assure that an unidentified bystander actually witnessed an event which is relevant at the time of trial... 'other corroborating evidence' that the declarant actually viewed the event of which he speaks" must be provided. Carney v. Pennsylvania Railroad Co., 240 A.2d 71, 75 (Pa. 1968).;

    4. In the present case, the 911 caller had just

witnessed the defendants shoot the victim "in the back and in the chest at least six (6) times." Witnessing the brutal murder surely qualifies as a startling event. Furthermore, "[T]he crucial question...is whether, at the time the statement is made, the nervous excitement continues to dominate while the reflective processes remain in abeyance." Commonwealth v. Gore, 396 A.2d 1302, 1305 (Pa. Super. 1975). The 911 call clearly shows that the caller is in a state of shock and excitement created by the event. The callers shock is most clearly evidenced by page two (2) line seventeen (17) of the 911 transcript where after being questioned about the shooter by 911, the caller responds "this will get me shot too." Furthermore, page one (1) line nine (9) through ten (10) shows the caller's shock as he trails off when coming to the realization that he just witnessed a murder;

5. In the present case there is corroborating evidence that the 911 caller actually saw what he reports to have seen. Similar to the description of the 911 caller, two eyewitnesses to the shooting will testify that they saw the defendant leave in a white car. Also, the eyewitnesses will report similar information as to what the caller witnessed in the parking lot. The eyewitness testimony is also key in that it distinguishes the present case from Commonwealth v. Hood, 872 A.2d 175 (Pa.Super. 2005), where no eyewitnesses could corroborate the 911 call;

6. The present sense impression exception to the hearsay rule is defined by Pa.R.E. Rule 803(1) as, "A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." The trustworthiness of the statement depends upon the timing of the declaration. Gray, 867 A.2d at 570.;

7. The 911 call is a description of an event and condition made immediately after the murder. When asked by the operator how long ago the murder occurred, the caller responded "five (5) minutes ago" (Page 3, line 1) Taking into account the caller had been on the phone with the operator for some time when this question was posed, his call to 911 must have been immediately after the shooting. Also the immediacy of the caller's statement is corroborated by the other 911 calls received at the same time describing the same event. The corroborating affect of other 911 calls and eyewitness testimony that have similar descriptions of the event such as "day, time, location, and manner of shooting itself," provide an indicia of reliability to the 911 caller's statements. This corroboration makes the present case similar to Hood, where the Court found the 911 calls admissible under the present sense impression exception. Hood, 872 A.2d 175;

Respondents' Exhibit 9

8. The introduction of the statements is absolutely critical to the Commonwealth's case. Refusal by the court to allow introduction of the statements would substantially handicap the Commonwealth's presentation of its case;

9. Inasmuch as the Commonwealth has the right to appeal from an adverse ruling on the admissibility of the defendant's statements, and inasmuch as an adverse ruling could not be appealed after trial has commenced, the Commonwealth respectfully requests that the matter be decided prior to the commencement of trial. *See, e.g.*, Commonwealth v. Gordon, 673 A.2d 866 (Pa. 1996) and Commonwealth v. Beale, 665 A.2d 473 (Pa. Super. 1995).

Respondents' Exhibit 9

WHEREFORE, based upon the foregoing, the Commonwealth respectfully requests that this Honorable Court conduct a pretrial hearing on the admissibility of the 911 calls transcript and enter an Order permitting introduction of those transcripts at the trial of the above-captioned case.

Respectfully submitted

STEPHEN A. ZAPPALA, JR.,
DISTRICT ATTORNEY

By: _____
STEVEN M. STADTMILLER
DEPUTY DISTRICT ATTORNEY

Respondents' Exhibit 9

| | |
|---|---|
| 1 | Caller: Yeah, is this the police? |
| 2 | 911: This is 911. |
| 3 | Caller: Yeah, yeah we got shots fired at Leechburg Gardens in Penn Hills. |
| 4 | 911: How many? |
| 5 | Caller: I'd say like six (6) to ten (10). |
| 6 | 911: Ok is there an apartment number? |
| 7 | Caller: I have no idea. |
| 8 | 911: Ok, alright, we're gonna get the police out there. |
| 9 | Caller: I just know that someone got shot in the parking lot. Dude is |
| 10 | definitely dead though. Yeah they blew, they they… |
| 11 | 911: What, so you you actually have a male? |
| 12 | Caller: Yeah there's a male. |
| 13 | 911: In the parking lot? |
| 14 | Caller: In the parking lot. (inaudible) |
| 15 | 911: Where was he shot? |
| 16 | Caller: He was shot in the back and in the chest at least six (6) times. At |
| 17 | least six (6) times. |
| 18 | 911: Yeah. Hang on. --- |
| 19 | 911: (off phone to co-worker) They have a victim in the parking lot |
| 20 | (inaudible) |
| 21 | Caller: Uh yeah dude's dead. |
| 22 | 911: He's definitely dead? |

