IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA,   CRIMINAL DIVISION

v.   CC No.: 2012 2821

MATTHEW EBO,   THE HONORABLE BETH LAZZARA
     Defendant.

**POST-VERDICT MOTION:
MOTION FOR EXTRAORDINARY
RELIEF**

Filed on Behalf of Defendant:

Matthew Ebo

Counsel of Record for this Party:

Randall H. McKinney
PA ID# 209003

Law Office of Randall H. McKinney
429 Forbes Avenue, Suite 1400
Pittsburgh, PA 15219

P: (412) 390-4531
F: (412) 261-1793

FILED
2012 OCT -5 AM 9:05
DEPT. OF COURT RECORDS
CRIMINAL DIVISION
ALLEGHENY COUNTY PA

**ORIGINAL**

Respondents' Exhibit 23

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA,    CRIMINAL DIVISION

v.

CC No.: 2012 2821

MATTHEW EBO,
        Defendant.    THE HONORABLE BETH LAZZARA

## MOTION FOR EXTRAORDINARY RELIEF

AND NOW, comes the Defendant, Matthew Ebo, by and through his attorney, Randall H. McKinney, and avers the following:

1. The Defendant was denied a fair trial when the Court permitted the testimony of Saday Robinson despite the Commonwealth's inability to provide exculpatory and identification evidence. This Honorable Court stated during a hearing on identification procedures that the Commonwealth would be required to provide the specific photo-array evidence this witness was shown, in which Saday Robinson was unable to identify the Defendant and identified another actor, before the Commonwealth would be permitted to present her testimony. Although the Commonwealth was unable to produce the photo-array evidence, the witness was still permitted to testify. Allowing Saday Robinson to testify without this evidence denied the Defendant a fair trial. In addition, Ms. Robinson's ability to identify the Defendant from a subsequently-presented photo array came after initially making no identification of the Defendant, followed by media exposure, which tainted her subsequent identification.

2. There was insufficient evidence to convict the Defendant and the verdict was against the weight of the evidence, as indicated by:
   a. a number of inconsistencies in the testimony of Saday Robinson regarding the identification of the Defendant; and
   b. photo-arrays in which the Defendant was not identified

3. The Commonwealth prevented Defendant from having a fair trial by failing to timely turn over discovery, including critical identification procedures and photo-arrays used in the investigation against him including photo-arrays in which the Defendant was not identified.

Respondents' Exhibit 23

WHEREFORE, based on the within reasons the Defendant requests that Extraordinary Relief/a new trial be granted forthwith.

                                                        Respectfully Submitted

                                                        Randall H. McKinney

Respondents' Exhibit 23

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA,     CRIMINAL DIVISION

v.                                CC No.: 2012 02821

MATTHEW EBO,                      THE HONORABLE BETH LAZZARA
    Defendant.

## ORDER OF COURT

AND NOW, to-wit, this _____ day of _____, 2012, it is hereby ORDERED, ADJUDGED, AND DECREED that the Motion for Extraordinary Relief on the above captioned case is hereby:

_____

_____

_____

_____

BY THE COURT:

_____, J.

Respondents' Exhibit 23

## CERTIFICATE OF SERVICE

I, Wendy L. Williams, hereby certify that a true and correct copy of the within Motion for Extraordinary Relief was served in the manner indicated, this 5th day of October, 2012 upon the following:

The Honorable Beth Lazzara
510 Allegheny County Courthouse
436 Grant Street
Pittsburgh, PA 15219
Via Hand Delivery

DDA Steven Stadtmiller
c/o Allegheny County District Attorney's Office
401 Allegheny County Courthouse
436 Grant Street
Pittsburgh, PA 15219
Via Hand Delivery

Helen Lynch, Court Administrator
Allegheny County Courthouse
436 Grant Street
Pittsburgh, PA  15219
Via Hand Delivery

_____
Randall H. McKinney

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA,     CRIMINAL DIVISION

v.                                CC No.: 2012 02821

MATTHEW EBO,                      THE HONORABLE BETH LAZZARA
       Defendant.

**BRIEF IN SUPPORT OF POST-VERDICT MOTION: AMENDED MOTION FOR EXTRAORDINARY RELIEF**

Filed on Behalf of Defendant:

Matthew Ebo

Counsel of Record for this Party:

Randall H. McKinney
PA ID# 209003

Law Office of Randall H. McKinney
429 Forbes Avenue, Suite 1400
Pittsburgh, PA 15219

P: (412) 390-4531
F: (412) 261-1793

Respondents' Exhibit 23

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA,   CRIMINAL DIVISION

                v.                                     CC No.: 2012 02821

MATTHEW EBO,                          THE HONORABLE BETH LAZZARA
         Defendant.

