IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY,
PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA

V.                                                                              1194 WDA 2013
                                                                                CC No. 201202821
MATTHEW EBO,
    Petitioner

MEMORANDUM OF LAW IN SUPPORT OF
REQUEST FOR NEW TRIAL BASED UPON NEW EVIDENCE

NOW COMES the Petitioner, MATTHEW EBO, by his attorneys from the Law Office of the Public Defender of Allegheny County; Elliot C. Howsie, Public Defender, Brandon P. Ging, Deputy – Appellate Division, and Victoria H. Vidt, Assistant Public Defender and Appellate Counsel, and respectfully requests that this Honorable Court grant Mr. Ebo's motion for a new trial. Following the evidentiary hearing on October 29, 2015, this Court permitted the submission of briefs to support Mr. Ebo's request. This timely Memorandum of Law now follows.

*Newly Discovered Evidence – Standard for grant of a new trial*

Under Pa.R.Crim.P. 720(c), a post-sentence motion seeking a new trial based upon after discovered evidence must be filed in writing promptly after such discovery. *See Commonwealth v. Rivera*, 939 A.2d 355, 358-59 (Pa. Super. 2007) (stating procedure when newly discovered evidence is found while the direct appeal was pending). In this case, the evidence of Saday Robinson's recantation of her trial

1

testimony was received on July 29, 2015, and a petition was filed in the Superior Court on August 5, 2015. The petition was timely filed.

Moreover, the standard for determining whether to grant a new trial based upon newly discovered evidence is well-settled: "To warrant relief, after-discovered evidence must meet a four-prong test: (1) the evidence could not have been obtained before the conclusion of the trial by reasonable diligence; (2) the evidence is not merely corroborative or cumulative; (3) the evidence will not be used solely for purposes of impeachment; and (4) the evidence is of such a nature and character that a different outcome is likely." *Id.* at 359. These four prongs have been met in Mr. Ebo's case.

### *The evidence could not have been obtained before the conclusion of trial by reasonable diligence.*

Ms. Saday Robinson did not come forward at any point prior to trial or during trial regarding the testimony contained in the video and supporting affidavit. Prior to trial, Ms. Robinson was in protective custody and had been relocated to another state; she was clearly unavailable to Mr. Ebo and Mr. Crumbley. Further, Ms. Robinson refused to speak with defense counsel prior to trial. Only after conviction, when the judgment of sentence was on appeal to the Superior Court of Pennsylvania, did Ms. Robinson come forward with her recantation. Ms. Robinson also explained to defense investigator Fox that she lied at trial, despite knowing that she committed the crime of perjury by lying under oath, that she had lied because police officers

Respondents' Exhibit 42

had promised her help with obtaining custody of her son, and that she was paid for her testimony.[1] This information could not have been obtained by due diligence prior to the conclusion of trial. *See, e.g., Commonwealth v. Loner*, 836 A.2d 125 (Pa. Super. 2003) (*en banc*), *appeal denied*, 852 A.2d 311 (Pa. 2004) (stating that "we reject the Commonwealth's assertion that the victim's recantation in this case is not truly after-discovered evidence because Appellant knew prior to trial that the victim was not telling the truth."); *Commonwealth v. McCracken*, 659 A.2d 541, 545 (Pa. 1995) (holding that recantation testimony qualified as after-discovered evidence because the witness had identified the defendant at the preliminary hearing and at trial, which foreclosed defense counsel's ability to persuade the witness to change her identification at trial through cross-examination).

### *The evidence is not merely corroborative or cumulative, nor is it used for mere impeachment.*

Saday Robinson's recantation testimony is not merely corroborative as it is substantive, exonerating eyewitness testimony that Mr. Ebo did not commit this crime. At trial, Mr. Ebo contended that he was not the person who committed the homicide. Ms. Robinson's testimony that she saw Mr. Ebo there was the *sole* evidence that contradicted his account.[2] The recantation is new evidence, not

---

[1] Investigator Fox reported on the discussions between Ms. Robinson and himself, but counsel is unable to provide citations to the transcript from the evidentiary hearing as, even though ordered that day and asked to be "expedited," they have not yet been provided by the court reporter.

