**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | : | |
| v. | : | |
| MATTHEW EBO, | : | |
| Appellant | : | No. 92 WDA 2016 |

Appeal from the Judgment of Sentence November 28, 2012
in the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0002821-2012

BEFORE: OLSON, STABILE, and STRASSBURGER*, JJ.

MEMORANDUM BY STRASSBURGER, J.:  **FILED JUNE 21, 2017**

Matthew Ebo (Appellant) appeals from the judgment of sentence imposed following his conviction for first-degree homicide and related offenses. We affirm Appellant's convictions, but vacate his judgment of sentence and remand for resentencing.

Because we write only for the parties, a full recitation of the facts is unnecessary. Relevant to this appeal, Appellant and co-defendant Thaddaeus Crumbley (Crumbley) (collectively, the co-defendants), were tried jointly in the Court of Common Pleas of Allegheny County on charges related to the May 16, 2011 shooting death of Todd Mattox. A jury found both men guilty of first-degree homicide; robbery - serious bodily injury; robbery of a motor vehicle; two violations of the Uniform Firearms Act: carrying a firearm without a license and possession of firearms by a

---

* Retired Senior Judge assigned to the Superior Court.

Respondents' Exhibit 53

prohibited person; conspiracy to commit criminal homicide; and conspiracy to commit robbery - serious bodily injury. On November 28, 2012, during the joint sentencing hearing, Appellant was sentenced to a term of life imprisonment for his homicide conviction, and an aggregate term of 46 to 92 years of consecutive imprisonment on the remaining counts. Relevant herein, as part of the aggregate sentence, the trial court imposed consecutive ten-to-20-year sentences at count three (robbery of a motor vehicle) and count six (conspiracy to commit robbery - serious bodily injury).

On November 30, 2012, Appellant's trial counsel moved to withdraw from representation. The trial court granted this request by order dated December 12, 2012. After being appointed by the court, appellate counsel from the Allegheny County Public Defender's Office filed an emergency petition for leave to file post-sentence motions *nunc pro tunc*, which was granted. Appellant's post-sentence motion was subsequently denied by operation of law on June 26, 2013.

On July 25, 2013, counsel timely filed a notice of appeal to this Court, which was docketed at 1194 WDA 2013. However, before the appeal was heard, counsel filed an application for remand based upon a claim of after-discovered evidence. This Court granted counsel's request and ordered the

Respondents' Exhibit 53

trial court to conduct a hearing to determine whether Appellant's claim merited a new trial.[1]

On October 29, 2015, the trial court held a joint hearing on the co-defendants' claims of after-discovered evidence. On December 22, 2015, the trial court denied the requested relief. Appellant filed timely a notice of appeal, and both Appellant and the trial court have complied with the mandates of Pa.R.A.P. 1925.

Appellant raises four issues for our review.

I. Did the trial court abuse its discretion in failing to award [Appellant] a new trial based upon the recantation of the sole witness connecti[ng] him to the crime?

II. Was the evidence that [Crumbley] was involved in gun violence and possessed a firearm two weeks after the homicide inadmissible evidence of other bad acts and was it completely irrelevant to whether [Appellant] was involved in the homicide when the subsequent incident had no connection to [Appellant]?

III. Should identification evidence have been suppressed when the highly suggestive pre[-]trial identification procedure tainted the main eyewitness'[s] in-court identification of [Appellant]?

---

[1] Crumbley's case followed a similar post-trial trajectory. Crumbley, through counsel, timely filed a notice of appeal after the November 28, 2012 sentencing. His appeal was docketed at 1997 WDA 2012. On January 5, 2015, while Crumbley's case was pending on appeal before this Court, his counsel filed a petition for remand on the basis of after-discovered evidence. This Court initially denied Crumbley's request, as well as his request for reconsideration of the same, and oral argument was scheduled for August 11, 2015. However, on August 11, 2015, before argument occurred, this Court remanded Crumbley's case for an evidentiary hearing on the after-discovered evidence claim.

