0817

FILED
2018 DEC -3 PM 2:05

DEPT OF COURT RECORDS
CRIMINAL DIVISION
ALLEGHENY COUNTY, PA


ORIGINAL
Criminal Division
Dept Of Court Records
Allegheny County, PA

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | CRIMINAL DIVISION |
| | CP-02-CR-0002821-2012 |
| V. | |
| | COMMONWEALTH'S ANSWER TO POST CONVICTION RELIEF ACT PETITION |
| MATTHEW EBO | |
| | Code _____ |
| | The Honorable Beth A. Lazzara |

Filed on behalf of the
Commonwealth of Pennsylvania

Counsel of Record for the
Commonwealth of Pennsylvania

STEPHEN A. ZAPPALA, JR.
DISTRICT ATTORNEY

    By

ALICIA H. SEARFOSS
ASSISTANT DISTRICT ATTORNEY
PA. I.D. NO. 320195

Office of the District Attorney
401 Allegheny County Courthouse
Pittsburgh, PA 15219
(412) 350-4377

Respondents' Exhibit 67

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA

V.     CP-02-CR-0002821-2012

MATTHEW EBO

## COMMONWEALTH'S ANSWER TO
## POST CONVICTION RELIEF ACT PETITION

AND NOW, to wit, this 3rd day of December, 2018, comes the Commonwealth of Pennsylvania by its attorneys, STEPHEN A. ZAPPALA, JR., District Attorney, and, ALICIA H. SEARFOSS, Assistant District Attorney, and in answer to the above-captioned Post-Conviction petition, respectfully shows:

## PROCEDURAL HISTORY

Petitioner, Matthew Ebo, was charged by Criminal Information in the Court of Common Pleas of Allegheny County, Criminal Division. At CP-02-CR-0002821-2012, Petitioner was charged with one (1) count of Criminal Homicide[1], one (1) count of Robbery – Serious Bodily Injury[2], one (1) count of Robbery of a Motor Vehicle[3], one (1) count of Carrying a Firearm Without a License[4], one (1) count of Persons Not to Possess a

---

[1] 18 Pa. C.S.A. §2501 for the death of Todd Mattox.

[2] 18 Pa. C.S.A. §3701(A)(1)(i).

[3] 18 Pa. C.S.A. §3702(A).

[4] 18 Pa. C.S.A. §6106(A)(1).

Respondents' Exhibit 67

Firearm[5], and one (1) count of Criminal Conspiracy – Robbery – Serious Bodily Injury[6], and one (1) count of Criminal Conspiracy – Homicide[7].

The Commonwealth, through Deputy District Attorney Steven M. Stadtmiller, Esquire filed numerous pre-trial motions regarding discovery and Motions in Limine.

On August 20, 2012, Petitioner, represented by Randall McKinney, Esquire, proceeded to a jury trial[8] before the Honorable Beth A. Lazzara. The Commonwealth was represented by DDA Stadtmiller and Assistant District Attorney Courtney Butterfield, Esquire. At the conclusion of trial on September 4, 2012, the jury found Petitioner guilty of all charges[9].

On September 14, 2012, Co-Defendant Crumbley, through Attorney Williams, filed a Post-Verdict Motion for Extraordinary Relief. On October 4, 2012, DDA Stadtmiller filed a Memorandum of Law in Response to Defendant's Motion for Extraordinary Relief. Petitioner made an oral motion to join Co-Defendant Crumbley's written Motion. On October 5, 2012, a hearing was held and the Court issued an order denying the motions.

On November 28, 2012, Petitioner and Co-Defendant Crumbley were sentenced at a joint sentencing hearing. Petitioner was sentenced at Count 1, Criminal Homicide – First Degree to a term of life imprisonment; at Count 2, Robbery – Serious Bodily Injury to No

---

[5] 18 Pa. C.S.A. §6105(A)(1).

