IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY,
PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA     CC 201202821

V.

MATTHEW EBO                       JUDGE LAZZARA

MEMORANDUM IN
SUPPORT OF
POST-CONVICTION
RELIEF ACT
PETITION

ON BEHALF OF:
Matthew Ebo

ATTORNEY:
Diana Stavroulakis, Esq.
PA ID #59255
262 Elm Court
Pittsburgh, PA 15237

412-600-8608
Diana@Stavroulakislaw.com

Respondents' Exhibit 68

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY,
PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA    CC 201202821

V.

MATTHEW EBO                         JUDGE LAZZARA

## MEMORANDUM IN SUPPORT OF
## POST-CONVICTION RELIEF ACT PETITION

AND NOW, comes Diana Stavroulakis, Esquire, court- appointed counsel in the above-captioned case, and files the within MEMORANDUM IN SUPPORT OF POST-CONVICTION RELIEF ACT (PCRA) PETITION, and submits the following argument for the Court's consideration.

### RAGLIN'S TESTIMONY

After this Court received and reviewed the PCRA Petitions filed by Matthew Ebo (Ebo) and his co-defendant, Thaddeus Crumbley (Crumbley), the Court scheduled a combined Evidentiary Hearing which was held May 10, 2019.[1] At that

---

[1] References to the PCRA Evidentiary Transcript appear as "HT ___" throughout.

2

Respondents' Exhibit 68

time, Ebo and Crumbley offered the testimonial evidence of Robert Raglin, (Raglin), who was subjected to direct and cross-examination, as well as supplemental questioning directly from this Court. Throughout his testimony, Raglin was clear about what he witnessed the evening Todd Mattox was shot, as well as what prompted him to contact Crumbley with this information, well after he and Ebo had gone to trial.

Specifically, Raglin stated that in 2011, he was employed as a jitney driver, providing transportation services similar to that of a Taxi driver. (HT 4) An incident transpired on May 16, 2011, that stood out in Raglin's memory because it happened a week before his birthday – which is May 22nd. (HT 42). That day, he drove two African American males to Leechburg Gardens in Penn Hills that day around dusk, 7:00PM. (HT 10, 23, 29) He described the two passengers as one of them being 6'8 or 6'9, really tall, with a dark complexion, and had to have his seat all the way back; and the other passenger was short with a light complexion and sat behind Raglin. (HT 5-6) He had driven these two individuals more than ten times before that night. (HT 6, 17)

Raglin identified the two men he jitneyed that evening as pictured in Defense Exhibit "A" and Defense Exhibit "B," with the shorter male being pictured in Defense Exhibit B. (HT 7-8) Raglin didn't personally know these two men, but referred to the taller one as "Stretch," and the shorter one as "Young

3

Respondents' Exhibit 68

Buck." (HT 8-9, 24) He heard the two men refer to each other as "Ron" and "Rome." (HT 9, 26)

After the two men got out of his vehicle, Raglin turned his car around and got out to "relieve himself" by the fire hydrant and big "Christmas Tree." (HT 10) He saw a white car pull into the parking area. "Stretch" and "Young Buck" had guns and started shooting in the area of the white car, and someone else was shooting back. This was no more than 10 or 15 feet from where Raglin was standing. (HT 10-11, 29) Raglin dove to the ground, crawled into his car, put his seat back and drove out of the parking area, with the white car following behind. (HT 10-11, 30, 43) Raglin did not know who was driving that white car. (HT 11) He was concerned that the white car was pursuing him, because he witnessed the shooting. (HT 11-12) Raglin was not aware at that time that anyone was killed during that shooting incident. (HT 12)

In 2018, Raglin was in the Allegheny County Jail on the Fourth Floor, having just been brought in, when he noticed some inmates talking and pointing at him. (HT 12) Just before he was released, an inmate approached him and told him that he was there for the shooting incident. (HT 12-13, 25, 33-34) This unidentified inmate named who was killed in the shooting in Penn Hills, Leechburg Gardens, but Raglin did not remember what he said. (HT 13) This

4

confrontation stuck with Raglin because he thought the other inmate was going to assault him, and the jail guards became involved. (HT 13-14, 35)

Raglin was curious about the situation and had his friend google the Leechburg Gardens incident on her cell phone after he was released. (HT 14, 25, 35) The information his friend located online coincided with the date and time from the incident he had described about getting out of his car to relieve himself after dropping off "Stretch" and "Young Buck" that evening, and diving to the ground and crawling into his car to leave when he saw those men firing their guns in the direction of a white car that had entered the parking lot that day. (HT 14) However, the information retrieved on Google identified two other African American males as being convicted for the homicide as a result of that shooting incident. Raglin knew the two men had been wrongly convicted because it was the men he knew as "Stretch" and "Young Buck" who were involved in the shooting that evening. (HT 14, 25) Consequently, Raglin located Crumbley's institutional address and wrote to him to share that he witnessed the shooting and he knew Ebo and Crumbley had been wrongly convicted. (HT 14-15) Raglin explained that he contacted Crumbley because he didn't want an innocent person to be in jail. (HT 15)

Raglin felt compelled to tell Ebo and Crumbley what he witnessed that evening because he knew what it felt like to have a family member wrongly