1

| | |
|---|---|
| 1 | Caller: Yeah, I mean I'm not up on him yet but he's definably dead. He |
| 2 | just took six (6) shots to the chest. |
| 3 | 911: Ok, can anybody get close enough to him? |
| 4 | Caller: I'm about to be right up on him. |
| 5 | 911: Ok |
| 6 | Caller: Hold on |
| 7 | 911: Yeah |
| 8 | Caller: (off phone to someone else) I got 25 (inaudible) |
| 9 | Caller: Yeah I'm back, I'm sorry |
| 10 | 911: Alright did you see anybody? Did you see anybody who shot him? |
| 11 | Caller: Hold on, yeah this guy's definitely dead he's shot in the head |
| 12 | 911: Ok, did you see who shot him? |
| 13 | Caller: Yeah I did |
| 14 | 911: Ok, is that person still there? |
| 15 | Caller: Negative |
| 16 | 911: Where did he go? |
| 17 | Caller: Hold on, let me get away from people. This will get me shot too. |
| 18 | Alright, they they left in a white Saturn heading towards Leechburg Road. |
| 19 | 911: Ok, black males, white males? |
| 20 | Caller: Black males, two (2). |
| 21 | 911: Ok, did you get a license plate or anything on them? |
| 22 | Caller: No I did not. |
| 23 | 911: And when did this happen just now? |

2

Respondents' Exhibit 9

1       Caller: Yeah like five (5) minutes ago.

2       911: Ok, alright they're already on the way. I'm just gonna try and stay

3  on the phone with you. What is your name?

4

5       911: Ok....Alright we're getting a lot of calls on this are there a lot of

6  people gathering?

7       Caller: Yeah there's like ten (10) of us.

8       911: Ok

9       Caller: Maybe twelve (12).

10      911: Is there any other commotion, any other fights or anything going on?

11      Caller: Nope.

12      911: Ok ---- Do you have any other description of the car, other than that

13  it was a white Saturn? Was it newer, was it older, were the windows tinted?

14      Caller: No, it was a 4 door white Saturn. There was no....

15      911: Ok, did it have rims or anything?

16      Caller: No.

17      911: Ok, did you get a description of the males? What they were

18  wearing?

19      Caller: One was wearing like a black t-shirt.

20      911: Ok.

21      Caller: With some gold on it.

22      911: Alrigh, alirght --Well the police are already on their way ok.

23      Caller: Yeah that's good to know.

3

Respondents' Exhibit 9

1   911: Yeah if anything changes just give us a call right back.

2   Caller: Ok bye.

Respondents' Exhibit 9

V E R I F I C A T I O N

I, Deputy District Attorney Steven M. Stadtmiller, the undersigned, do hereby declare that the statements of fact set forth in the foregoing motion are true and correct to the best of my knowledge, information and belief and are made subject to the penalties related to unsworn falsification to authorities under Section 4904 of the Pennsylvania Crimes Code, 18 Pa. C.S. §4904.

_____
Steven M. Stadtmiller
Deputy District Attorney

6-4-12
Date

Respondents' Exhibit 9

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | CRIMINAL DIVISION |
| VS. | CC 201202821 |
| MATHEW EBO | |

### PRELIMINARY ORDER

AND NOW, to-wit, this _____ day of _____, 2012, it is hereby ORDERED, ADJUDGED and DECREED that the Commonwealth's Motion in Limine filed in the above-captioned case shall be heard and disposed of on the _____ day of _____, 2012, at _____ (a.m.)(p.m.) before the undersigned.

BY THE COURT:

_____, J.

Respondents' Exhibit 9

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | CRIMINAL DIVISION |
| VS. | CC 201202821 |
| MATTHEW EBO | |

<u>ORDER OF COURT</u>

AND NOW, to-wit, this \_\_\_\_\_ day of _____, 2012, it is hereby ORDERED, ADJUDGED, and DECREED that the Commonwealth be and is hereby PERMITTED to introduce into evidence the 911 transcript at the trial of the above-captioned case, limited to the portion of the 911 call attached to this motion as "Exhibit A".

BY THE COURT:

_____, J.

Respondents' Exhibit 9

CERTIFICATE OF SERVICE

I hereby certify that, on this 5th day of June, 2012, I have caused to be served upon the persons listed below a true and correct copy of the within motion.

Service by first class mail addressed as follows:

>Randall McKinney, Esquire
>429 Forbes Avenue, Suite 1400
>Pittsburgh, PA 15219

>The Honorable Beth A. Lazzara
>Fifth Floor
>Allegheny County Courthoouse
>Pittsburgh, PA 15219

>Helen M. Lynch, Esquire
>Criminal Court Administrator
>535 County Courthouse
>Pittsburgh, PA  15219

_____
Steven M. Stadtmiller
Deputy District Attorney

Respondents' Exhibit 9