**BRIEF IN SUPPORT OF AMENDED MOTION FOR EXTRAORDINARY RELIEF**

**Background**

Matthew Ebo (hereinafter "Defendant') was charged and convicted with one count of Criminal Homicide, one count of Robbery, one count of Robbery of a Motor Vehicle, one count of Persons not to Possess Firearms, one count of Carrying Firearm without a License, and two count of Criminal Conspiracy to the Crime of Robbery and Conspiracy to Murder. He now seeks Extraordinary Relief and a New Trial.

**Motion for Extraordinary Relief**

> Rule 704 of the Pennsylvania Rules of Criminal Procedure provides as follows:
> (B) Oral Motion for Extraordinary Relief.
> (1) Under extraordinary circumstances, when the interests of justice require, the trial judge may, before sentencing, hear an oral motion in arrest of judgment, for a judgment of acquittal, or for a new trial.
> (2) The judge shall decide a motion for extraordinary relief before imposing sentence, and shall not delay the sentencing proceeding in order to decide it.
> (3) A motion for extraordinary relief shall have no effect on the preservation or waiver of issues for post-sentence consideration or appeal.

Pa.R.Crim.P. 704(B) (emphasis added). The Comment to Rule 704 provides further guidance on when a motion for extraordinary relief is appropriate:

Under paragraph (B), when there has been an error in the proceedings that would clearly result in the judge's granting relief post-sentence, the judge should grant a motion for extraordinary relief before sentencing occurs. Although trial errors may be serious and the issues addressing those errors meritorious, this rule is intended to allow the trial judge the opportunity to address only those errors so manifest that immediate relief is essential. It would be appropriate for counsel to move for extraordinary relief, for example, when there has been a change in case law, or, in a multiple count case, when the judge would probably grant a motion in arrest of judgment on some of the counts post-sentence. Although these examples are not all-inclusive, they illustrate the basic purpose of the rule: when there has been an egregious error in the proceedings, the interests of justice are best served by deciding that issue before sentence is imposed. Because the relief provided by this section is extraordinary, boilerplate motions for extraordinary relief should be summarily denied.

**1. The Defendant was denied a fair trial when the Court permitted the testimony of Saday Robinson.**

The Commonwealth was permitted to introduce the testimony of a Ms. Saday Robinson who claimed to be able to identify Defendant as a perpetrator of the crimes at issue. However, it was not until fourteen months after the crime and several failed attempts at picking Defendant out of photo arrays that Ms. Robinson finally was able to point to Defendant as the perpetrator. Ms. Robinson testified that in one photo-array, she pointed to a person other than the Defendant. This photo-array was not given to the defense. Brady v. Maryland, 373 U.S. 83 (1963).

Specifically, there had been multiple news broadcasts prior to the point Ms. Robinson finally was able to identify Defendant. Defendant asserts that these conditions indicate that the identification procedure was impermissibly suggestive required suppression of her testimony evidence at trial. The Commonwealth failed to submit evidence indicating that Ms. Robinson's purported ability to identify Defendant at trial has any independent basis apart from the media influence in this case. The faultiness of her recollection was exemplified by the fact that she repeatedly was unable to pick out Defendant in photo arrays at points much closer temporally to the crime being prosecuted herein.

8

Respondents' Exhibit 23

Despite Defendant's analysis of the issue in pre-trial motions, the Court permitted the Commonwealth's testimony, much to the prejudice of Defendant. Following the suggestive pre-trial identification procedure, Ms. Robinson should not have been permitted to make an in court identification since the prosecution failed to establish by clear and convincing evidence that the totality of the circumstances affecting the witness's identification did not involve a substantial likelihood of misidentification. See <u>Neil v. Biggers</u>, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d at 401 (1972); <u>Simmons v. United States</u>, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); <u>United States v. Wade</u>, 388 U.S. 218, 88 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); <u>United States ex rel. Thomas v. State of New Jersey</u>, 3 Cir., 472 F.2d 735 (1973); <u>United States v. Holiday</u>, 3 Cir., 457 F.2d 912 (1972). Rather, the evidence failed to show that Robinson had an independent basis (outside the media broadcasts) for arguable ability to identify the Defendant.