[2] This is a distinction between the two petitioners in this matter.

3

Respondents' Exhibit 42

corroborative of any other evidence that the jury also considered. Moreover, Ms. Robinson never testified to the jury about her exculpatory evidence, thus, it is not cumulative.

Notably, at the evidentiary hearing on this matter, Assistant District Attorney Stadtmiller argued that Ms. Robinson was not the only witness who inculpated Mr. Ebo. *This is wholly incorrect.* Mr. Stadtmiller claimed that Richard Carpenter testified as an eyewitness as well. Mr. Carpenter <u>never</u> testified in this case. In fact, during trial, testimony was taken from then Deputy District Attorney Mark Tranquilli about this very witness. Mr. Tranquilli testified: "as I came to meet Mr. Carpenter and prepare him for the preliminary hearing and the testimony at the preliminary hearing, yes, I satisfied myself that he was a witness to this homicide." NT, Jury Trial, Vol. 2, at 1116. However, Mr. Carpenter did not testify at the preliminary hearing. *Id.* Defense counsel asked the witness if Mr. Carpenter had testified in any proceedings in this case, including the current trial. *Id.* at 1116-1117. The answer was negative. *Id.* Thus, despite ADA Stadtmiller's assertion at the hearing that he had another eyewitness, Ms. Saday Robinson was the *only* witness at trial that connected Mr. Ebo to the homicide in this case.

In *Commonwealth v. McCracken*, 659 A.2d 541, 549-50 (Pa. 1995), our Supreme Court found that the defendant was entitled to a new trial following the recantation of the Commonwealth's main witness. The witness testified at trial that

4

he saw McCracken enter, then leave, a deli where a man had been shot and killed. 659 A.2d at 542-43. Immediately after the incident, the witness had told police that he did not recognize the man who entered the deli. *Id.* at 543. However, three days later, the witness implicated McCracken, stating that he had gone to school with McCracken and recognized him. *Id.* At trial, McCracken offered an alibi and maintained that another had committed the crimes. *Id.* McCracken was found guilty of second-degree murder and other offenses. *Id.*

Several years later, while serving time in a New Jersey prison, the witness contacted McCracken's trial attorney and indicated that he wished to recant his trial testimony. *Id.* At the evidentiary hearing on a motion for a new trial based upon after-discovered evidence, the witness testified that he had not told the truth at trial, that he did not know who it was that he saw entering and leaving the deli, and that he wished to clear his conscience by telling the truth. *Id.* at 544. The witness further testified that he had been beaten in prison, and that he and his family had been threatened by the trial testimony/conviction. *Id.* However, the court found that the threats and intimidation had reasonable explanations other than coercing the witness to recant his trial testimony. *Id.* Although the trial court did not believe the entirety of the witness's testimony at the evidentiary hearing, saying that the witness was "no paragon of truth," *id.* at 544-545, the court ordered a new trial. The court stated that

it believed the witness's testimony at the evidentiary hearing that he did not know who he saw at the deli that day. *Id.*

Even while noting that recantation testimony "is one of the least reliable forms of proof, especially when it constitutes an admission of perjury," the Pennsylvania Supreme Court affirmed the award of a new trial. *Id.* at 545. The Court reasoned:

> [The witness's] recantation is not merely cumulative or corroborative given the tenuous nature of the circumstantial evidence connecting [McCracken] to the crime and the inability of any other witness to make a positive identification of the perpetrator. In this case, where the only Commonwealth witness who identified the perpetrator has recanted his testimony, such evidence can not be considered cumulative or corroborative because the defendant claimed that he did not commit the crime in question. This was the essence of [McCracken's] defense and the ultimate question in [McCracken's] trial. Thus, [the witness's] recantation is neither cumulative, corroborative, nor for impeachment purposes.

*McCracken, supra,* 659 A.2d at 545.