Respondents' Exhibit 53

> IV. Was the trial court's imposition of sentence under the unconstitutional statute, 18 Pa.C.S. § 9712, illegal when the factfinder never found the facts necessary beyond a reasonable doubt for the imposition of the mandatory minimum sentence?

Appellant's Brief at 12 (unnecessary capitalization and trial court answers omitted).

Appellant first claims that the trial court erred in denying his motion for a new trial based on after-discovered evidence. Appellant's Brief at 27-39. We address this claim mindful of the following.

> To warrant relief, after-discovered evidence must meet a four-prong test: (1) the evidence could not have been obtained before the conclusion of the trial by reasonable diligence; (2) the evidence is not merely corroborative or cumulative; (3) the evidence will not be used solely for purposes of impeachment; and (4) the evidence is of such a nature and character that a different outcome is likely. At an evidentiary hearing, an appellant must show by a preponderance of the evidence that each of these factors has been met in order for a new trial to be warranted.

**Commonwealth v. Rivera**, 939 A.2d 355, 359 (Pa. Super. 2007) (citation omitted).

The after-discovered evidence at issue is the unsworn statement of eyewitness Saday Robinson in which she recanted her pre-trial and in-court identification of the co-defendants. The certified record shows the following. The May 16, 2011 shooting that resulted in Mattox's death occurred outside of Robinson's apartment. Robinson was presented with a number of photo arrays following the shooting, but did not identify Appellant as one of the shooters until July of 2012. At trial, Robinson made a positive in-court

- 4 -

Respondents' Exhibit 53

identification of both co-defendants, and noted that it was fear of retaliation that prevented her from identifying the men in the initial photo arrays. Robinson was cross-examined extensively as to the credibility of her identification.

In 2014, after both co-defendants had been sentenced, Robinson was interviewed by a defense investigator. This interview was recorded in writing and on video; however, Robinson was not sworn, nor did she give the statement under penalty of perjury. Robinson told the investigator that she did not witness the shooting, that her trial testimony was fabricated, and that her identification of the co-defendants was coerced by the police.

Robinson was called to testify at the October 29, 2015 evidentiary hearing. At that time, she recanted her statements to the investigator and claimed that her 2014 recorded statement was untruthful. When asked why she lied, she explained that she had been threatened by persons close to Appellant and Crumbley and had been offered a large sum of money to recant her trial testimony. However, Robinson affirmed at the evidentiary hearing that she was telling the truth when she identified Appellant and Crumbley as the shooters during their trial.

Appellant argues that he met his burden under **Rivera** and is entitled to a new trial based on Robinson's statement to the defense investigator because (1) the evidence of her recantation could not have been obtained before the conclusion of trial, (2) the evidence is not corroborative or

Respondents' Exhibit 53

cumulative, (3) the evidence would not be used solely for the purposes of impeachment, and (4) the recantation is of such "immense importance" that a new outcome would have resulted had the jury been permitted to hear it. Appellant's Brief at 27-32.

As our Supreme Court has explained,

> [r]ecantation testimony is extremely unreliable. When the recantation involves an admission of perjury, it is the least reliable form of proof. The trial court has the responsibility of judging the credibility of the recantation. Unless the trial court is satisfied that the recantation is true, it should deny a new trial. An appellate court may not disturb the trial court's determination absent a clear abuse of discretion.

**Commonwealth v. Henry**, 706 A.2d 313, 321 (Pa. 1997) (citations omitted).

Here, the trial court determined that a new trial was not warranted because, at the evidentiary hearing on the co-defendants' claims of after-discovered evidence, Robinson "credibly recanted her unsworn recantation statements" made to the investigator. Trial Court Opinion, 12/22/2015, at 5. In so holding, the court found credible Robinson's explanation for why she made false statements to the investigator only to later recant those statements at the hearing. **Id.** The court explained as follows.