[6] 18 Pa. C.S.A. §903(A)(1) for Robbery – Serious Bodily Injury with Co-Defendant Thaddeus Crumbley.

[7] 18 Pa. C.S.A. §903(A)(1) for Criminal Homicide with Co-Defendant Thaddeus Crumbley.

[8] Petitioner waived his right to a Jury Trial for the firearms charges and proceeded to a Non-Jury Trial where he was found guilty of both charges.

[9] The jury found Petitioner and his Co-Defendant guilty of Criminal Homicide – First Degree.

2

Respondents' Exhibit 67

Further Penalty; at Count 3, Robbery of a Motor Vehicle to a term of ten (10) to twenty (20) years of confinement to be served consecutively to Count 1; at Count 4, Carrying a Firearm Without a License to a term of three and a half (3 ½) to seven (7) years to be served consecutively to Count 3; at Count 5, Persons Not to Possess a Firearm to a term of two and a half (2 ½) to five (5) years of confinement to be served consecutively to Count 4; at Count 6, Conspiracy – Robbery – Serious Bodily Injury to a term of ten (10) to twenty (20) years of confinement to be served consecutively to Count 5; and at Count 7, Conspiracy – Criminal Homicide to a term of twenty (20) to forty (40) years of confinement to be served consecutively to Count 6.

On November 30, 2012, Attorney McKinney filed a Motion to Withdraw as Counsel. On December 12, 2012, an order was entered granting Attorney McKinney's request to withdraw and appointing the Office of the Public Defender.

On December 19, 2012, Petitioner, through Jessica L. Herndon, Esquire, of the Office of the Public Defender, filed a request to file a Post-Sentence Motion *Nunc Pro Tunc* as well as leave to supplement the Post-Sentence Motion once she received transcripts. On December 21, 2012, the Court granted the motion and directed Petitioner to file any amendments or supplements to the Post-Sentence Motion within twenty-one (21) days of the receipt of the transcripts. On April 19, 2013, Petitioner, through Attorney Herndon, filed a Supplemental Post-Sentence Motion. On May 22, 2013 the Court ordered the Commonwealth to file an Answer/Memorandum of Law. On June 13, 2013, the Commonwealth, through DDA Stadtmiller, filed a Memorandum of Law. On June 26, 2013, the Court denied Petitioner's Motion for Post-Sentence Relief.

3

Respondents' Exhibit 67

On July 25, 2013, Petitioner, through Attorney Herndon filed a Notice of Appeal to the Superior Court of Pennsylvania. On July 30, 2013, Judge Lazzara filed a Rule 1925 Statement. On August 20, 2013, Attorney Herndon filed a Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(b). On June 25, 2014, Judge Lazzara filed her Trial Court opinion affirming the judgment of sentence.

On December 11, 2014, Attorney Herndon filed a Brief for Appellant, which was docketed in the Superior Court of Pennsylvania at **No. 1194 WDA 2013**. On appeal, Petitioner raised the following claims:

> I.   The evidence that the co-defendant was involved in gun violence two weeks after the homicide was inadmissible evidence of other bad acts against Matthew Ebo. Also, the irrelevant evidence had no connection to Matthew and it should not have been presented as evidence that Matthew was somehow involved in the homicide.
>
> II.  The highly suggestive pretrial identification procedure tainted the main Commonwealth eyewitness' identification of Matthew Ebo and any information about the witness' photo array identification and her subsequent in-court identification should have been suppressed.
>
> III. The trial court abused its discretion by failing to grant Matthew Ebo a new trial since the verdict was against the weight of the evidence when the unreliable testimony of the eyewitness connecting Matthew to the crime was so untrustworthy that basing a guilty verdict on this evidence was manifestly unreasonable.
>
> IV.  The trial court's imposition of the mandatory minimum sentence under 42 Pa.C.S.A § 9712, an unconstitutional statute, was illegal since the factfinder never found the required facts beyond a reasonable doubt for the imposition of the mandatory as required by the United States Supreme Court in *Alleyne v. United States*, 133 S.Ct. 2151 (2013).