5

convicted. Raglin stated that it was like the entire family being in prison. (HT 15-16, 32) Raglin testified that he did not know, nor was he friends with, Crumbley or Ebo; he had never spoken to either of them; and he did not know their families. (HT 17-18, 36) Moreover, he specifically stated that on the night of the incident he could see very clearly, and neither Ebo nor Crumbley were present at Leechburg Gardens on May 16, 2011, and they were not the two men he witnessed shooting the victim. (HT 17, 36)

Raglin was not interviewed by the police after the shooting, and he did not go to the police immediately following the shooting, as he was not aware at that time that someone was killed. (HT 18-19) He clarified that even if he did know that someone died at that time, he wouldn't have gone to the police because it is "taboo in the black community to be talking to the police about anything." (HT 19, 32, 34) He also mentioned that since reaching out to Crumbley and Ebo, and giving a written statement in this case, he has been harassed by the police and the District Attorney's Office. He informed the Court that if he had known he would be harassed in this way, he would not have come forward. (HT 33-34)

6

Respondents' Exhibit 68

DISCUSSION

At the outset, I'm asking the Court to consider specific facts revealed during the Jury Trial in this matter. Specifically, the police began to focus on Crumbley as the shooter in the underlying incident after a September 6, 2011, letter was sent to the Allegheny County Police by Thomas Julian Brown. In that letter, Mr. Brown indicated he wanted to provide information about the Todd Mattox homicide. (TT 697-698)[2] The information Mr. Brown contributed was that, at a prior point, he heard Crumbley say that he "smoked" Todd Mattox. (TT 698-699) This information becomes more interesting when you consider that Mr. Brown is the father of Leron Brown, (TT 695-696), a/k/a "Ron." Raglin testified that Ron was one of the two men involved in the May 16, 2011, shooting at Leechburg Gardens.

Counsel also asks the Court to consider the Jury Trial testimony of Craig Clark. He testified that Detective Hitchings interviewed him on July 10, 2012. The Detective informed Clark that his prints were found on a can of lighter fluid near a car that had been set on fire, which was connected to the Todd Mattox murder. (TT 939-943) Clark stated that he took the lighter fluid from his sister's house and gave it to Roman Herring, (a/k/a "Rome.") (TT 944-945) Clark testified that Roman set that car on fire. (TT 945, 949, 958) Assistant District Attorney

---

[2] References to the Jury Trial Transcripts appear as "TT ___."

7

Respondents' Exhibit 68

Stadtmiller asked Clark if Roman was about 6'6. Clark responded he was very tall. (TT 946-947)

Raglin's testimony, standing alone, is exculpatory evidence for both Ebo and Crumbley. When considered in the greater context of other information established during the Jury Trial, it becomes apparent that LeRon Brown and Roman Herring were the two actors involved in the May 16, 2011, shooting in Leechburg Gardens, and the two men responsible for Todd Mattox's death.

Ebo has established that he is entitled to a new trial based upon after-discovered evidence. 42 Pa.C.S.A. §9543(a)(2)(vi). Ebo can establish each prong of the four-part test required to establish eligibility for relief based upon after-discovered evidence. Raglin's testimony was unavailable at the time of trial, and undiscoverable through the exercise of due diligence, because Ebo was not present in Leechburg Gardens and had no knowledge that Raglin witnessed the shooting. Raglin's testimony is substantive and exculpatory evidence. He was an eyewitness to the shooting. Consequently, his testimony cannot be dismissed as merely corroborative or cumulative in nature. And as substantive, exculpatory eyewitness testimony, Raglin's testimony would not be offered at a new trial merely to impeach any other Commonwealth witness. Raglin's testimony unequivocally exonerates Ebo and Crumbley. Ebo has established by a preponderance of the evidence offered at the Evidentiary Hearing that Raglin's testimony would prompt

8

Respondents' Exhibit 68

a different verdict at a new trial. *Commonwealth v. Small*, 189 A.3d 961, 972 (Pa. 2018).

Ebo has presented for this Court's consideration the unequivocal eyewitness testimony of Raglin – an individual that has no ties or relationship to Ebo or Crumbley, or either of their families --- which is of such nature and character that it's inclusion in a new trial would compel a different verdict for Ebo. *Commonwealth v. Padillas*, 997 A.2d 356, 365 (Pa.Super. 2010).

## CONCLUSION

Wherefore, Counsel asks the Court to enter an Order granting the requested relief in Ebo's PCRA Petition in the form of a new trial. A decision to the contrary would be an abuse of discretion and misapplication of the law.

Respectfully Submitted,

*Diana Stavroulakis*
Diana Stavroulakis

9

## **CERTIFICATE OF COMPLIANCE**

      I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records Of The Appellate And Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Date: June 10, 2019                             Submitted by:

                                                          *Diana Stavroulakis*
                                                       Diana Stavroulakis, Esquire
                                                       PA ID #59255
                                                       262 Elm Court
                                                       Pittsburgh, PA 15237

Respondents' Exhibit 68

## CERTIFICATE OF SERVICE

I, undersigned counsel, do hereby verify and state that a true and correct copy of this pleading has been served upon the following individuals, this 11th day of June 2019, as follows:

**Service by Hand-Delivery:**

Hon. Beth A. Lazzara
Court of Common Pleas
509 Courthouse
436 Grant Street
Pittsburgh, PA  15219

Ms. Alicia Searfoss, Esquire
District Attorney's Office
436 Grant Street
401 Courthouse
Pittsburgh, PA 15219

Respectfully Submitted:

*Diana Stavroulakis*
Diana Stavroulakis

Respondents' Exhibit 68