Here, Ms. Robinson failed to give to police a description of the assailant right after the incident that matched the description of Defendant. Most importantly, Ms. Robinson provided no excuse for her inability to identify Defendant until <u>fourteen</u> months after the crime. Hence, this Court improperly concluded that the victim crystalized her identification of the Defendant as a result of the assault and not as a result of the media coverage.

Case law is clear that if a pre-trial identification is inadmissible, either because the accused was denied counsel or because of suggestiveness, an ensuing in-court identification is also inadmissible unless it can be shown to be based on a source independent of, and not tainted by, the pretrial identification. <u>Commonwealth v. Spencer</u>, 442 Pa. 328, 275 A.2d 299 (1971). The Commonwealth failed to provide sufficient evidence showing that Robinson's purported ability to identify Defendant was independent of the media exposure in this case and failed to explain why Robinson previously and repeatedly failed at identifying Defendant in photo arrays.

9

Respondents' Exhibit 23

Reliability is the linchpin in determining the admissibility of an identification. <u>Manson v. Brathwaite</u>, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). Ms. Robinson's identification of Defendant as the purported offender was not imbued with sufficient reliability so as to allow admission of this evidence. Rather, this identification was the result of the corrupting effect of media coverage of the incident, and not the independent result of her observations at the scene of the crime, an assertion supported by the fact that she was unable to positively identify Defendant in various photo arrays for <u>fourteen</u> months. Under these circumstances, it was improper for the Court to allow admission of Robinson's identification testimony.

Further, this testimony significantly prejudiced Defendant since there was very little to connect him to the crime scene and thus this evidence most likely had disproportionate effect on the jury's determination that Defendant had any connection with the homicide being prosecuted. Accordingly, Defendant respectfully requests this Court to reverse the conviction against him, as it was integrally tied to inadmissible and highly prejudicial evidence. The <u>Brady</u> violations and additional exculpatory and identification evidence not turned over to the Defendant prior to trial prevented the Defendant from effectively preparing and litigating this case in totality.

**2. There was insufficient evidence to convict the Defendant; the verdict was against the weight of the evidence.**

Defendant was convicted of the following offenses: Homicide, Robbery, Robbery of a Motor Vehicle, Persons not to Possess Firearms, Carrying Firearm without a License, Criminal Conspiracy to the Crime of Robbery, and Criminal Conspiracy to the crime of Murder.

In the homicide, Mr. Mattox was seen driving his rental car to the scene of the crime, he exited, there was an interaction with some other men, Mattox was shot, other individuals drove the vehicle away from the scene, the vehicle was later found abandoned and burned out in Wilkinsburg, and the victim's cell phone was found thrown over an embankment alongside

Respondents' Exhibit 23

Route 376. No evidence suggested a relationship between Defendant and his co-Defendant. No evidence suggested a relationship between Defendant and the victim. No physical evidence tied Defendant to the scene of the crime. No evidence suggested what property might have been taken from the victim so as to support a robbery charge. No testimony was introduced as to the source of conversations the victim made preceding his death (despite the fact that police found the victim's cell phone). No fingerprints, blood evidence, or other forensic evidence ties Defendant to the scene of the homicide. In fact, the <u>only</u> evidence arguably linking Defendant with the crime was the highly incredible testimony of Saday Robinson who, as more fully described above, only identified Defendant as a culprit months after initially observing photo arrays, at which initial point she could not identify Defendant. Moreover, despite claiming to have not had any internet exposure, which could explain why she suddenly, after months, decided that Defendant was the theretofore unidentified suspect, testimony at trial indicated that she had a Facebook account during the period in question and had posted to it. This not only indicated that she did have exposure to the internet – and most likely public media and social media coverage of the killing – but also showed her to be a liar. Defense counsel was denied the request to explore this falsehood further. In addition, Ms. Robinson's testimony was plagued with a number of inconsistencies which cumulatively showed her to be an incredible witness.

    In sum, despite the dearth of evidence linking Defendant to any of the crimes committed the day Mr. Mattox was murdered, the jury came back with a guilty verdict on all counts, clearly rooted in the unreliable testimony of Ms. Robinson. Defendant now respectfully request this Court to Grant the Extraordinary Relief of a new trial in response to this.