Likewise in the case at bar, the recantation of Saday Robinson is not cumulative evidence, corroborative evidence, or impeachment evidence. Rather, the recantation is direct and compelling testimony that Mr. Ebo was not present at the scene of the crime. The jury should have been able to evaluate this evidence during their deliberations. As they were unable to do so, a new trial is required.

### *The evidence is of such character that, had the jury known of it during trial, a new outcome is likely.*

Arguably, the most important consideration in determining whether a new trial is necessary is whether the recantation testimony is of such a character that a

6

new outcome would have resulted had the recantation been disclosed to the jury. In this case, the recantation is of such immense importance.

The recantation of Saday Robinson as shown by Defense Exhibits A and B is a complete repudiation of her trial testimony. In both the CD and the affidavit, Ms. Robinson admits to lying at trial when she identified both Mr. Ebo and Mr. Crumbley as the shooters. She explains that her trial testimony implicated the defendants because the police had promised her assistance with housing and with getting custody of her child if her testimony helped garner a conviction. Of course, at the evidentiary hearing Ms. Robinson recanted her recantation, saying now that she only provided the recantation testimony after being offered $25,000 from an associate of one of the defendants, and also after being physically threatened. At this point, however, Ms. Robinson's testimony is so full of inconsistencies that a jury must be given the opportunity to have all the information in order to adjudge whether Mr. Ebo is guilty.

Specifically, Ms. Robinson testified on August 20, 2012, during a pre-trial hearing on whether her identification had been tainted by pre-trial publicity. She also testified in front of the jury as a fact witness. During this testimony, several different stories emerged, and Ms. Robinson admitted to giving false information several times.

7

Respondents' Exhibit 42

### *Examples of Saday Robinson's false/misleading testimony*

When first asked, Saday Robinson testified that nobody had told her who had shot the victim. NT, Vol. I, at 42. Ms. Robinson later testified that an upstairs neighbor told her that "Mo" did it, referring to the light skinned defendant, Mr. Ebo. NT, Vol. I, at 43, 169, 180. Still later, Ms. Robinson testified that Ace told her that "Mat-Mat"[3] was responsible for the shooting, and the motive was robbery of a pound of marijuana. NT, Vol. I, at 58, 171.

When being questioned by police immediately after the shooting, Ms. Robinson described the light-skinned male (Mr. Ebo) as being five-foot seven-inches or five-foot eight-inches tall, with a medium build. NT, Vol. I, at 48, 167. As this Court recognized at the evidentiary hearing, and as the Allegheny County Jail screen shows, Mr. Ebo is actually six-feet, two-inches tall, and weighs 270 pounds. Thus neither the height nor the weight of the light-skinned suspect is anything close to the actual description of Mr. Ebo.

Police showed at least three photo arrays to Ms. Robinson. The first array was the day after the murder, and no photos were identified as the gunmen. NT, Vol. I, at 55. This array may have included only female photos, the testimony was confused about this. *See, e.g.*, NT at 81.

---

[3] This is also listed as "Mac-Mac" in the notes of testimony. NT, Vol. I, at 171. The correct pronunciation is unclear.

Respondents' Exhibit 42

In June of 2011, Ms. Robinson informed the police of Ace's discussion of "Mat-Mat" being one of the shooters. NT, Vol. I, at 58. Police did not show her an array at this time.

In September of 2011, two detectives showed Ms. Robinson a group of photos in a car near to her Grandmother's home. NT at 60. Ms. Robinson did not identify anyone from this array. NT at 61, 548. Mr. Crumbley, at least, was included in this array. NT at 548. It is unclear whether Mr. Ebo's photo was included in this group shown to Ms. Robinson, although testimony later at trial makes it appear that Ebo's picture was one of the choices. Ms. Robinson admitted at trial that she recognized Mr. Crumbley's photo, but she neglected to point it out to police at that time. NT at 548.