> As noted by the parties, [] Robinson provided testimony at the October 29, 2015 evidentiary hearing, during which she recanted the statements that she had made to [the] defense investigator … in videotaped and handwritten form. The videotaped and handwritten statements served as the recantation evidence upon which the defendants have relied in seeking a new trial based on after-discovered [] evidence. It should be noted that [] Robinson never took an oath to tell the

Respondents' Exhibit 53

truth prior to giving the videotaped statement and did not write the handwritten statement under penalty of perjury. During her testimony at the October 29, 2015 hearing, Ms. Robinson explained that the statements that she had made in video and written form were untruthful. She explained that she had lied to [the] defense investigator … because she had been threatened by people associated with the defendants. Additionally, she had been offered a substantial sum of money -- $25,000 -- to recant her trial testimony.

The court paid extremely close attention to [] Robinson's demeanor throughout the evidentiary hearing, and it finds highly credible her explanation for why she initially attempted to recant her trial testimony to [the] defense investigator…. [] Robinson acknowledged that she is in fear for her life from the defendants. Her fear is due, in part, to her knowledge of the reputation of the defendants, their friends, associates and families, as well as the events she herself witnessed. She indicated, convincingly, that she would rather have lied than lost her life. [] Robinson was in fear from the defendants, given that people associated with them kept finding her despite several moves. Further, she testified credibly that she believed that, if she cooperated with the defense efforts, she would be left alone by the defendants. The court also found highly credible her explanation for why she recanted her post-trial recantation statements during the evidentiary hearing. [] Robinson indicated that she did not want guilty people to be let out of jail and that the defendants deserved to be in jail for what they had done. [] Robinson did not waver in her testimony at the evidentiary hearing and was adamant that her post-trial recantation statements were made out of fear and not as a result of any crisis of conscience that she was experiencing as to the certainty of her observations. At the October 29, 2015 hearing, [] Robinson very clearly, convincingly, and without hesitation, identified the defendants as the perpetrators of the murder. It must be noted that this was the second time that she made her identification of the defendants as murderers in a courtroom, in the presence of the defendants and under oath.

This court had the benefit of sitting through the original homicide trial, and it observed firsthand [] Robinson's demeanor when she provided her eyewitness account of the brutal murder and identified the defendants as the perpetrators. [] Robinson shook uncontrollably throughout her testimony and was clearly

Respondents' Exhibit 53

J-A07033-17

> frightened to be involved in the case. As the Commonwealth noted in its brief, [ ] Robinson had *nothing to gain and everything to lose* by testifying against the defendants during the homicide trial. This holds equally true with regard to her testimony at the evidentiary hearing related to her supposed recantation. [ ] Robinson has nothing to gain and everything to lose by recanting the unsworn recantation statements[.] She continues to place herself in danger of retribution by maintaining her position that the defendants were the perpetrators of the murder, which makes her identification testimony all the more credible. The fact that she maintains her identification of the defendants as murderers when under oath and forced to confront them face-to-face, and in light of her fear of the defendants based on their reputations, threats made to her, and her inability to remain hidden, makes [ ] Robinson's identification ring with truthfulness and credibility.
>
> Accordingly, after taking into account the strength of [ ] Robinson's identification testimony at trial and after finding [ ] Robinson's testimony at the evidentiary hearing credible in all respects, this court finds that a new trial is not warranted under these circumstances. Given that [ ] Robinson has consistently identified the defendants while under oath, and given that her identification testimony has been very credible each time, the court does not find that the purported recantation evidence would "likely result in a different verdict if a new trial were granted." **Commonwealth v. Padillas**, 997 A.2d 356, 363 (Pa. Super. 2010).

Trial Court Opinion, 12/22/2015, at 2-4 (unnecessary capitalization omitted; emphasis in original).