On January 22, 2015, the Commonwealth, through Deputy District Attorney Michael W. Streily, Esquire, filed a Brief for Appellee. On August 5, 2015, Attorney Herndon filed an

4

Respondents' Exhibit 67

Application for Remand based on after-discovered evidence. On August 6, 2015, the Superior Court remanded the case for an evidentiary hearing and to determine whether a new trial was warranted based on after-discovered evidence.

On November 9, 2015, Petitioner, through Victoria H. Vidt, Esquire, of the Office of the Public Defender, filed a Memorandum of Law in Support of Request for a New Trial Based on After-Discovered Evidence. On November 25, 2015, DDA Stadtmiller filed the Commonwealth's Brief in Opposition to Defense Request for New Trial Based on New Evidence. On October 29, 2015, a hearing was scheduled for both Petitioner and Co-Defendant Crumbley. On December 22, 2015, the Court issued an Order finding that a new trial was not warranted.

On January 13, 2016, Petitioner, through Attorney Vidt, filed a Notice of Appeal to the Superior Court of Pennsylvania. On January 13, 2016, Judge Lazzara filed a Rule 1925 Statement. On February 2, 2016, Attorney Vidt filed a Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(b).

On May 16, 2016, Petitioner, through Attorney Vidt, filed a Brief for Appellant, which was docketed in the Superior Court of Pennsylvania at **No. 92 WDA 2016**. On appeal, Petitioner raised the following claims:

> I.   The trial court abused its discretion when it failed to award the defendant a new trial based upon the recantation of the sole witness connecting him to the crime, Saday Robinson.
>
> II.  The evidence that the co-defendant was involved in gun violence two weeks after the homicide was inadmissible evidence of other bad acts against Matthew Ebo. Also, the irrelevant evidence had no connection to Matthew and it should not have been presented as evidence that Matthew was somehow involved in the homicide.

5

Respondents' Exhibit 67

> III.   The highly suggestive pretrial identification procedure tainted the main Commonwealth eyewitness' identification of Matthew Ebo and any information about the witness' photo array identification and her subsequent in-court identification should have been suppressed.
>
> IV.   The trial court's imposition of the mandatory sentence under 42 Pa.C.S.A. § 9712, an unconstitutional statute, was illegal since the factfinder never found the required facts beyond a reasonable doubt for the imposition of the mandatory as required by the United States Supreme Court in *Alleyne v. United States*, 133 S.Ct. 2151 (2013).

On June 24, 2016, the Commonwealth, through Deputy District Attorney Michael W. Streily, Esquire, filed a Brief for Appellee. On June 21, 2017, the Superior Court affirmed the convictions, but vacated the sentence at Counts 3 and 6, and remanded the case for resentencing.

On July 14, 2017, Petitioner, through Attorney Vidt, filed a Petition for Allowance of Appeal in the Supreme Court of Pennsylvania, docketed at **279 WAL 2017**. On July 18, 2017, Deputy District Attorney Michael W. Streily, Esquire filed a No Answer Letter on behalf of the Commonwealth. On December 13, 2017, the Supreme Court of Pennsylvania denied the Petition for Allowance of Appeal.

On February 28, 2018, Petitioner was re-sentenced, however the end result was essentially the same with Petitioner left serving life imprisonment with an additional aggregate term of forty-six (46) to ninety-two (92) years of imprisonment.

On March 6, 2018, Petitioner, through Attorney Vidt, filed Post-Sentence Motions, which were denied by Order on April 11, 2018.

On May 8, 2016, Petitioner, through Attorney Vidt, filed a Notice of Appeal to the Superior Court of Pennsylvania. On May 10, 2018, Judge Lazzara filed a Rule 1925 Statement. This appeal was docketed in the Superior Court of Pennsylvania at **No. 679**

6

Respondents' Exhibit 67

**WDA 2018**, however, on May 30, 2018, Attorney Vidt filed a Praecipe for Discontinuance so that Petitioner could proceed with his Post-Conviction Relief Act Petition. On that same day, the Superior Court filed a Certification of Discontinuance to Lower Court.