11

Respondents' Exhibit 23

**3. The Commonwealth prevented Defendant from having a fair trial by failing to timely turn over discovery, including critical identification procedures and photo-arrays used in the investigation against him and photo-arrays in which the Defendant was not identified.**

Before trial, and prior to the July 24, 2012 court ordered identification procedure, the Commonwealth failed to turn over potentially exculpatory evidence, namely identification procedures and photo arrays used in the investigation against Defendant, so as to place Defendant at an unfair disadvantage. Not only were these photo arrays tainted, rendering any identification flowing from them suspect, and not only was Ms. Robinson initially unable to identify Defendant from these arrays, but, in addition, the arrays were not turned over to the Defense as required by Discovery rules. In addition, witness Robinson clearly testified she identified another person as the actor in this case. This Honorable Court, recognizing the significance of this testimony and the identification evidence not turned over to the defense, stated during pre-trial proceedings that unless said evidence was turned over to the defense forthwith, Ms. Robinson would not be permitted to testify.

It is hornbook law that a criminal defendant is due access to exculpatory evidence in the Commonwealth's possession. Under Brady and subsequent decisional law, a prosecutor has an obligation to disclose all exculpatory information material to the guilt or punishment of an accused, including evidence of an impeachment nature. See, e.g., Commonwealth v. Strong, 563 Pa. 455, 761 A.2d 1167, 1171 & n. 5 (2000). To establish a Brady violation, an appellant must prove three elements: [1] the evidence [at issue] was favorable to the accused, either because it is exculpatory or because it impeaches; [2] the evidence was suppressed by the prosecution, either willfully or inadvertently; and [3] prejudice ensued. Commonwealth v. Lambert, 584 Pa. 461, 884 A.2d 848, 854 (2005) (citation omitted). The evidence at issue must have been "material evidence that deprived the defendant of a fair trial." Commonwealth v. Johnson, 572 Pa. 283,

12

Respondents' Exhibit 23

815 A.2d 563, 573 (2002). "Favorable evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

Defendant asserts that the discovery violations in this case significantly hindered his ability to mount a defense. Accordingly, Defendant respectfully request this Court to reverse his conviction.

4. **The Commonwealth was erroneously permitted to introduce tainted photo identifications of Defendant as the shooter.**

At trial, Commonwealth witness Richard Carpenter's statements to police were misrepresented. These misstatements particularly misinformed the jury as to his purported identification of the Defendant in a photo-array. In addition, Defendant contends that police exerted improper influence over Richard Carpenter during his interviews (see Exhibit A) which led to his purported identification of Defendant as the shooter.

In the same vein, the Commonwealth introduced at trial, through witness Allegheny County Detective Steve Hitchings, a photo-array including a picture of the Defendant in hospital clothing. Significantly, the array described as the "nappy-headed photograph" of the Defendant. Detective Steve Hitchings testified that he showed the photo-array to witness Saday Robinson who could not identify the Defendant as the culprit.

A photographic identification is unduly suggestive when the procedure creates a substantial likelihood of misidentification. Commonwealth v. Hughes, 521 Pa. 423, 441, 555 A.2d 1264, 1272-73 (1989) (citations omitted). The burden is on the Commonwealth to establish that the identification procedure was not suggestive. Id.

See also Com. v. Johnson, 668 A. 2d 97 (Pa. 1995).

13

Respondents' Exhibit 23

The prosecutorial misconduct in this case – the improper closing argument reference in conjunction with the significant discovery violations as well as the manipulation of the photo arrays and improper influence of witnesses in relation to that photo array evidence – have combined to prevent Defendant from receiving a fair trial, warranting discharge of this case. See Com. v. Smith, 615 A. 2d 321 (Pa. 1992) (discharging Appellant where prosecutorial misconduct was sufficiently prejudicial so as to preclude granting of retrial under double jeopardy principles.)

WHEREFORE, based on the within reasons the Defendant requests that Extraordinary Relief/a new trial be granted forthwith.

Respectfully Submitted

*/s/ Randall H. McKinney*
Randall H. McKinney

## CERTIFICATE OF SERVICE

I, Randall H. McKinney, hereby certify that a true and correct copy of the within Motion for Extraordinary Relief was served in the manner indicated, this 5th day of October, 2012 upon the following:

The Honorable Beth Lazzara
510 Allegheny County Courthouse
436 Grant Street
Pittsburgh, PA 15219
Via Hand Delivery

DDA Steven Stadtmiller
c/o Allegheny County District Attorney's Office
401 Allegheny County Courthouse
436 Grant Street
Pittsburgh, PA 15219
Via Hand Delivery

Helen Lynch, Court Administrator
Allegheny County Courthouse
436 Grant Street
Pittsburgh, PA 15219
Via Hand Delivery

_____
Randall H. McKinney

15

Respondents' Exhibit 23