In November 2011, following her grandmother's funeral, Saday Robinson was shown several photo arrays. Ms. Robinson admitted at the pre-trial hearing that during this photo array she "picked someone out but I didn't pick out the right person" and that she "did it on purpose." NT at 59, 66, 552, 554-556. Specifically, Ms. Robinson told police that some unrelated male "looked like" the light-skinned guy (Mr. Ebo). NT at 67. This testimony showed that both Mr. Ebo and Mr. Crumbley were included in the November arrays but were not identified. NT at 548-549. Ms. Robinson also said that she had seen these arrays in a prior interview with

9

Respondents' Exhibit 42

police. NT at 66. This is why Mr. Ebo believes that his picture was also included in the September array.

After the pre-trial hearing, but before Ms. Robinson returned to the stand to testify in front of the jury, ADA Stadtmiller told the trial court that after his discussion with police and the witness, the "misidentification" at the November array "never happened." NT at 153. After returning to the stand, Ms. Robinson testified that she had not seen the photos in the November array previously. NT at 157. She also, however, testified about identifying the wrong person at a photo array, and doing so intentionally. NT at 162. Ms. Robinson told police that someone unrelated to the case "looked like" the light-skinned gentleman. NT at 164-167.

In July of 2012, just weeks before trial, police contacted Ms. Robinson through another relative to come back to Pittsburgh, look at photos, and perhaps testify at trial. NT at 69, 557. One of the officers in connection to this photo array viewing told Ms. Robinson that police believed that they had arrested the perpetrators who had committed the crime. NT at 174, 557. The same arrays were shown, and this time Ms. Robinson identified Mr. Ebo and Mr. Crumbley. NT at 541-544. This was the only time Ms. Robinson identified Mr. Ebo to police. NT at 558. She also personally identified them in the courtroom as being responsible for the shooting death of the victim. NT 528, 531-533. This identification may have occurred, however, not from seeing the defendants at the scene of the shooting, but

rather from seeing their pictures multiple times in the arrays. Police told Ms. Robinson that they had the men who did it, and they were in these arrays. It is not inconceivable that Ms. Robinson would thus choose those pictures most familiar to her, the ones she had seen several times in the arrays.

As a final example, Ms. Robinson testified at trial that she had no access to the Internet, so she could not have seen news reports that included photos of the two suspects, Mr. Ebo and Mr. Crumbley. NT at 71, 157-159. Yet, in the recantation testimony, Ms. Robinson indicated that she did see news reports prior to returning to Pittsburgh for trial. This changed at the evidentiary hearing, where she said that she only saw news reports after the trial was concluded. Also, Ms. Robinson had a Facebook page, first set up in 2009, which included 29 different profile pictures, as well as photos of her child. NT at 626-634, 644-646. The Facebook site also included comments that were identified as coming from Ms. Robinson. Ms. Robinson claimed that a friend set up the account for her, including uploading all the different pictures and commenting under Saday Robinson's name. While this scenario is possible, her account is improbable; the testimony is clearly not accurate.

### *Conclusion – a new trial is required*

Given that Ms. Robinson's identification is the only evidence linking Mr. Ebo to this homicide, and given all the discrepancies in Ms. Robinson's testimony (the recantation and the recantation of the recantation, the admission of being deceitful

Respondents' Exhibit 42

to police and knowingly pick the wrong person from a photo array, or not picking photos even though she recognized them, the contradictory testimony about access to the internet, and the fact that Ms. Robinson's initial description of the shooter to police does not even slightly match Mr. Ebo), a new trial should be ordered in this case.

Again, the evidence against Mr. Ebo was far from overwhelming. The *only* evidence tying Mr. Ebo to this incident is the identification by Ms. Robinson. Without Ms. Robinson's testimony, the Commonwealth cannot meet its burden of proving that Mr. Ebo was the perpetrator of this crime. The jury is entitled to all versions of Ms. Robinson's testimony as this information is critical to the outcome of this case. If the jury believed the recantation testimony as set forth in Exhibits A and B, a not guilty verdict would likely have been issued. Without any evidence against him, Mr. Ebo would have been legally entitled to an acquittal.