Based on our thorough review of the record, we conclude that the trial court did not abuse its discretion in determining that the unsworn statement offered to the defense investigator was not credible, and that Robinson had fabricated the statements out of fear of the co-defendants and their associates. Importantly, we agree that Appellant's argument fails as to the fourth prong of the applicable test. When presented with the purported

- 8 -

Respondents' Exhibit 53

recantation testimony, the circumstances surrounding Robinson's statement to the defense investigator, and Robinson's later recantation of those statements under oath, it is unlikely that the verdict would be rendered in Appellant's favor. As such, the trial court did not err in denying Appellant a new trial based upon this evidence.

We now turn to Appellant's second issue on appeal: whether the trial court erred in denying a motion *in limine*, filed by Crumbley and joined by Appellant, which sought to exclude from the co-defendants' joint trial evidence regarding other bad acts attributable to Crumbley. Appellant's Brief at 40-52.

We provide the following background. The police recovered seven .40 caliber shell casings and two 357 Sig[2] shell casings from the scene of the May 16, 2011 shooting that resulted in the death of Mattox. Forensic testing showed that two of the recovered .40 caliber shell casings had been fired from one gun, while the other five had been fired from another. The presence of the two 357 Sig shell casings recovered from the scene evidenced the involvement of a third gun.

On June 2, 2011, a few weeks after the Mattox shooting, Crumbley was injured in a shootout in Swissvale, Allegheny County. When police arrived at that scene, they found a number of spent shell casings in and

---

[2] As explained during trial, "the 357 Sig caliber is a 40 caliber cartridge case which is bottlenecked down to fit a nine millimeter [bullet]." N.T., 8/20-9/4/2012, at 457.

Respondents' Exhibit 53

around the vehicle in which Crumbley had been riding. Those shell casings were tested and determined to have come from two separate firearms: a 9mm and a .40 caliber. The 9mm casings were all determined to have been discharged from a Ruger P89 firearm recovered from the vehicle in which Crumbley had been riding prior to and during the June 2, 2011 shootout. Crumbley's blood was found on the side of the Ruger and on the barrel.

Also present at the scene of the shootout was Asa Thompkins, who was released after a brief detention. On June 9, 2011, Thompkins was a passenger in a vehicle that was stopped by police. Police recovered a .40 caliber Springfield Armory pistol during a search of that vehicle.

Three bullets were recovered from Mattox's body during his autopsy, two 9mm rounds and one .40 caliber. At trial, the Commonwealth's firearms and tool marks expert, Raymond Everett, testified that his examination of the recovered bullets led him to conclude that the two 9mm bullets were fired from the same gun: either a 357 or a 9mm firearm; however, no definitive comparison could be made to any 357 or 9mm firearm tested in connection with this case. N.T., 8/20-9/4/2012, at 460-61, 471-72. Everett testified that the class characteristics present on the .40 caliber bullet recovered during Mattox's autopsy were similar to those made by Springfield Armory brand pistols. *Id.* at 452-53. Further, it was determined that the .40 caliber casings recovered from both the May 16, 2011 homicide matched

Respondents' Exhibit 53

those recovered from the .40 caliber casings recovered from the scene of the 2011 Swissvale shootout. *Id.* at 451-54.

On May 30, 2012, the Commonwealth filed notice of its intent to present evidence, pursuant to Pa.R.E. 404(b), of Crumbley's involvement in the June 2, 2011 shootout. The Commonwealth averred that the Ruger and Springfield Armory firearms associated with the June shootout linked Crumbley to the Mattox shooting on May 16, 2011. Thus, it sought to introduce testimony regarding the June 2 incident at the co-defendants' trial in order to prove identity. While Crumbley was obviously present at the June 2 incident, Appellant was not; thus, he argued that the evidence was prejudicial and, therefore, inadmissible against him. Following a hearing, the trial court ruled that the evidence was admissible at the joint trial, and denied the motion *in limine*.