On January 17, 2018, Petitioner filed a *pro se* Petition for Post-Conviction Collateral Relief[10]. On February 27, 2018, Diana Stavroulakis, Esquire, entered her appearance to represent Petitioner in his PCRA proceedings. On November 28, 2018, Attorney Stavroulakis filed an Amended Motion for Relief under the Post-Conviction Relief Act.

## FACTUAL HISTORY

The Trial Court summarized the facts of the case in their June 25, 2014 Opinion as follows:

> On May 16, 2011, Todd Mattox was shot to death in the parking lot of the Leechburg Garden apartments in Penn Hills. (T.R. 8/20/12, p.240)[11]. He had suffered three (3) gunshot wounds, two (2) to the trunk and one (1) fatal shot to the head. (T.R. 8/20/12, pp.246-261, Ex. 4-16).
>
> An eyewitness, Saday Robinson, described the sounds of an altercation above her apartment in the minutes before the shooting, followed by the noise of people running down stairs. (T.R. 8/02/12, pp. 527-528). She then saw Mr. Mattox being pushed out the front door of the apartment complex by two (2) African-American males with handguns. (T.R. 8/20/12, pp.528-529). She was able to hear Mr. Mattox pleading for his life, offering the two (2) males everything that he had, and backing away from them with his hands up. (T.R. 8/20/12, pp.529-531). The eyewitness described seeing a man that she later identified as Defendant Ebo shooting at Mr. Mattox three

---

[10] Petitioner's *pro se* PCRA was stayed pending his resentencing, post-sentence motions, and potential appeals.

[11] The notation "T.R. 8/20/12" refers to Volumes I and II of the trial transcript for August 02, 2012 through September 4, 2012.

7

Respondents' Exhibit 67

(3) times. (T.R. 8/20/12, p. 531). Mr. Mattox fell to the ground after the gunshots were fired. (T.R. 8/20/12, p. 531). The witness then described seeing Defendant Ebo going through the pants pockets of Mr. Mattox before she saw a person that she later identified as Defendant Crumbley walk up to Mr. Mattox, stand dover his body as it lay in the parking lot, and shoot him directly in the head. (T.R. 8/20/12, pp. 532-534). She then indicated that she saw the Defendants get into Mr. Mattox's white Nissan and speed out of the parking lot. (T.R. 8/20/12, p. 534). Mr. Mattox's vehicle was later found after it had been set on fire on Hill Street in Penn Hills. (T.R. 8/20/12, pp.757-759, 762-780, 782-787, 804, 818, 841; Ex. 58-63, Ex. 66-67).

It should be noted that other witnesses corroborated key points contained in Ms. Robinson's description of the events that night. For example, John Gardone also testified that Mr. Mattox was chased by two (2) African-American males before he was shot several times in the parking lot of the Leechburg Gardens. (T.R. 8/20/12, pp. 591-592). He also saw the two (2) suspects enter a white vehicle and speed from the parking lot. (T.R. 8/20/12, pp. 492-493). Another witness, Yurri Lewis, heard multiple shots that day, although he did not witness the shooting. (T.R. 8/20/12, p. 513). He did, however, see an African-American male going through the pockets of a man lying in the parking lot of Leechburg Garden Apartments. (T.R. 8/20/12, p. 515). He saw the man who had been rifling through the victim's pockets enter a white car and speed out of the parking lot. (T.R. 8/20/12, p. 515). Detective Anthony Perry confirmed that the right front pants pocket of Mr. Mattox was pulled out when he arrived at the scene. (T.R. 8/20/12, pp. 302-304, 330-334, Ex. 41). The left front pocket was in its normal position. (T.R. 8/20/12, pp. 302-304).