In *Commonwealth v. Mosteller*, 284 A.2d 786 (Pa. 1971), our Supreme Court considered whether a new trial should be awarded when a prosecutrix recanted her testimony after trial, and that testimony was the only evidence upon which the Commonwealth depended to establish that the defendant was guilty. The Court stated that a new trial was necessary "so that a new jury may pass on the prosecutrix's credibility in light of subsequent events [i.e., the recantation]." 284 A.2d at 786.

Respondents' Exhibit 42

*Mosteller* concerned a situation where a fifteen year old girl, named Frieda, accused her father of entering the bathroom while she was bathing, caressing her bosom, and then taking the girl to his bedroom to have sex with her. *Id.* Frieda testified that intercourse lasted for five minutes, that she had no pain, and that no emission occurred. *Id.* The father strenuously denied that these events occurred, admitting to being in the house alone with Frieda but claiming that he was asleep the entire time. *Id.* at 787. Following his conviction for statutory rape and other offenses, the father submitted a request for a new trial, arguing that Frieda wished to retract her trial testimony. *Id.* Frieda recanted in court, even after the Commonwealth attorney explained the penalties of perjury to her. *Id.* The trial court denied the request for a new trial, and the Superior Court affirmed that decision.

The Supreme Court reversed, noting that Frieda gave "the only testimony which could possibly have led to appellant's conviction. Not an iota of other corroborating evidence was offered." *Id.* at 788. Thus, the Supreme Court ruled that it was "a clear abuse of discretion not to award a new trial under these circumstances and thereby allow a new jury to pass on the child prosecutrix's credibility." *Id. See also Commonwealth v. Medina*, 92 A.3d 1210 (Pa. Super. 2014) (awarding a new trial because the jury should review the credibility of the contradictory testimony to determine which version was credible). Thus, even though the trial court did not believe Frieda's recantation, a new trial was necessary.

Respondents' Exhibit 42

*See Commonwealth v. McCracken, supra*, 659 A.2d 541, 546 (Pa. 1995) (holding that a new trial was required following the sole incriminating witness's recantation of his trial testimony, even though the trial court discounted much of that witness's testimony at the recantation hearing), *and Commonwealth v. Fiore*, 780 A.2d 704 (Pa. Super. 2001) (co-defendant's statement that the defendant was innocent of the charge of conspiracy to murder another, even though the trial court found it to be of "questionable validity," would have likely affected the outcome of trial; thus, a new trial was ordered).

The interests of justice require the grant of relief to Mr. Ebo in this unusual situation. There is a substantial danger that Mr. Ebo was not the perpetrator and he was wrongly convicted. At least one version of Ms. Robinson's testimony proves that Mr. Ebo is innocent. The jury should have access to all of Ms. Robinson's testimony, including her recantation, before making the ultimate decision in this case. Therefore, a new trial is imperative.

Respondents' Exhibit 42

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY,
PENNSYLVANIA
<u>CRIMINAL DIVISION</u>

COMMONWEALTH OF PENNSYLVANIA,

     v.                                        1194 WDA 2013
                                              CC. No. 201202821

MATTHEW EBO,
          Petitioner

## PROOF OF SERVICE

I, Victoria H. Vidt, Assistant Public Defender and Appellate Counsel, certify that a true and correct copy of this Motion has been served upon the following counsel of record, via hand delivery:

Steven Stadtmiller, Esquire
Office of the District Attorney
401 Allegheny County Courthouse
436 Grant Street
Pittsburgh, Pennsylvania 15219
(412) 350 - 4400.

Thomas McCaffrey
Criminal Court Administrator
307 Allegheny County Courthouse
436 Grant Street
Pittsburgh, PA 15219
(via Clerk of Courts Office)

The Honorable Beth A. Lazzara
Room 521
Allegheny County Courthouse
Pittsburgh, PA 15219
(via hand delivery)

_____
VICTORIA H. VIDT
Appellate Counsel
*Counsel of Record*

Date: November 9, 2015

15

Respondents' Exhibit 42