"When reviewing the denial of a motion *in limine,* we apply an evidentiary abuse of discretion standard of review." ***Commonwealth v. Stokes***, 78 A.3d 644, 654 (Pa. Super. 2013) (citation omitted). "The admissibility of evidence is a matter directed to the sound discretion of the trial court, and an appellate court may reverse only upon a showing that the trial court abused that discretion." ***Id.*** (citation omitted).

The crux of Appellant's argument is that evidence recovered from the June 2, 2011 incident involving Crumbley has no bearing on Appellant's identity as one of the shooters involved in the May 16, 2011 death of

Respondents' Exhibit 53

Mattox. Appellant's Brief at 46. However, this argument fails to acknowledge that Appellant and Crumbley were joined for trial.[3] The co-defendants herein did not object to joinder. Indeed, "joint trials are preferred where conspiracy is charged." **Commonwealth v. Housman**, 986 A.2d 822, 834 (Pa. 2009) (citation omitted).

Pennsylvania Rule of Evidence 404(b) governs admissibility of evidence of other bad acts.[4]

> Generally, evidence of prior bad acts or unrelated criminal activity is inadmissible to show that a defendant acted in conformity with those past acts or to show criminal propensity. However, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. In determining whether evidence of other prior bad acts is admissible, the trial court is obliged to balance the probative value of such evidence against its prejudicial impact.
>
> The Commonwealth must prove beyond a reasonable doubt that a defendant has committed the particular crime of which he is accused, and it may not strip him of the presumption of innocence by proving that he has committed other criminal acts.

**Commonwealth v. Ross**, 57 A.3d 85, 98–99 (Pa. Super. 2012) (*en banc*) (citations omitted).

---

[3] The Rules of Criminal Procedure provide that "[d]efendants charged in separate indictments or informations may be tried together if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Pa.R.Crim.P. 582(A)(2).

[4] Rule 404(b) does not distinguish between prior and subsequent acts. **Commonwealth v. Wattley**, 880 A.2d 682, 687 (Pa. Super. 2005).

Respondents' Exhibit 53

J-A07033-17

Here, the trial court properly admitted the evidence related to the June 2, 2011 incident as probative of the identity of Crumbley and his involvement in the May 16, 2011 shooting that resulted in the death of Mattox. **See** Trial Court Opinion, 6/25/2014, at 23-28. Of significance, we note that the trial court offered a limiting instruction concerning this testimony, which was rejected by both Crumbley's counsel and Appellant.[5] N.T., 8/20-9/4/2012, at 1318-23, 1411-12.

---

[5] We find instructive the following portion of Justice Saylor's concurring and dissenting opinion in **Commonwealth v. Housman**, 986 A.2d 822, 848 (Pa. 2009) (Saylor, J., concurring and dissenting).

> In **Zafiro v. United States**, 506 U.S. 534, 539, [] (1993), the high Court opined that when defendants have properly been joined, a district court should only grant severance if there is a serious risk that a joint trial "would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." **Id.** at 539 [].
>
> The Court went on to say that where evidence is admitted at a joint trial that would not be admissible in a separate trial, a defendant might be prejudiced:
>
>> Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant. For example, evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty. When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened. Evidence that is probative of a defendant's guilt but technically admissible only against a codefendant also might present a risk of prejudice. Conversely, a defendant might suffer prejudice if essential exculpatory

Respondents' Exhibit 53

J-A07033-17

In light of the forgoing, following our review of the certified record, the parties' briefs, and the relevant law, we conclude that the opinion of the Honorable Beth A. Lazzara thoroughly and correctly addresses and disposes of Appellant's second issue and supporting arguments and evidences no abuse of discretion or errors of law. Accordingly, we adopt section C of the trial court's opinion, pages 23 through 28, filed on June 25, 2014, as our own and hold, based upon the reasons stated therein, that the trial court committed neither an error of law nor an abuse of discretion in denying the co-defendants' motion *in limine*.