Despite the fact that there were several eyewitnesses to the events that occurred on May 16, 2011, none of the witnesses interviewed by either Penn Hills police officers or Allegheny County detectives were able to positively identify the actors.

The Defendants became suspects in the Todd Mattox murder following a string of events occurring over the course of the several months following the slaying. On June 2, 2011, Defendant Crumbley was involved in a shooting in Swissvale, in which he was shot several times. (T.R. 8/20/12, pp. 855-858). Two types of shell casings were recovered from the

8

scene, including the same type of shell casings that were found at the Todd Mattox murder scene, those being from a .40 caliber Smith and Wesson Springfield Armory pistol. (T.R. 8/20/12, pp. 885-886). A friend of Defendant Crumbley's, Asa Thompkins, was present at the scene of the shooting. (T.R. 8/20/12, pp. 847, 852). One week later, on June 9, 2011, Asa Thompkins was pulled over for a traffic stop in South Park. (T.R. 8/3/12, p. 20; T.R. 8/20/12, p. 1009). A Springfield Armory pistol was found under the front passenger seat of the car, and Mr. Thompkins said the gun was his. (T.R. 8/20/12, pp. 1010-1011).

On September 6, 2011, Thomas Julian Brown wrote a letter from the Allegheny County jail to Detective Garlicki, of the Allegheny County police, asking that he be put in touch with the detective who was handling the Todd Mattox homicide. (T.R. 8/20/12, p. 697). He indicated that he was willing to provide information on that case. (T.R. 8/20/12, pp. 697-698). Mr. Brown further indicated that he had heard, several months earlier, Defendant Crumbley saying that he had "smoked" Todd Mattox. (T.R. 8/20/12, pp. 698-699). Mr. Brown's cousin was Asa Thompkins, and Mr. Brown's son, Leron Brown, was a friend of Defendant Crumbley. (T.R. 8/20/12, pp. 695-696). Leron Brown was found shot dead in January or February 2012, inside a car with Roman Herring, a cousin of Defendant Crumbley's, who was also found dead in that same car. (T.R. 8/20/12, pp. 948, 991). Roman Herring was allegedly involved in the burning of a vehicle on Hill Street in Penn Hills. (T.R. 8/20/12, p. 945).

Defendant Crumbley became a suspect in the Todd Mattox murder in September 2011, after Detective Anthony Perry received a report connecting the handguns used in the Todd Mattox homicide with the weapons used in the Swissvale shooting on June 2, 2011, and after witness Thomas Brown came forward with information about the homicide. (T.R. 8/20/11, pp. 1017, 1020, 1021, 1025). Defendant Ebo also became a suspect at that time. (T.R. 8/20/11, p. 1017).

Eyewitness Saday Robinson was shown photo arrays containing photographs of the Defendants on September 16, 2011 (Defendant Crumbley only) and November 4, 2011 (both Defendants). (T.R. 8/20/12, pp. 356-357). However, on neither date did she select either of the Defendants from the arrays, although she testified that she was aware at the time of viewing the arrays that the Defendants were present in them.

9

(T.R. 8/20/12, p. 548). Ms. Robinson also indicated in her testimony that she identified someone as "looking like" Defendant Ebo during one of the times when she was presented the photo arrays. (T.R. 8/20/12, p .548). She indicated that she did this deliberately. (T.R. 8/20/12, p. 549). However, no detective involved with presenting her with photo arrays ever indicated that there had been an identification of anyone on either September 16, 2011 or November 4, 2011. (T.R. 8/20/12, pp. 349-356, 337-344). Ms. Robinson moved out of Leechburg Gardens in July 2011. She left the Allegheny County area and moved across the country in October 2011. (T.R. 8/20/12, p. 546). She returned to the area to testify upon the request of the police, who informed her that they had suspects in custody. (T.R. 8/20/12, p. 546). She was shown photo arrays on July 24, 2012, at which time she identified Defendant Crumbley after an approximately fifteen (15) second pause, and she identified Defendant Ebo immediately. (T.R. 8/20/12, pp. 540-543).