In his third claim of error, Appellant asks this Court to consider whether the trial court erred in failing to grant a motion, filed by Crumbley and joined by Appellant, that sought suppression of Robinson's pre-trial identification of the co-defendants due to the "highly suggestive" nature of the administered photo arrays. Appellant's Brief at 40-63. Appellant also

---

evidence that would be available to a defendant tried alone were unavailable in a joint trial. The risk of prejudice will vary with the facts in each case, and district courts may find prejudice in situations not discussed here. When the risk of prejudice is high, a district court is more likely to determine that separate trials are necessary, but, as we indicated in *Richardson v. Marsh*, **less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice**. [See 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987)].

*Zafiro*, 506 U.S. at 539 [] (internal citations omitted).

*Housman*, at 848 (emphasis added).

argues that the suggestive pre-trial procedure tainted Robinson's in-court identification, and admission of both was in error. *Id.*

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.
>
> [W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts. Moreover, it is within the lower court's province to pass on the credibility of witnesses and determine the weight to be given to their testimony.
>
> When determining the admissibility of identification testimony, this Court has held that suggestiveness in the identification process is a factor to be considered in determining the admissibility of such evidence, but suggestiveness alone does not warrant exclusion. A pretrial identification will not be suppressed as violative of due process rights unless the facts demonstrate that the identification procedure was so infected by suggestiveness as to give rise to a substantial likelihood of irreparable misidentification.
>
> Due process does not require that every pretrial identification of witnesses must be conducted under laboratory conditions of an approved lineup. In reviewing the propriety of identification evidence, the central inquiry is whether, under the totality of the circumstances, the identification was reliable.
>
> Additionally, the purpose of a suppression order regarding exclusion of identification evidence is to prevent improper police action. Thus, where a defendant does not show that improper police conduct resulted in a suggestive identification, suppression is not warranted.

*Commonwealth v. Jaynes*, 135 A.3d 606, 610 (Pa. Super. 2016), *appeal denied*, 145 A.3d 724 (Pa. 2016) (citations and quotation marks omitted).

Once more, our thorough review of the certified record, the parties' briefs, and the relevant law leads us to conclude that the opinion of Judge Lazzara thoroughly and correctly addresses and disposes of this issue and evidences no abuse of discretion or errors of law. Accordingly, we adopt section B of the trial court's opinion, pages 15 through 23, filed on June 25, 2014, as our own and hold, based upon the reasons stated therein, that the trial court committed neither an error of law nor an abuse of discretion in denying the co-defendants' suppression motion, nor did the court err in permitting Robinson's in-court identification of the co-defendants.

In his final claim of error, Appellant contends that imposition of mandatory minimum sentences at counts three and six is illegal under *Alleyne v. United States*, 133 S.Ct. 2151 (2013).[6] Appellant's Brief at 64-67. The Commonwealth concedes that this case must be remanded for resentencing because the applicable statute, 42 Pa.C.S. § 9712, has been found unconstitutional. Commonwealth's Brief at 54; *see Commonwealth v. Newman*, 99 A.3d 86, 104 (Pa. Super. 2014) (*en banc*) (holding the mandatory minimum sentencing scheme under section 9712 unconstitutional pursuant to *Alleyne*). *See also Commonwealth v. Valentine*, 101 A.3d

---

[6] In *Alleyne*, the Supreme Court held that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury" and found beyond a reasonable doubt. *Alleyne*, 133 S. Ct. at 2155.

- 16 -

Respondents' Exhibit 53

J-A07033-17

801 (Pa. Super. 2014). We agree. Because section 9712 has been invalidated by **Alleyne**, and Appellant is currently appealing from his judgment of sentence, we vacate the illegal, mandatory minimum terms imposed at counts three and six, and remand for resentencing on those charges.

In sum, we affirm Appellant's convictions, but vacate his judgment of sentence as to count three (robbery of a motor vehicle) and count six (conspiracy to commit robbery - serious bodily injury), and remand for resentencing. The parties shall attach a copy of the trial court's June 25, 2014 opinion to this memorandum in the event of future proceedings.

Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/21/2017