## ARGUMENT

Petitioner alleges that there is after-discovered evidence in the form of a new witness, Robert Raglin, who would testify that Petitioner was not at the scene of the crime on May 16, 2011 and therefore could not be responsible for the death of Victim Todd Mattox.

The Post Conviction Relief Act (PCRA) is intended to "provide the sole means for obtaining collateral review and relief, encompassing all other common law rights and remedies, including *habeas corpus.*" *Commonwealth v. Lantzy*, 736 A.2d 564, 569 (Pa. 1999); See 42 Pa.C.S.A. §9542; *Commonwealth v. Hall*, 771 A.2d 1232 (Pa. 2001). The PCRA was enacted for the benefit of those individuals who are innocent of the crime convicted, and who are serving unlawful sentences, to obtain collateral relief. 42 Pa.C.S.A. §9542. There is no constitutional right to any post-conviction relief. *Pennsylvania v. Finley*, 95 L.Ed.2d 539 (Pa. 1987). This relief is afforded to Petitioners

"through the grace of the legislature." *Commonwealth v. Alcorn*, 703 A.2d 1054, 1057 (Pa. Super. 1997).

In *Commonwealth v. Bennett*, 930 A.2d 1264 (Pa. 2007), the Supreme Court of Pennsylvania stated:

> There is no federal constitutional mandate requiring collateral review. *Pennsylvania v. Finley*, 95 L.Ed.2d 539 (Pa. 1987). It is not part of the criminal process, and is, in fact, civil in nature. *Id.* Therefore, under the Fourteenth Amendment to the United States Constitution, the procedural due process protections are less stringent than for purposes of either a criminal trial or direct appeal. *Id.* Nevertheless, due process requires that the post-conviction process be fundamentally fair. *Id.;* see also *Commonwealth v. Haag*, 809 A.2d 271, 283 (Pa. 2002). Thus, Petitioners must be given the opportunity for the presentation of claims at a meaningful time and in a meaningful manner. See *Logan v. Zimmerman Brush Co.*, 71 L.Ed.2d 265 (Pa. 1982).

*Bennett*, 930 A.2d at 1273. As a result, the filing of a PCRA petition is subject to strict procedural rules.

In order to be eligible for post-conviction relief, pursuant to the PCRA, 42 Pa.C.S.A. §9541 *et. seq.*, Petitioner must plead and prove by a preponderance of the evidence:

> (2) That the conviction or sentence resulted from one or more of the following:
>
> (i) A violation of the Constitution of this Commonwealth or the Constitution or the laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.
>
> (ii) Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable

> adjudication of guilt or innocence could have taken place.
>
> (iii) A plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused the Petitioner to plead guilty and the Petitioner is innocent.
>
> (iv) The improper obstruction by government officials of the Petitioner's right of appeal where a meritorious appealable issue existed and was properly preserved in the trial court.
>
> (vi) The unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced.
>
> (vii) The imposition of a sentence greater than the lawful maximum.
>
> (viii) A proceeding in a tribunal without jurisdiction.
>
> (3) That the allegation of error has not been previously litigated or waived.
>
> (4) That the failure to litigate the issue prior to or during trial, during unitary review or on direct appeal could not have been the result of any rational strategic or tactical decision by counsel.

42 Pa.C.S.A. §9543(a). *See Commonwealth v. Rivers*, 786 A.2d 923 (Pa. 2001); *Commonwealth v. Morales*, 701 A.2d 516, 520 (Pa. 1997); *Commonwealth v. Beasley*, 678 A.2d 773, 777 (Pa. 1996); *Commonwealth v. Young*, 715 A.2d 1195 (Pa. Super. 1998). It is Petitioner's burden to prove that the issue was not previously litigated. *Beasley, supra.*

An issue has been previously litigated if "the highest court in which Petitioner could have had review as a matter of right has ruled on the merits of the issue." 42 Pa.C.S.A. §9544(a)(2). Petitioner's claim is not previously litigated.

If Petitioner has proved the issue was not previously litigated, the burden falls on the Petitioner to establish that the issue has not been waived. It is Petitioner's burden to plead and prove by a preponderance of the evidence that the allegation of error has not been waived. 42 Pa.C.S.A. §9543(a)(3). Waiver has been defined in the following manner:

> **(b) Issues waived.** For the purposes of this subchapter, an issue is waived if the Petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal, or in a prior state post-conviction proceeding.

42 Pa.C.S.A. §9544(b).

In light of *Commonwealth v. Grant*, 813 A.2d 726 (Pa. 2002) and its progeny, it has been determined that claims of ineffective assistance of counsel should be brought about on collateral review. The Supreme Court of Pennsylvania has stated "This Court recently abrogated the procedural rule requiring new counsel to raise claims of previous counsel's ineffectiveness at the first opportunity when new counsel was appointed." *Commonwealth v. Fears*, 836 A. 2d 52, 59 (Pa. 2003) *citing Grant, supra*. Consequently, Petitioner's claims are not waived.

## I. After Discovered Evidence

Petitioner is alleging that the testimony of Robert Raglin would qualify as after-discovered evidence that would enable Petitioner to be granted a new trial.

To be granted a new trial based on the basis of after-discovered evidence:

> [Defendant] must demonstrate that the evidence: (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative;[12] (3) will not be used solely to

---

[12] As defined by Black's Law Dictionary, cumulative evidence is "additional evidence of the same character as existing evidence and that supports a fact established by the existing evidence." (continued ...)

13

Respondents' Exhibit 67

impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

*Commonwealth v. Pagan*, 950 A.2d 270, 292 (Pa. 2008) (quoting *Commonwealth v. Randolph*, 873 A.2d 1277, 1283 (Pa. 2005). The test is conjunctive; the defendant must show by a preponderance of the evidence that each of these factors has been met in order for a new trial to be warranted. See *Pagan*, supra; *Commonwealth v. Rivera*, 939 A.2d 355, 359 (Pa. Super. 2007), appeal denied, 958 A.2d 1047 (Pa. 2008).

### i. After Discovered Evidence Would Be Used To Solely Impeach The Credibility of Saday Robinson's Testimony

Petitioner is alleging that the testimony of Robert Raglin, the after discovered witness, would not be used merely to impeach the testimony of Ms. Robinson. That, however, is precisely the effect of the testimony that Petitioner is trying to put before the Court.

A defendant seeking a new trial must demonstrate he will not use the alleged after-discovered evidence solely to impeach the credibility of a witness. See *Pagan*, supra. "Whenever a party offers a witness to provide evidence that contradicts other evidence previously given by another witness, it constitutes impeachment...." *Commonwealth v. Weis*, 611 A.2d 1218, 1229 (Pa. Super. 1992). Where eyewitness identification tied the defendant to the crime charged and the defendant challenged the identification in his trial, third-party testimony exculpating the defendant impeaches the eyewitness. *Commonwealth v. Moore*, 633 A.2d 1119, 1136 (Pa. 1993).

---

Black's Law Dictionary, Seventh Edition, at 577. <u>Corroborative</u> evidence expands on existing evidence.

14

Respondents' Exhibit 67

Petitioner is attempting to use Mr. Raglin's testimony, which is vague and ambiguous at best, to contradict Ms. Robinson's identification of Petitioner and his Co-Defendant. Petitioner underwent a lengthy challenge of Ms. Robinson's identification at trial, so Petitioner's attempt to use Mr. Raglin's testimony now is clearly for impeachment purposes. Thus, this claim is meritless and should be dismissed.

### ii. After Discovered Evidence Would Not Result In A Different Verdict If A New Trial Were Granted

The testimony of Robert Raglin would not have changed the outcome had it been offered at the time of trial.

An after-discovered evidence claim must be viewed in the context of the whole trial, for relief may only be granted if the outcome of the proceeding would have been changed by the after-discovered evidence. See 42 Pa.C.S.A. § 9543(a)(2)(vi).

The jury heard evidence and testimony from several witnesses. Thomas Brown heard the confession made by Petitioner and reported it, which initiated the inquiry into Petitioner and Co-Defendant Crumbley. TT, 698-699. Richard Carpenter then identified Co-Defendant Crumbley in a photo array. TT, 365-366. Saday Robinson also made an identification of Petitioner and Co-Defendant Crumbley. Both Mr. Brown and Ms. Robinson were questioned by trial counsel for both Petitioner and Co-Defendant Crumbley in order to vet out any bias or prejudice.

Had Mr. Raglin testified at trial, it would have been up to the jury to determine his credibility. The proffer made by Mr. Raglin does not indicate who approached him about the events that occurred at Leechburg Gardens Apartments. Additionally, it seems rather ironic that this person who approached Mr. Raglin somehow knew that he was there the night of the murder and could testify favorably for Petitioner and Co-Defendant Crumbley.

15

Respondents' Exhibit 67

When taking into account the whole trial, it is important to note that this Court in reference to the identification and testimony of Ms. Robinson stated in its Opinion that "[o]n the contrary, Ms. Robinson was a tremendously compelling witness, who clearly became involved in this case against her best interests and all of the advice of her family and friends. It was obvious that she was terrified as she testified during the pre-trial motion proceeding, and again when she gave her trial testimony. Ms. Robinson shook and trembled throughout the entirety of her testimony." *See* Trial Court Opinion, p.14.

Given the vague nature of Mr. Raglin's proffer and the totality of all of the testimony at trial, it is highly unlikely that the outcome of the trial would have been any different had Mr. Raglin testified. This is even more apparent as Mr. Raglin's testimony would be used solely to impeach Ms. Robinson's testimony and identification. Consequently, this claim is meritless and should be dismissed.

Due to the nature of this claim, however, the Commonwealth believes that an evidentiary hearing is necessary in order to create a record and to allow this Court to make any necessary credibility determinations.

WHEREFORE, based on the foregoing, the Commonwealth respectfully requests that the Court schedule an evidentiary hearing.

                                              Respectfully submitted,

                                              STEPHEN A. ZAPPALA, JR.
                                              DISTRICT ATTORNEY

                                By: *Alicia Searfoss/ KRMB*
                                              ALICIA H. SEARFOSS
                                              ASSISTANT DISTRICT ATTORNEY

Respondents' Exhibit 67

CERTIFICATE OF COMPLIANCE

I hereby certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

*Alicia Searfoss* /KRMB
ALICIA H. SEARFOSS
ASSISTANT DISTRICT ATTORNEY
PA. I.D. NO. 320195

Respondents' Exhibit 67

PROOF OF SERVICE

I, the undersigned authority, hereby certify that this 3rd day of December, 2018 a true and correct copy of the within Commonwealth's Answer to Post Conviction Relief Act Petition was served upon persons and in the manner indicated below. The manner of service satisfies the requirements of Pa.R.Crim.P. 575.

*Alicia Searfoss /KRMB*
ALICIA H. SEARFOSS
ASSISTANT DISTRICT ATTORNEY
PA. I.D. NO. 320195

Office of the District Attorney
401 Allegheny County Courthouse
Pittsburgh, PA 15219
(412) 350-4377

Service by first class mail addressed as follows:

Diana Stavroulakis, Esquire
262 Elm Court
Pittsburgh, PA 15237
(412) 600-8608

Service by leaving a copy at the office of:

Criminal Court Administrator
535 Allegheny County Courthouse
Pittsburgh, PA 15219
(412) 350-5952

cc: The Honorable Beth A. Lazzara
    510 Allegheny County Courthouse

Respondents' Exhibit 67