Received 6/30/2020 3:52:51 PM Superior Court Western District

Filed 6/30/2020 3:52:00 PM Superior Court Western District
58 WDA 2020

**IN THE**
**SUPERIOR COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

No.  58 WDA 2020

**COMMONWEALTH OF PENNSYLVANIA,**
**Appellee**

**V.**

**MATHEW EBO,**
**Appellant**

### BRIEF FOR APPELLANT

**This is an appeal from the Order entered December 13, 2019, dismissing the PCRA Petition at No. CP-02-CR-2821-2012 in the Court of Common Pleas of Allegheny County, Pennsylvania, Criminal Division.**

ATTORNEY FOR APPELLANT:

**Diana Lynn Stavroulakis, Esquire**
**PA ID #59255**

**3362 Babcock Boulevard**
**P.O. Box 15479**
**Pittsburgh, PA 15237**

**(412) 600-8608**

**Diana@Stavroulakislaw.com**

Respondents' Exhibit 74

0902

# **TABLE OF CONTENTS**

TABLE OF CITATIONS…………………………………….    4

RULES AND STATUTES……………………………….    4

STATEMENT OF THE QUESTIONS PRESENTED…………    5

ORDER IN QUESTION…………………………………..    6

STATEMENT OF JURISDICTION………………………….    7

STATEMENT OF THE SCOPE AND STANDARD OF REVIEW..    8

STATEMENT OF THE CASE…………………………….    9

ARGUMENT……………………………………………….    18

I.    The PCRA Court erred in denying relief where Ebo established his after-discovered evidence claim through Raglin's exculpatory eyewitness testimony. …………………………………………    18

II.    The PCRA Court erred in denying relief by incorrectly concluding that Raglin's testimony was offered solely to impeach Robinson's testimony, when in fact it was being offered as substantive, exculpatory evidence establishing Ebo's innocence. …………………………….    30

III.    The PCRA Court erred in denying relief because Raglin's testimony is likely to compel a different verdict at a new trial. ……….……..    32

CONCLUSION………………………………………….    34

CERTIFICATION OF WORD COUNT COMPLIANCE …….    35

CERTIFICATION OF REDACTION COMPLIANCE ……….    36

ORDER & OPINION DISMISSING PCRA PETITION
    Dated – December 13, 2019 ….. .............................…….    Appendix A

2

Respondents' Exhibit 74

ORDER IN LIEU OF 1925(A) OPINION
        Dated –February 5, 2020 …………...................................……    Appendix B

CONCISE STATEMENT OF ISSUES……………….………..        Appendix C

*IN FORMA PAUPERIS* ORDER APPOINTING COUNSEL ..…        Appendix D

Respondents' Exhibit 74

## **TABLE OF CITATIONS**

*Commonwealth v. Burkett*, 5 A.3d 1260 (Pa.Super. 2010). ……     18

*Commonwealth v. Carter*, 21 A.3d 680 (Pa.Super.2011). ……..     18

*Commonwealth v. Colavita*, 993 A.2d 874 (Pa. 2010). ………..     18

*Commonwealth v. Ford*, 44 A.3d 1190 (Pa.Super.2012). ……..     18

*Commonwealth v. Paddy*, 15 A.3d 431 (Pa. 2011) ……………..     18

Commonwealth v. Padilla, 997 A.2d 356 (Pa. Super. 2010) ….     25

*Commonwealth v. Rivera*, 939 A.2d 355 (Pa. Super. 2007) …..     19

*Commonwealth v. Reaves*, 923 A.2d 1119 (Pa. 2007). …………..     18

*Commonwealth v. Small*, 189 A.3d 961 (Pa. 2018) ……………..     24

*Commonwealth v. Widmer*, 744 A.2d 745 (Pa. 2000) …………..     8

## **RULES, STATUTES AND MISCELLANEOUS**

18 Pa.C.S.A. §903(c) …………………………………………     9

18 Pa.C.S.A. §2502(a) ………………………………………     9

18 Pa.C.S.A. §3701(a)(1)(i) …………………………………     9

18 Pa.C.S.A.  §3702(a) ……………………………………….     9

18 Pa.C.S.A. §6105(a)(1) …………………………………….     9

18 Pa.C.S.A. §6106(a)(1) …………………………………...     9

42 Pa.C.S.A. §9543, *et seq* ……………………………………     *passim*

Respondents' Exhibit 74

## <u>STATEMENT OF THE QUESTIONS PRESENTED</u>

I.     The PCRA Court erred in denying relief where Ebo established his after-discovered evidence claim through Raglin's exculpatory eyewitness testimony.

II.    The PCRA Court erred in denying relief by incorrectly concluding that Raglin's testimony was offered solely to impeach Robinson's testimony, when in fact it was being offered as substantive, exculpatory evidence establishing Ebo's innocence.

III.   The PCRA Court erred in denying relief because Raglin's testimony is likely to compel a different verdict at a new trial.

Respondents' Exhibit 74

0906

## ORDER IN QUESTION

This is an appeal from the Order entered December 13, 2019, at No. CP-02-CR-2821-2012 in the Court of Common Pleas of Allegheny County, Pennsylvania, Criminal Division, which dismissed the PCRA Petition. The Order is attached hereto as **Appendix A**.

Respondents' Exhibit 74

## <u>STATEMENT OF JURISDICTION</u>

This Honorable Court has jurisdiction by virtue of the Act of July 9, 1976.

P.L. 586, No. 142, section 2, effective June 27, 1976, as amended 42 Pa.C.S. §742.

Respondents' Exhibit 74

0908

## STATEMENT OF THE SCOPE AND STANDARD OF REVIEW

The appellate court's scope of review consists of an examination of the certified record on appeal.  By reviewing those things contained within the certified record, the appellate court can determine if the lower court's ruling is supported in the record.  *Commonwealth v. Widmer*, 744 A.2d 745, 750 (Pa. 2000).

8

Respondents' Exhibit 74

# STATEMENT OF THE CASE

## A. PROCEDURAL HISTORY

Matthew Ebo (Ebo) was charged by criminal information at CC 201202821. Represented at trial by Randall McKinney, Esq., Ebo proceeded to a jury trial along with his co-defendant, Thaddeus Crumbley (Crumbley), who was represented by Wendy Williams, Esq. The jury convicted Ebo of one count each of First Degree Murder, 18 Pa.C.S.A. §2502(a); Robbery – Inflict Serious Bodily Injury, 18 Pa.C.S.A. §3701(a)(1)(i); Robbery of a Motor Vehicle, 18 Pa.C.S.A.  §3702(a); Firearms Not to be Carried Without a License, 18 Pa.C.S.A. §6106(a)(1); Possession of Firearms Prohibited, 18 Pa.C.S.A. §6105(a)(1); Conspiracy to Commit Robbery, 18 Pa.C.S.A. §903(c); and Conspiracy to Commit Homicide, 18 Pa.C.S.A. § 903(c).

On November 28, 2012, the court imposed a sentence of life imprisonment on the homicide conviction, and an aggregate sentence of 46 to 92 years on the remaining counts.  Attorney McKinney was permitted to withdraw his appearance at that point, and Attorney Jessica Herndon, of the Allegheny County Public Defender's Office, was appointed to represent Ebo.

The Court granted counsel's motion to file post-sentence motions, *nunc pro tunc*.  Consequently, a Supplemental Post-Sentence Motion was filed on April 19, 2013, and was denied by operation of law on June 26, 2013.

Respondents' Exhibit 74

0910

A timely Notice of Appeal was filed on July 25, 2013.  After the briefs were filed at 1194 WDA 2013, Attorney Herndon filed an Application for Remand based on after-discovered evidence.  The Superior Court granted the request, relinquished jurisdiction, and ordered the trial court to conduct a hearing on the after-discovered evidence to determine if a new trial should be granted.

On remand, Victoria Vidt, Esquire, of the Public Defender's Office, proceeded as Ebo's attorney. A hearing was held for both Ebo and his co-defendant, Crumbley, on October 29, 2015. On December 22, 2015, the Court entered an Order denying the motion for a new trial.

A timely Notice of Appeal was filed on January 13, 2016. At 92 WDA 2016. A panel of the Superior Court filed a Memorandum and Order dated June 21, 2017, affirming the conviction but vacating the sentence and remanding the case for resentencing, as the sentence initially imposed pursuant to 42 Pa.C.S. §9712 was unconstitutional under *Alleyne v. United States,* 570 U.S. 99 (2013) and *Commonwealth v. Newman*, 99 A.3d 86 (Pa. Super. 2014). [1]

---

[1] On January 17, 2018, Ebo filed a *pro se* PCRA Petition. Present counsel was appointed to represent Ebo on his collateral proceeding. However, the case had been remanded for resentencing and proceeding on the petition would have been improper at that point. In essence, the petition was stayed until Ebo was resentenced, the post-sentence motions were denied, and he determined not to proceed with the direct appeal.

Respondents' Exhibit 74

On July 14, 2017, Ebo filed a Petition for Allowance of Appeal to the Supreme Court of Pennsylvania. By Order dated December 13, 2017, allocatur was denied at 279 WDA 2017.

On February 28, 2018, the court resentenced Ebo but structured the sentence so that, ultimately, it was the same sentence initially imposed: a period of life imprisonment and an aggregate 46 to 92 years. Timely post-sentence motions were filed on March 6, 2018. Motions were denied by Order filed April 11, 2018, prompting Ebo to file a Notice of Appeal to the Superior Court of Pennsylvania.

On May 30, 2018, Attorney Vidt file a Praecipe to Discontinue the Appeal at 679 WDA 2018 so that Ebo could, instead, pursue the within Post-Conviction Relief Act Petition. That same day the Superior Court filed a Certification of Discontinuance.

Present counsel filed an Amended Post-Conviction Relief Act Petition with request for additional time to supplement the petition, and Motion for Appointment of Investigator on June 29, 2018. By Order of July 5, 2018, the Court granted the extension. Also by Order of July 5, 2018, the Court granted Ebo funds for an investigator.

On August 24, 2018, counsel filed another request for extension of time which was granted by Order dated August 28, 2018. The Supplement was filed on November 30, 2018. The Commonwealth filed its Answer on December 3, 2018.

Respondents' Exhibit 74

An Evidentiary Hearing was held May 10, 2019. Counsel requested permission to file a memorandum of law following the hearing, which the Court granted, and which counsel filed on June 11, 2019.

On December 13, 2019, the PCRA Court filed a Memorandum Opinion and Order which denied the PCRA Petition. (Appendix A) A timely Notice of Appeal was filed to this Honorable Court. As directed, counsel filed a Concise Statement of Issues On Appeal. (Appendix C) The PCRA Court entered an Order in lieu of Opinion to satisfy the requirements of a 1925(a) Opinion. (Appendix B)

This timely appeal to the Superior Court follows.

## B. RELEVANT FACTS

In the Court's 1925(a) Opinion, filed June 25, 2014, the facts of the case were summarized as follows:

> On May 16, 2011, Todd Mattox was shot to death in the parking lot of the Leechburg Garden apartments in Penn Hills. (T.R. 8/20/12, p. 240)[2] He had suffered three (3) gunshot wounds, two (2) to the trunk and one (1) fatal shot to the head. (T.R. 8/20/12, pp. 246-261, Ex. 4-16).

---

[2] The notation "T.R. 8/20/12" refers to Volumes I and II of the trial transcript for August 20, 2012 through September 4, 2012.

Respondents' Exhibit 74

An eyewitness, Saday Robinson, described the sounds of an altercation above her apartment in the minutes before the shooting, followed by the noise of people running down stairs. (T.R. 8/20/12, pp. 527-528). She then saw Mr. Mattox being pushed out the front door of the apartment complex by two (2) African-American males with handguns. (T.R. 8/20/12, pp. 528-529). She was able to hear Mr. Mattox pleading for his life, offering the two (2) males everything that he had, and backing away from them with his hands up. (T.R. 8/20/12, pp. 529, 531). The eyewitness described seeing a man that she later identified as Defendant Ebo shooting at Mr. Mattox three (3) times. (T.R. 8/20/12, p. 531). Mr. Mattox fell to the ground after the gunshots were fired. (T.R. 8/20/12, p. 531). The witness then described seeing Defendant Ebo going through the pants pockets of Mr. Mattox before she saw a person that she later identified as Defendant Crumbley walk up to Mr. Mattox, stand over his body as it lay in the parking lot, and shoot him directly in the head. (T.R. 8/20/12, pp. 532-534). She then indicated that she saw the Defendants get into Mr. Mattox's white Nissan and speed out of the parking lot. (T.R. 8/20/12, p. 534). Mr. Mattox's vehicle was later found after it had been set on fire on Hill Street in Penn Hills. (T.R. 8/20/12, pp. 757-759, 762-780, 782-787, 804, 818, 841; Ex. 58-63, Ex. 66-67).

…

John Gardone also testified that Mr. Mattox was chased by two (2) African-American males before he was shot several times in the parking lot of the Leechburg Gardens. (T.R. 8/20/12, pp. 591-592). He also saw the two (2) suspects enter a white vehicle and speed from the parking lot. (T.R. 8/20/12, pp. 492-493). Another witness, Yurri Lewis, heard multiple shots that day, although he did not witness the shooting. (T.R. 8/20/12, p. 513). He did, however, see an African-American male going through the pockets of a man lying in the parking lot of Leechburg Garden Apartments. (T.R. 8/20/12, p. 515). He saw the man who had been rifling through the victim's pockets enter a white car and speed out of the parking lot. (T.R. 8/20/12, p. 515) Detective Anthony Perry confirmed that the right front pants pocket of Mr.

13

Mattox was pulled out when he arrived at the scene. (T.R. 8/20/12, pp. 302-304, 330-334, Ex. 41). The left front pocket was in its normal position. (T.R. 8/20/12, pp. 302-304.

Despite the fact that there were several eyewitnesses to the events that occurred on May 16, 2011, none of the witnesses interviewed by either Penn Hills police officers or Allegheny County detectives were able to positively identify the actors.

The Defendants became suspects in the Todd Mattox murder following a string of events occurring over the course of the several months following the slaying. On June 2, 2011, Defendant Crumbley was involved in a shooting in Swissvale, in which he was shot several times. (T.R. 8/20/12, pp. 855-858). Two types of shell casings were recovered from the scene, including the same type of shell casings that were found at the Todd Mattox murder scene, those being from a .40 caliber Smith and Wesson Springfield Armory pistol. (T.R. 8/20/12, pp. 885-886). A friend of Defendant Crumbley's, Asa Thompkins, was present at the scene of the shooting. (T.R. 8/20/12, pp. 847, 852). One week later, on June 9, 2011, Asa Thompkins was pulled over for a traffic stop in South Park. (T.R. 8/3/12, p. 20; TR 8/20/12, p. 1009). A Springfield Armory pistol was found under the front passenger seat of the car, and Mr. Thompkins said that the gun was his. (T.R. 8/20/12, pp. 1010-1011).

On September 6, 2011, Thomas Julian Brown wrote a letter from the Allegheny County Jail to Detective Garlicki, of the Allegheny County Police, asking that he be put in touch with the detective who was handling the Todd Mattox homicide. (T.R. 8/20/12, p. 697). He indicated that he was willing to provide information on that case. (T.R. 8/20/12, pp. 697-698). Mr. Brown further indicated that he had heard, several months earlier, Defendant Crumbley saying that he had "smoked" Todd Mattox. (T.R. 8/20/12, pp. 698-699). Mr. Brown's cousin was Asa Thompkins, and Mr. Brown's son, Leron Brown, was a friend of Defendant Crumbley. (T.R. 8/20/12, pp. 695-696). Leron Brown was found shot dead in January or February 2012, inside a car with Roman Herring, a cousin of Defendant Crumbley's, who

14

Respondents' Exhibit 74

0915

was also found dead in that same car. (T.R.   8/20/12, pp. 948, 991). Roman Herring was allegedly involved in the burning of a vehicle on Hill Street in Penn Hills. (T.R. 8/20/12, p. 945).

Defendant Crumbley became a suspect in the Todd Mattox murder in September 2011, after Detective Anthony Perry received a report connecting the handguns used in the Todd Mattox homicide with the weapons used in the Swissvale shooting on June 2, 2011, and after witness Thomas brown came forward with information about the homicide. (T.R. 8/20/11, pp. 1017, 1020, 1021, 1025). Defendant Ebo also became a suspect at that tie. (T.R. 8/20/11, p. 1017).

Eyewitness Saday Robinson was shown photo arrays containing photographs of the Defendants on September 16, 2011 (Defendant Crumbley only) and November 4, 2011 (both Defendants). (T.R. 8/20/12, pp. 356-357). However, on neither date did she select either of the Defendants from the arrays, although she testified that she was aware at the time of the viewing the arrays  that the Defendants were present in them. (T.R. 8/20/12, pp. 548-549). She indicated that she did not make the identifications on these dates because she was afraid, and her family and friends were telling her not to get involved. (T.R. 8/20/12, p. 548). Ms. Robinson also indicated in her testimony that she identified someone as "looking like" Defendant Ebo during one of the times when she was presented with photo arrays. (T.R. 8/20/12, p. 548). She indicated that she did that deliberately. (T.R. 8/20/12, p. 549). However, no detective involved with presenting her with photo arrays ever indicated that there had been an identification of anyone one either September 16, 2011 or November 4, 2011. (T.R. 8/20/12, pp. 349-356, 337-344). Ms. Robinson moved out of Leechburg Gardens in July 2011. She left the Allegheny County area and moved across the country in October 2011. (T.R. 8/20/12, p. 546).  She returned to the area to testify upon the request of the police, who informed her that they had suspects in custody. (T.R. 8/20/12, p. 546). She was shown photo arrays on July 24, 2012, at which time she identified Defendant Crumbley after an

15

Respondents' Exhibit 74

0916

approximately fifteen (15) second pause, and she identified Defendant Ebo immediately. (T.R. 8/20/12, pp. 540-543).

*Trial Court Opinion*, filed June 25, 2014, at 4-8.

16

Respondents' Exhibit 74

## SUMMARY OF THE ARGUMENT

The PCRA Court erred in denying relief on Ebo's claim of after-discovered evidence through the testimony of Raglin. Although the PCRA Court cited the applicable standard, the Court erred when applying the standard to the underlying case. Specifically, the PCRA Court erred in determining that the after-discovered evidence was merely impeachment evidence and wouldn't have altered the outcome of the case. The PCRA Court inappropriately weighed Raglin's testimony against that of the Commonwealth's trial witness Robinson, and made a determination that Robinson was more credible. That is not the standard for determining whether or not a PCRA Petitioner has established the existence of after-discovered evidence. It is not for the PCRA Court to usurp the function of a jury which would be tasked with evaluating all evidence, including Ebo's after-discovered evidence, and then rendering a verdict.

Ebo is entitled to a new trial where he can present the testimony of Raglin to the Jury. It will then be for the Jury to consider Raglin's testimony, as well as Robinson's testimony; to assess that evidence; and to reach a verdict. Clearly, this Court must vacate the PCRA Court's ruling and remand the case for a new trial.

17

Respondents' Exhibit 74

0918

## ARGUMENT

**I.     The PCRA Court erred in denying relief where Ebo established his after-discovered evidence claim through Raglin's exculpatory eyewitness testimony.**

**A.     The standard of review of the PCRA Court's ruling**

This Court must review the ruling of the PCRA Court. The standard for

doing so has been set-forth as follows:

> We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. *Commonwealth v. Burkett*, 5 A.3d 1260, 1267 (Pa.Super. 2010). This review is limited to the findings of the PCRA court and the evidence of record. *Id.* We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. *Id.* This Court may affirm a PCRA court's decision on any grounds if the record supports it. *Id.* We grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. *Commonwealth v. Carter*, 21 A.3d 680, 682 (Pa.Super.2011). However, we afford no such deference to its legal conclusions. *Commonwealth v. Paddy*, 609 Pa. 272, 15 A.3d 431, 442 (2011); *Commonwealth v. Reaves*, 592 Pa. 134, 923 A.2d 1119, 1124 (2007). Further, where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary. *Commonwealth v. Colavita*, 606 Pa. 1, 993 A.2d 874, 886 (2010).

*Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa.Super.2012).   Ebo asserts that

this issue raises a question of law. Specifically, Ebo argues that he met the standard

18

Respondents' Exhibit 74

for establishing he had after-discovered which would alter the outcome of the trial.

The PCRA Court erred in applying that standard to the circumstances of this case.

**B.     Establishing after-discovered evidence**

The standard for establishing after-discovered evidence has been set-forth by the

appellate court, as follows:

> To warrant relief, after-discovered evidence must meet a four-prong test: (1) the evidence could not have been obtained before the conclusion of the trial by reasonable diligence; (2) the evidence is not merely corroborative or cumulative; (3) the evidence will not be used solely for purposes of impeachment; and (4) the evidence is of such a nature and character that a different outcome is likely. At an evidentiary hearing, an appellant must show by a preponderance of the evidence that each of these factors has been met in order for a new trial to be warranted.

*Commonwealth v. Rivera,* 939 A.2d 355, 359 (Pa. Super. 2007)

(citation omitted).   Ebo met this standard when he presented Raglin's

testimony at the Evidentiary Hearing. Ebo is eligible for relief under the Act

because Raglin's testimony is exculpatory in nature. Raglin's testimony was

unavailable to Ebo at the time of trial because Ebo had no way of knowing Raglin

was present during the shooting. This information was brought to Ebo's attention

after the trial was over. Most importantly, had Raglin's testimony been offered at

19

trial, the outcome of the case would have been different. Ebo was entitled to relief, and the PCRA Court's denial of relief was in error. 42 Pa.C.S.A. §9543(a)(2)(vi).

## C.   **Raglin's testimony**

At the Evidentiary Hearing which was held May 10, 2019,[3] Ebo offered the testimonial evidence of Robert Raglin, (Raglin), who was subjected to direct and cross-examination, as well as supplemental questioning directly from the PCRA Court. Throughout his testimony, Raglin was clear about what he witnessed the evening Todd Mattox was shot, as well as what prompted him to contact co-defendant Crumbley with this information, long after Crumbley and Ebo had gone to trial.

Specifically, Raglin stated that in 2011, he was employed as a jitney driver, providing transportation services similar to that of a Taxi driver. (HT 4)  An incident transpired on May 16, 2011, that stood out in Raglin's memory because it happened a week before his birthday – which is May 22nd. (HT 42). That day, he drove two African American males to Leechburg Gardens in Penn Hills around dusk, 7:00PM. (HT 10, 23, 29) He described the two passengers as one being 6'8

---

[3] References to the PCRA Evidentiary Transcript appear as "HT ___" throughout.

Respondents' Exhibit 74

or 6'9, really tall, with a dark complexion, who had to have his seat all the way

back; and the other passenger was short with a light complexion and sat behind

Raglin. (HT 5-6) He had driven these two individuals more than ten times before

that night.  (HT 6, 17)

Raglin identified the two men he jitneyed that evening as pictured in

Defense Exhibit "A" and Defense Exhibit "B," (pictures offered to the witness to

identify), with the shorter male being pictured in Defense Exhibit B. (HT 7-8)

Raglin didn't personally know these two men. However, he referred to the taller

one as "Stretch," and the shorter one as "Young Buck." (HT 8-9, 24) He heard the

two men refer to each other as "Ron" and "Rome." (HT 9, 26)

After the two men got out of his vehicle, Raglin turned his car around and got out

to "relieve himself" by the fire hydrant and big "Christmas Tree." (HT 10) He saw

a white car pull into the parking area. "Stretch" and "Young Buck" had guns and

started shooting in the area of the white car, and someone else was shooting back.

This was no more than 10 or 15 feet from where Raglin was standing. (HT 10-11,

29) Raglin dove to the ground, crawled into his car, put his seat back and drove out

of the parking area, with the white car following behind. (HT 10-11, 30, 43) Raglin

did not know who was driving that white car. (HT 11) He was concerned that the

white car was pursuing him because he witnessed the shooting. (HT 11-12) Raglin

Respondents' Exhibit 74

was not aware at that time that anyone was killed during that shooting incident. (HT 12)

In 2018, Raglin was in the Allegheny County Jail on the Fourth Floor, having just been brought in, when he noticed some inmates talking and pointing at him. (HT 12) Just before he was released, an inmate approached him and told him that he was there for the shooting incident. (HT 12-13, 25, 33-34)  This unidentified inmate named who was killed in the shooting in Penn Hills, Leechburg Gardens, but Raglin did not remember what he said. (HT 13) This confrontation stuck with Raglin because he thought the other inmate was going to assault him, and the jail guards became involved. (HT 13-14, 35)

Raglin was curious about the situation and had his friend google the Leechburg Gardens incident on her cell phone after he was released. (HT 14, 25, 35) The information his friend located online coincided with the date and time from the incident he had described about getting out of his car to relieve himself after dropping off "Stretch" and "Young Buck" that evening, and diving to the ground and crawling into his car to leave when he saw those men firing their guns in the direction of a white car that had entered the parking lot that day. (HT 14) However, the information retrieved on Google identified two other African American males as being convicted for the homicide as a result of that shooting incident. Raglin knew the two men had been wrongly convicted because it was the

22

Respondents' Exhibit 74

men he knew as "Stretch" and "Young Buck" who were involved in the shooting that evening. (HT 14, 25) Consequently, Raglin located Crumbley's institutional address and wrote to him to share that he witnessed the shooting and he knew Ebo and Crumbley had been wrongly convicted. (HT 14-15) Raglin explained that he contacted Crumbley because he didn't want an innocent person to be in jail. (HT 15)

Raglin felt compelled to tell Ebo and Crumbley what he witnessed that evening because he knew what it felt like to have a family member wrongly convicted. Raglin stated that it was like the entire family being in prison. (HT 15-16, 32) Raglin testified that he did not know, nor was he friends with, Crumbley or Ebo; he had never spoken to either of them; and he did not know their families. (HT 17-18, 36) Moreover, he specifically stated that on the night of the incident he could see very clearly, and neither Ebo nor Crumbley were present at Leechburg Gardens on May 16, 2011, and they were not the two men he witnessed shooting the victim. (HT 17, 36)

Raglin was not interviewed by the police after the shooting, and he did not go to the police immediately following the shooting, as he was not aware at that time that someone was killed. (HT 18-19) He clarified that even if he did know that someone died at that time, he wouldn't have gone to the police because it is "taboo in the black community to be talking to the police about anything." (HT 19,

23

0924

32, 34) He also mentioned that since reaching out to Crumbley and Ebo, and giving a written statement in this case, he has been harassed by the police and the District Attorney's Office. He informed the Court that if he had known he would be harassed in this way, he would not have come forward. (HT 33-34)

D. **The PCRA Court incorrectly concluded that Raglin's testimony would not be admissible at a new trial as after-discovered evidence because it constituted impeachment testimony**

Ebo established each prong of the four-part test as required when making a claim for relief based upon after-discovered evidence. Raglin's testimony was unavailable at the time of trial, and undiscoverable through the exercise of due diligence, because Ebo had no knowledge that Raglin witnessed the shooting; Raglin's testimony is not merely corroborative or cumulative in nature, because this testimony is substantive and exculpatory; Raglin's testimony would not be offered merely to impeach any other Commonwealth witness, but would be offered as substantive evidence that exonerates Ebo of the charges; and if a new trial is granted where Raglin is able to testify, the verdict would be different. *Commonwealth v. Small*, 189 A.3d 961, 972 (Pa. 2018). Ebo was entitled to relief under the Post-Conviction Relief Act.  42 Pa.C.S.A. §9543(a)(2)(vi).

Respondents' Exhibit 74

When applying the four-part test to Raglin's testimony, the PCRA Court determined that the first two prongs were satisfied. Consequently, Ebo established that Raglin's testimony was unavailable to him at the time of trial, and Raglin's testimony was not merely corroborative or cumulative. These two prongs are not at issue. On appeal, Ebo challenges the PCRA Court's determination that he did not meet the third and fourth prong. (Trial Court Opinion, December 13, 2019 at 11) Ebo, therefore, addresses the third prong.

The PCRA Court cited *Commonwealth v. Padilla*, 997 A.2d 356, 365 (Pa. Super. 2010) for the proposition that third-party testimony offered to exculpate a defendant who challenged identification testimony of an eyewitness at trial constitutes impeachment testimony which is improper after-discovered evidence testimony. (Trial Court Opinion, December 13, 2019, at 12) At the outset, Ebo notes that the PCRA Court omitted the word 'solely' when discussing the viability of impeachment testimony as after-discovered evidence. Case law, including *Padilla*, state that the after-discovered evidence cannot be offered *solely* to impeach other identification testimony offered at trial. In this case, Raglin's testimony identifies two other actors and thereby exonerates Ebo. Raglin's testimony was not merely offered to impeach Robinson's testimony, but rather to exculpate Ebo. On this basis, the PCRA Court misapplied the law.

Respondents' Exhibit 74

Additionally, Ebo argues that *Padilla* is factually distinguishable, and the PCRA Court's reliance thereon constitutes a misapplication of the correct legal standard for assessing after-discovered evidence. Particularly, the testimonial after-discovered evidence in question in *Padilla* came from an individual that already testified during the defendant's trial, and whose "newly discovered" testimony only corroborated other testimony already offered at trial. Thus, it was cumulative and solely being offered to impeach the identification testimony in *Padilla*. That is not at all what was offered to the PCRA Court in Ebo's case.

By comparison, Ebo offered Raglin – an individual unknown to Ebo, who did not testify in the jury trial --- who stated at the Evidentiary Hearing that he was present during the shooting, and that he drove the two individuals involved in that shooting (Ron and Rome) to the scene that day. Raglin's testimony was not corroborative of any other witness offered by Ebo during trial, and therefore it was not cumulative evidence being offered with the sole purpose of impeaching Robinson's testimony. To the contrary, Raglin's testimony exculpated Ebo. On this basis, Ebo is entitled to a new trial where he can offer exculpatory evidence for the jury to consider. He is entitled to present a defense. This Court must review the issue *de novo* because the PCRA Court incorrectly applied the appropriate standard when evaluating Ebo's claim for relief, and thereby erred in denying Ebo's request for collateral relief.

26

Respondents' Exhibit 74

E.    **The PCRA Court incorrectly concluded that Raglin's testimony would
       not be admissible at a new trial as after-discovered evidence because it
       wouldn't have compelled a different verdict**

Next, Ebo moves to the fourth prong. The PCRA Court concluded that even

if Raglin's testimony was offered at trial, it was unlikely that it would compel a

different verdict in light of Robinson's testimony and other circumstantial evidence

presented at trial. (Trial Court Opinion, December 13, 2019, at 15) Ebo submits

that the PCRA Court made this determination in error by concluding that Raglin's

testimony was not credible due to inconsistencies between his written statement

and his testimony during the Evidentiary Hearing. (*Id.* at 16) Ebo argues that a jury

would be tasked with determining the credibility to be afforded each witness

offered during a trial. Thus, the PCRA Court inappropriately usurped the province

of the jury, as fact-finder, and pre-emptively determined not to permit Raglin at a

new trial, where the jury would be free to make its own credibility assessments. It

would be for the jury to consider Robinson's testimony, Raglin's testimony, all

other testimonial evidence, whether direct or circumstantial, to assist in reaching a

reliable verdict. Ebo did not proceed to a bench trial. Thus, it was not for the

PCRA Court to compare Robinson's testimony compared to Raglin's, and to

decide that Raglin's testimony would not have compelled a different verdict.

27

Respondents' Exhibit 74

Following the Evidentiary Hearing, counsel asked the PCRA Court to consider that Raglin's testimony would have compelled a different verdict when taking into consideration specific facts revealed during the Jury Trial. Specifically, the police began to focus on Crumbley as the shooter in the underlying incident after a September 6, 2011, letter was sent to the Allegheny County Police by Thomas Julian Brown. In that letter, Mr. Brown indicated he wanted to provide information about the Todd Mattox homicide. (TT 697-698)[4] The information Mr. Brown contributed was that, at a prior point, he heard Crumbley say that he "smoked" Todd Mattox. (TT 698-699) This circumstantial evidence takes on a new character when you realize that Mr. Brown is the father of Leron Brown, (TT 695-696), a/k/a "Ron," and you consider that Raglin testified that Ron was one of the two men involved in the May 16, 2011, shooting at Leechburg Gardens.

Similarly, the Jury Trial testimony of Craig Clark revealed that Detective Hitchings interviewed him on July 10, 2012. The Detective informed Clark that his prints were found on a can of lighter fluid near a car that had been set on fire, which was connected to the Todd Mattox murder. (TT 939-943) Clark stated that he took the lighter fluid from his sister's house and gave it to Roman Herring, (a/k/a "Rome.") (TT 944-945) Clark testified that Roman set that car on fire. (TT

---

[4] References to the Jury Trial Transcripts appear as "TT ____."

28

Respondents' Exhibit 74

945, 949, 958)  Assistant District Attorney Stadtmiller asked Clark if Roman was about 6'6. Clark responded he was very tall. (TT 946-947) Raglin testified that it was "Rome" (Roman) that he drove to Leechburg gardens that day.

Raglin's testimony, standing alone, is exculpatory evidence for both Ebo. When considered in the greater context of other information established during the Jury Trial, it becomes apparent that LeRon Brown and Roman Herring were the two actors involved in the May 16, 2011, shooting in Leechburg Gardens, and the two men responsible for Todd Mattox's death. Thus, it is inconceivable that the PCRA Court would reach the conclusion that Raglin's testimony was not credible, and that it was unlikely to compel a different verdict.

Ebo has established that he has after-discovered evidence that mandates the awarding of a new trial, where a jury will have the opportunity to receive and to consider Raglin's testimony when deliberating on the charges and determining whether or not Ebo committed the crimes. Ebo was entitled to relief. The PCRA Court's failure to award relief was in error and must be remedied by this Court.

Respondents' Exhibit 74

**II.    The PCRA Court erred in denying relief by incorrectly concluding that Raglin's testimony was offered solely to impeach Robinson's testimony, when in fact it was being offered as substantive, exculpatory evidence establishing Ebo's innocence.**

As established in the argument supporting Issue I, the PCRA Court incorrectly concluded that Raglin's testimony was being offered solely to impeach Robinson's testimony.  To reiterate, the PCRA Court misapplied *Commonwealth v. Padilla*, 997 A.2d 356, 365 (Pa. Super. 2010) by failing to specify that third-party testimony offered to exculpate a defendant who challenged identification testimony of an eyewitness at trial constitutes impeachment testimony which is improper after-discovered evidence testimony if it is used *solely* for impeachment purposes. (Trial Court Opinion, December 13, 2019, at 12)  The PCRA Court completely omitted the word 'solely' when addressing whether Raglin's testimony was impeachment evidence that was improper after-discovered evidence.

Clearly, Raglin's testimony identifies two other actors and completely exonerates Ebo. Raglin's testimony was not offered *solely* to impeach Robinson's testimony, but primarily to exculpate Ebo. The PCRA Court misapplied the law and got it wrong.

Moreover, as already set-forth, *Padilla* is factually distinguishable. The PCRA Court's reliance thereon to deny relief constitutes a misapplication of the correct legal standard for assessing after-discovered evidence.  The testimonial

30

after-discovered evidence in *Padilla* was from a witness that previously testified at trial. More importantly, this witness's "newly discovered" testimony only corroborated other testimony offered at trial. It was cumulative and solely being offered to impeach the identification testimony in *Padilla*. Ebo's case is distinguishable.

Raglin was unknown to Ebo and did not testify in the jury trial. Raglin testified at the Evidentiary Hearing that he was present during the shooting, and that he drove the two individuals involved in that shooting (Ron and Rome) to the scene. Raglin's testimony was unique.  It was not corroborative of other evidence, and certainly not cumulative.  Raglin's testimony exculpated Ebo, and did not solely impeach Robinson.

Ebo is entitled to a new trial with this after-discovered evidence. Ebo is entitled to offer Raglin's testimony to a jury for their consideration when determining the facts of the case, and ultimately whether or not he is guilty. This Court should review the claim *de novo*, vacate the ruling of the PCRA Court, and grant Ebo a new trial.

Respondents' Exhibit 74

**III.   The PCRA Court erred in denying relief because Raglin's testimony is likely to compel a different verdict at a new trial.**

The PCRA Court was wrong when it determined that, at a new trial, Raglin's testimony would not compel a different verdict. Ebo reiterates what he set-forth within the argument in support of Issue I, and asks this Court to consider the overall impact of Raglin's testimony in conjunction with other testimony that was offered during the trial. In so doing, it will be clear to this Court that Raglin's exculpatory testimony would have prompted a not guilty verdict from the jury.

Initially, the police focused on co-defendant Crumbley as the shooter when a September 6, 2011, letter was sent to the Allegheny County Police by Thomas Julian Brown. Mr. Brown wanted to provide information about the Todd Mattox homicide. (TT 697-698)  He told police that he heard Crumbley say he "smoked" Todd Mattox. (TT 698-699) Mr. Brown is the father of Leron Brown, (TT 695-696), a/k/a "Ron," who Raglin testified was one of the two men involved in the May 16, 2011, shooting at Leechburg Gardens.

Craig Clark testified that Detective Hitchings interviewed him on July 10, 2012, and informed him that his prints were found on a can of lighter fluid near a car that had been set on fire, connected to the Todd Mattox murder. (TT 939-943) Clark stated that he took the lighter fluid from his sister's house and gave it to

Respondents' Exhibit 74

0933

Roman Herring, (a/k/a "Rome"), who set the car on fire. (TT 944-945, 949, 958) Clark stated Roman was very tall. (TT 946-947)

Raglin's testimony is unquestionably exculpatory. Additionally, when considered along with other information revealed during the Jury Trial, Raglin's testimony confirms that LeRon Brown and Roman Herring were the two actors involved in the May 16, 2011, shooting in Leechburg Gardens, and the two men responsible for Todd Mattox's death. Ebo urges this Court to consider the nature of Raglin's testimony, its importance to his defense, and to conclude that it would compel a different verdict. Ebo was entitled to collateral relief. The PCRA Court erred in denying relief. This Court must vacate the PCRA Court's Order and grant a new trial where Raglin will be offered as a witness for the defense.

Respondents' Exhibit 74

## CONCLUSION

**WHEREFORE,** in consideration of the rationale and arguments presented above, the Order of the PCRA Court must be vacated and Ebo must be granted a new trial.


**RESPECTFULLY SUBMITTED:**


**s/Diana Lynn Stavroulakis**
**Diana Lynn Stavroulakis**
**Attorney for Appellant**

Respondents' Exhibit 74

## <u>CERTIFICATION OF WORD COUNT COMPLIANCE</u>

Undersigned counsel hereby certifies that the Brief of Appellant contains

5,811 words, excluding those portions which are exempt from the applicable word-

count, in compliance with Pa.R.A.P. Rule 2135(a)(1) & (b), which directs that

principal briefs which exceed 30 pages shall contain a word count certification,

establishing that the brief does not exceed 14,000 words.

**Date: <u>June 30, 2020</u>**          **<u>s/Diana Stavroulakis</u>**
                                        **Diana Stavroulakis, Esquire**
                                        **Attorney for Appellant**

Respondents' Exhibit 74

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records Of The Appellate And Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.


**Date: June 30, 2020**                    **Submitted by:**

**s/Diana Stavroulakis**
**Diana Stavroulakis, Esquire**
**PA ID #59255**
**3362 Babcock Boulevard**
**P.O. Box 15479**
**Pittsburgh, PA 15237**

Respondents' Exhibit 74

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

CRIMINAL DIVISION

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | ) |
| | ) |
| v. | ) CC #   2012-2820 |
| | ) |
| THADDEUS CRUMBLEY, | ) |
| | ) |
| Defendant | ) |
| | ) |
| COMMONWEALTH OF PENNSYLVANIA | ) |
| | ) |
| v. | ) CC # 2012-2821 |
| | ) |
| MATTHEW EBO, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM ORDER

AND NOW, this __13th__ day of December, 2019, upon

consideration of the Defendants' counseled PCRA petitions, filed on August

14, 2018 (Def. Crumbley), and June 29, 2018 (Def. Ebo), the

Commonwealth's Answers thereto, filed on November 19, 2018 (Def.

Crumbley) and December 3, 2018 (Def. Ebo), and upon further

consideration of the evidence and argument presented at the EVIDENTIARY

HEARING held on May 10, 2019, and the post-hearing submissions filed on

behalf of the Defendants and the Commonwealth, **the court HEREBY**

**FINDS THAT THE DEFENDANTS ARE NOT ENTITLED TO PCRA RELIEF**

1

**based on their after-discovered evidence claim under 42 Pa. C.S.A. §9543(a)(2)(vi).** The court offers the following rationale in support of this Order denying PCRA relief.

## A. RELEVANT PROCEDURAL HISTORY

Following a jury trial that led to their First-Degree Murder convictions, the Defendants were sentenced on November 28, 2012. The Defendants pursued direct appeals before the Superior Court of Pennsylvania. Prior to their brief submissions, the Defendants filed Applications for Remand based on After-Discovered Evidence. The Defendants claimed that Saday Robinson, the central eyewitness who testified at their joint trial, had subsequently recanted her identification of the Defendants as the perpetrators of the Todd Mattox murder.

On August 6, 2015, the Superior Court remanded the case back to the trial court so that it could conduct an evidentiary hearing and determine whether a new trial was warranted on that basis. However, at the evidentiary hearing that took place on October 29, 2015, Saday Robinson recanted her post-trial, unsworn recantation, claiming that she had been threatened by the Defendants' associates into recanting her trial testimony. In an Order dated December 22, 2015, this court found that a new trial was not warranted based on Ms. Robinson's unsworn "recantation" that she had made to defense investigators.

2

Respondents' Exhibit 74

The case was sent back to the Superior Court, and this court's finding that a new trial was not warranted based on Ms. Saday's "recantation" was included as one of the issues raised in the Defendants' appeals. On June 21, 2017, the Superior Court affirmed the Defendants' convictions but vacated Defendant Ebo's sentences at Counts Three (3) and Six (6) based on <u>Alleyne</u> violations.[1] (Superior Court Opinion (Ebo), Docket No. 92 WDA 2016, p. 17); (Superior Court Opinion (Crumbley), Docket No. 127 WDA 2016).

The Defendants subsequently filed Petitions for Allowance of Appeal ("PAA") before the Pennsylvania Supreme Court, which were both denied on December 13, 2017. The Defendants did not seek relief before the United States Supreme Court.

## B. <u>TIMELINESS OF PETITIONS</u>

The Defendants' PCRA Petitions are timely pursuant to 42 Pa. C.S.A. § 9545(b). Defendant Ebo was resentenced on February 28, 2018. Though he subsequently filed a direct appeal, his attorney discontinued that appeal on May 30, 2018. The Superior Court issued its Certification of Discontinuance that same day. Accordingly, Defendant Ebo's judgment of sentence became final on May 30, 2018. <u>Commonwealth v. McKeever</u>, 947 A.2d 782, 785 (Pa. Super. 2008) ("[T]he record reveals that Appellant's

---

[1] Defendant Ebo was convicted of Robbery of a Motor Vehicle at Count Three (3) and Conspiracy to commit Robbery – Serious Bodily Injury at Count Six (6).

3

**Respondents' Exhibit 74**

0940

judgment of sentence became final on . . . the date Appellant discontinued his direct appeal.").

Since Defendant Crumbley did not require re-sentencing, and the Pennsylvania Supreme Court denied his PAA petition on December 13, 2017, his judgment of sentence became final on March 13, 2018, when the 90-day period for seeking a *writ of certiorari* expired. <u>Commonwealth v. Ruiz</u>, 131 A.3d 54, n. 8 (Pa. Super. 2015). Accordingly, Defendant Crumbley had until March 13, 2019 to file a timely PCRA petition and Defendant Ebo had until May 30, 2019 to do the same. (*See* 42 Pa. C.S.A. § 9545(b)) (requiring timely petitions to be filed within one year of the judgment of sentence becoming final).

Defendant Crumbley filed his *pro se* PCRA petition on February 13, 2018, while Defendant Ebo filed his *pro se* PCRA petition on January 17, 2018.[2] Therefore, each of the Defendants' petitions are timely under the PCRA, and the issues raised therein have not been previously litigated on direct appeal.

## C. <u>AFTER-DISCOVERED EVIDENCE CLAIM</u>

After the appointment of PCRA Counsel, Defendant Crumbley submitted an Amended PCRA Petition on August 14, 2018, and Defendant Ebo submitted his Amended PCRA Petition on June 29, 2018. In these

---

[2] Defendant Ebo's *pro se* PCRA petition was held in abeyance pending his resentencing and any subsequent post-sentence motions/appeals.

Respondents' Exhibit 74

0941

petitions, the Defendants claimed that they had discovered that a man

named Robert Raglin witnessed the May 16, 2011 murder[3] of Todd Mattox

and that he would be willing to testify that the Defendants were not the

perpetrators of that crime. (*See* "Witness Statement" of Robert Raglin,

dated July 31, 2018, and attached to Def. Crumbley's Amended PCRA

Petition, filed on August 14, 2018); (*See* Sworn Notarized Statement of

Robert Raglin, dated May 4, 2018 and attached as "Exhibit A" to Def. Ebo's

PCRA petition, filed 6/29/18). Given the nature of these claims, the court

held a PCRA hearing on May 10, 2019 to determine the validity and

credibility of this potential after-discovered evidence.

At the PCRA Hearing, Mr. Raglin appeared and testified to the

following set of facts:

   a. On May 16, 2011, the day Todd Mattox was shot to death at the

      Leechburg Gardens Apartments in Penn Hills, Mr. Raglin was

      working as a jitney driver. (PCRA Hearing Transcript ("HT"), held

      5/10/19, pp. 4-5, 23).

   b. That evening, shortly before the shooting occurred, Mr. Raglin

      picked up two (2) African American men and drove them to the

      Leechburg Gardens apartment. (HT, pp. 5-7, 23-24). He claimed

      that he recognized these men because they had used his jitney

---

[3] The facts relating to the murder of Todd Mattox were set forth in the Trial
Court Opinion ("TCO") that was filed on June 25, 2014.

Respondents' Exhibit 74

services "more than ten" times in the past. (HT, pp. 5-7). He described one of the men as being "really tall" with "dark skin," approximately 6'8 in height. (HT, p. 6). He described the other man as being "short" and "light-skinned." (HT, p. 6).

c. When presented with photographs that were marked as Defense Exhibits A and B, he was able to identify the individuals in those pictures as the men he had driven to the Leechburg Gardens apartment that day. (HT, pp. 7-8). He had nicknamed them "stretch" and "young buck" but recalled that they referred to each other as "Ron and Rome or something like that." (HT, pp. 8-9, 26).

d. Mr. Raglin testified that he dropped these men off at the Leechburg Gardens at approximately 7:00 p.m., when it was getting dim outside. (HT, pp. 10, 29).

e. After he dropped them off, Mr. Raglin testified to the following series of events:

> I was turning my car around so I could go out. I had to go to the bathroom by the fire hydrant and the big Christmas tree. As I'm standing up peeing, a white car comes in [the parking lot], two guys started busting off caps, and everybody started shooting at each other. I dove on the ground, crawled in my car, dropped my seat back and pulled out. (HT, p. 10).

f. Mr. Raglin testified that he "clearly" saw that "Ron and Rome" were firing their guns "[o]ver in that direction towards the

6

Respondents' Exhibit 74

parking lot in that area" where the white car was located. (HT, pp. 11, 36).

g. However, he also testified that he "wasn't paying no attention" to what or who they were shooting at because he dropped to the ground as soon as he saw "the sparks and fires." (HT, pp. 10-11). As he described it: "I dropped down, peed on myself, crawled in my car, kicked my seat back and just pulled off. I started lifting my head up as I am pulling out." (HT, p. 30).

h. After Mr. Raglin got back inside of his vehicle, he noticed that the white car had pulled out behind him, and he thought that the people inside of the white car were going after him because of what he had just witnessed. (HT, pp. 11, 31).

i. Even though Mr. Raglin saw Ron and Rome shooting at the people in the white car, Mr. Raglin thought that Ron and Rome were now in the white car behind him. (HT, pp. 12, 31). However, Mr. Raglin never saw anyone get in or out of the white car, and he could not see inside of the vehicle at any point. (HT pp. 11, 43-44).

j. Mr. Raglin was able to retreat safely from the scene, but he never went to the police to report the shooting that he had allegedly witnessed, and, at that time, he was unaware that

7

**Respondents' Exhibit 74**

anyone had been killed in the shootout. (HT, pp. 12, 19). Law

enforcement also never attempted to contact him in 2011

about the shooting. (HT, p. 18).

k.  When asked why he decided to come forward with this

information in 2018, Mr. Raglin testified as follows:

> I was in the [Allegheny] county jail, and I was on the
> fourth floor just coming in, and these gentlemen was
> talking and they was pointing at me. So they called me to
> be released. As I am coming downstairs to be released,
> **some young guy told me** - - he was from Turtle Creek or
> something - - **he told me that I was there. And I said,**
> **"[w]here?" He says "you was there for the**
> **["Leechburg, Penn Hills"] shooting." And he goes,**
> **"say that you wasn't, and I'll jump on you." I'm like,**
> **what the hell? So I put my foot on the bunk and**
> **stood up to fight to defend myself.** (HT, pp. 12-
> 13)(emphasis added).

l.  Mr. Raglin testified that this young man was a fellow inmate

whom he did not know and had never seen before. (HT, pp.

12-13, 24, 33-34). This unidentified inmate told Mr. Raglin

that he knew Mr. Raglin was there that night because he was

there too. (HT, pp. 12, 34).

m. Mr. Raglin stated that the inmate provided the details of the

incident, telling him "exactly where it happened, exactly what

time it was. [The inmate] said the guy's name that died." The

inmate also told him that "these were the two men that did

it." (HT, pp. 24-25, 33).

8

Respondents' Exhibit 74

n. Mr. Raglin testified that he was scared that this inmate was going to physically assault him. (HT, pp. 13, 33, 34-35). He "felt threatened enough . . . to jump on the bunk and brace" himself "for just two of them against me." (HT, p. 35). The jail guards had to step in to prevent an altercation. (HT, pp. 13-14, 35).

o. Mr. Raglin testified that he "didn't know any of this [information]" and that he was "in shock" because he was "being attacked" so he "had to do research on why" he was "being attacked." (HT, pp. 25, 33, 45).

p. Mr. Raglin testified that when he was released from jail shortly thereafter, he had a friend of his fact-check the information that the inmate had provided on her cell phone because he wanted to know why he "was threatened for my life in jail." (HT, pp. 13-14, 25, 45-46). He asked his friend to google "the days, dates, things like that." (HT, pp. 14, 39, 45).

q. When he saw the pictures of the Defendants and learned that they had been convicted of the murder, he "knew [they were not] the people that" he had driven to the complex. (HT, p 14). This prompted Mr. Raglin to write a letter to Defendant

Respondents' Exhibit 74

Crumbley telling him "that I knew they were innocent because I was there." (HT, pp. 14-15).

r. Mr. Raglin testified that he decided to reach out to Mr. Crumbley because he had a brother in prison who he believes was wrongfully convicted, and he did not "want an innocent man to be in jail." (HT, pp. 15-16, 33, 39-40).

s. Mr. Raglin further testified that he does not know and has never seen any member of the Crumbley or Ebo family and that the Defendants were not present during the shooting incident that he witnessed. (HT, pp. 16-17, 36).

t. Mr. Raglin confirmed that the witness statements that were attached to the PCRA petitions were true. (HT, p. 23). Though he claimed he saw "something in one line somewhere" when he was reading it that was a discrepancy, but he never scratched anything out or attempted to correct this purported discrepancy. (HT, p. 23).

u. Mr. Raglin also testified that he did not attempt to contact law enforcement or the District Attorney's Office with the information he had relayed to Defendant Crumbley through his letter.   (HT, pp. 39-41).

v. When questioned by this court, Mr. Raglin clarified that he did not actually see anyone get struck by a bullet, he did not see

10

0947

what the victim looked like at any point, and he did not see

anyone laying on the ground. (HT, pp. 42-43).  He also

testified that he never saw anyone get out of the white car

before the shooting started and he did not see who entered

the white car after the shooting because he "wasn't paying

attention" and "everything happened in a tenth of a second."

(HT, pp. 43-44).

### Application of Law to Facts

In Commonwealth v. Burton, 158 A.3d 618, 629 (Pa. 2017), the

Pennsylvania Supreme Court reiterated the requirements necessary to

establish a successful after-discovered evidence claim pursuant to 42 Pa.

C.S.A. § 9543(a)(2)(vi):

> "[W]here a petition is otherwise timely, to prevail on an after-
> discovered evidence claim for relief under subsection
> 9543(a)(2)(vi), a petitioner must prove that (1) the exculpatory
> evidence has been discovered after trial and could not have been
> obtained at or prior to trial through reasonable diligence; (2) the
> evidence is not cumulative; (3) it is not being used solely to
> impeach credibility; **and** (4) it would likely compel a different
> verdict. Commonwealth v. D'Amato, 579 Pa. 490, 856 A.2d 806,
> 823 (2004); see Cox, 146 A.3d at 227–28 ("Once jurisdiction
> has been properly invoked (by establishing either that the
> petition was filed within one year of the date judgment became
> final or by establishing one of the three exceptions to the PCRA's
> time-bar), the relevant inquiry becomes whether the claim is
> cognizable under [Section 9543] of the PCRA.") (emphasis
> added).

In this case, this court finds that Robert Raglin's testimony fails to

satisfy the third and fourth prongs of this test.

11

Respondents' Exhibit 74

### Evidence Solely Used For Impeachment

With respect to the third prong, our appellate court in <u>Commonwealth v. Padilla</u>, 997 A.2d 356, 365 (Pa. Super. 2010) offered the following guidance:

> "Whenever a party offers a witness to provide evidence that contradicts other evidence previously given by another witness, it constitutes impeachment...." <u>Commonwealth v. Weis</u>, 416 Pa. Super. 623, 611 A.2d 1218, 1229 (1992). **Where eyewitness identification tied the defendant to the crime charged and the defendant challenged the identification in his trial, third-party testimony exculpating the defendant impeaches the eyewitness**. <u>Commonwealth v. Moore</u>, 534 Pa. 527, 561, 633 A.2d 1119, 1136 (1993), cert. denied, 513 U.S. 1114, 115 S.Ct. 908, 130 L.Ed.2d 790 (1995) (rejecting witness' statement against penal interest as reliable after-discovered evidence, where sole purpose of statement was to impeach testimony connecting defendant to crime) (emphasis added).

Here, the Defendants are offering Mr. Raglin's testimony to exculpate them, which in turn, impeaches the credibility of Saday Robinson, the central eyewitness who consistently, and very convincingly, identified the Defendants as the men who murdered Todd Mattox. The Defendants challenged Ms. Robinson's identification testimony all throughout the lower court proceedings and direct appeal.

Indeed, an appellate remand was even required to address the post-trial attempt made by the Defendants' associates to persuade Ms. Robinson to recant her trial testimony. (*See* Order of Court dated 10/29/15, pp. 2-4) ("During her testimony at the October 29, 2015 hearing, Ms. Robinson explained that the statements that she had made in video and written form

12

Respondents' Exhibit 74

were untruthful. She explained that she had lied to [the] defense

investigator . . . because she had been threatened by people associated with

the defendants. Additionally, she had been offered a substantial sum of

money - - $ 25,000 - - to recant her trial testimony.").

The Defendants have argued that such evidence is not being solely

used to impeach because it constitutes substantive, exculpatory evidence

which unequivocally establishes their innocence.  Having presided over the

original trial, the after-discovered evidence hearing, and the PCRA hearing,

this court has little trouble disagreeing with that argument.

At the PCRA hearing, this court paid careful attention to Mr. Raglin as

he testified, studying his tone, demeanor, and overall credibility, which was

substantially lacking. Although Mr. Raglin claimed to have "clearly" seen

"Ron and Rome" firing their guns at the white car, and although he

maintained that the Defendants were not present at the scene, that

testimony must be considered against other portions of his testimony

relating to what he did *not* see at the time of the shooting. (HT, pp. 11, 17).

Mr. Raglin never saw the individuals in the white car, never saw

anyone get struck by bullets, and never saw anyone laying on the ground.

(HT, pp. 42-43). Significantly, Mr. Raglin repeatedly testified that he was not

paying any attention to the details after he heard gunfire because he

dropped to the ground and was focused on getting out of the parking lot

alive. (HT, pp. 10-11) ("I wasn't paying no attention. I was hitting the

13

Respondents' Exhibit 74

0950

ground. When I saw the sparks and fires, I dropped."). Mr. Raglin also testified to the presence of a "big *Christmas* tree" in the apartment complex, which this court finds to be curious considering the fact that the murder took place in the middle of May. (HT, pp. 10, 44).

*At best,* Mr. Raglin's testimony established that he may have been present at the scene of a shootout but it fell far short of establishing that he was an eyewitness to the Todd Mattox murder, especially when compared to Saday Robinson's testimony. As recounted in its Trial Court Opinion, Ms. Robinson observed first-hand each of the Defendants, with guns in their hands, shoot the victim. To be sure:

> . . . Saday Robinson [] described the sounds of an altercation above her apartment in the minutes before the shooting, followed by the noise of people running down stairs. (Trial Transcript ("TT"), held 8/20/12, pp. 527-28). She then saw Mr. Mattox being pushed out the front door of the apartment complex by two (2) African-American males with handguns. (TT, 8/20/12, pp. 528-29). She was able to hear Mr. Mattox pleading for his life, offering the two (2) males everything that he had, and backing away from them with his hands up. (TT, pp. 529-31). [She] described seeing a man that she later identified as Defendant Ebo shooting at Mr. Mattox three (3) times. (TT, p. 531). Mr. Mattox fell to the ground after the gunshots were fired. (TT, p. 531). [She] then described seeing Defendant Ebo going through the pants pockets of Mr. Mattox before she saw a person that she later identified as Defendant Crumbley walk up to Mr. Mattox, stand []over his body as it lay in the parking lot, and shoot him directly in the head. (TT, p. 532-34). She then indicated that she saw the Defendants get into Mr. Mattox's white Nissan and speed out of the parking lot. (TT, p. 534).

14

Respondents' Exhibit 74

Saday Robinson has repeatedly, and to her own detriment, identified the Defendants as the shooters, under oath in open court, at trial and then again during the after-discovered evidence hearing.  Moreover, as this court further explained in its October 29, 2015 Order:

> This court had the benefit of sitting through the original homicide trial, and it observed firsthand Ms. Robinson's demeanor when she provided her eyewitness account of the brutal murder and identified the Defendants as the perpetrators.  Ms. Robinson shook uncontrollably throughout her testimony and was clearly frightened to be involved in the case.  As the Commonwealth noted in its brief, Ms. Robinson had *nothing to gain and everything to lose* by testifying against the Defendants during the homicide trial.

Accordingly, the court finds that Mr. Raglin's testimony, which is far from credible, is being presented solely to impeach the strong, unwavering identification testimony of Saday Robinson, and that fact alone defeats their after-discovered evidence claim.

### *Evidence is Unlikely to Compel a Different Verdict*

With respect to the fourth prong, the court finds that it is unlikely that Mr. Raglin's testimony would compel a different verdict at trial when considered against the evidence as a whole.  In addition to Ms. Robinson's clear and unequivocal eyewitness testimony, other circumstantial evidence linked the Defendants to the shooting. (*See* Trial Court Opinion, filed 6/25/14).

Ultimately, this court did not consider Mr. Raglin's testimony to be credible because of the inconsistencies contained therein and because of the

Respondents' Exhibit 74

clear motive to fabricate his testimony out of fear for his life. For example, Mr. Raglin's witness statement says he had driven Ron and Rome in his jitney "two to three" times prior to the day of the shooting, but at the hearing he testified that he had driven them around "more than ten times." (Defendant's Crumbley's Amended PCRA Petition); (HT, p. 7).  In his testimony he said he had taken Ron and Rome to Leechburg Gardens before, but in his witness statement he says that was the first time he had ever taken them there. (Defendant's Crumbley's Amended PCRA Petition); (HT, p. 18). In his witness statement, the "friend" who helped him research the shooting after he was released from jail was a male, but at the hearing, Mr. Raglin testified that this friend was a female. (Defendant's Crumbley's Amended PCRA Petition); (HT, pp. 13-14, 25).

As Mr. Raglin noted several times throughout the hearing, he was approached by an inmate who told him, "you was there for the shooting . . . **[s]ay that you wasn't, and I'll jump on you."** (HT, p. 13) (emphasis added). The inmate told him who was killed, who the shooters were, and the time and location of the shooting. As Mr. Raglin put it, the inmate "was mentioning so much. It was just too much chaos." (HT, pp. 24-25). Thus, it is impossible to discern whether Mr. Raglin's testimony is purely a product of his memory or the information he had been threatened into "remembering" seven (7) years after the murder.  The court also questions why this unidentified inmate who allegedly was present at the shooting and

16

Respondents' Exhibit 74

0953

possessed this information, threatened Mr. Raglin into coming forward and has not come forward himself to corroborate his testimony

Another factor that further diminishes Mr. Raglin's credibility is the fact that his alleged motive to come forward, after his life was threatened, was to help clear the name of purportedly innocent men, yet he never contacted the authorities, or the District Attorney's Office, with the information he had about their "wrongful" convictions.  The court is also compelled to note that, somewhat conveniently, the men known as "Ron and Rome" were found dead in the same vehicle in early 2012, and "Rome" was Defendant Crumbley's cousin. (TT, pp. 945, 948, 991).  Accordingly, for all these reasons, the court finds that the Defendants have not established a successful after-discovered evidence claim, and no PCRA relief is warranted.

BY THE COURT:

_____, J.

BETH A. LAZZZARA, JUDGE

17

Respondents' Exhibit 74

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

CRIMINAL DIVISION

**ORIGINAL**
Criminal Division
Dept. Of Court Records
Allegheny County, PA

COMMONWEALTH OF PENNSYLVANIA   )
   )
   v.   ) CC # 2012-2821
   )
MATTHEW EBO,   )
   )
   Defendant.   )

## ORDER OF COURT

**AND NOW**, this _____ day of February, 2020, **it is HEREBY**

**ORDERED that the Clerk of Courts shall transmit the record on this**

**matter to the Superior Court of Pennsylvania forthwith.**  On February

1, 2020, the Defendant filed a timely Concise Statement of Matters

Complained of on Appeal ("Concise Statement") pursuant to Pa.R.A.P.

1925(b).  In his Concise Statement, the Defendant challenges this court's

December 13, 2019 Order denying PCRA relief.

The court's PCRA Order directly addresses the issues raised in the

Defendant's Concise Statement.  A copy of this Order is attached hereto.

This satisfies the requirements of Pa.R.A.P 1925(a)(1) that the court set

forth its reasons for issuing the Order appealed from.[1]  A copy of this Order

---

[1] Pa. R.A.P. 1925(a)(1) provides in relevant part: " . . . upon receipt of the
notice of appeal, the judge who entered the order giving rise to the notice of
appeal, *if the reasons for the order do not already appear of record*,
shall forthwith file of record at least a brief opinion of the reasons for the
order, or for the rulings or other errors complained of, or *shall specify in*

App. Respondents' Exhibit 74

has been served upon Counsel for the Defendant by regular mail, and upon

the Office of the District Attorney/Appeals Division, by interoffice mail.

BY THE COURT:

BETH A. LAZZARA, JUDGE          , J.

---

*writing the place in the record where such reasons may be found."*
(emphasis added).

2

Respondents' Exhibit 74

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY,
PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA          CP-02-CR-2821-2012

V.

MATTHEW EBO                           JUDGE LAZZARA

                                      CONCISE STATEMENT
                                      OF ERRORS ON APPEAL

                                      ON BEHALF OF:
                                      Matthew Ebo

                                      ATTORNEY:
                                      Diana Stavroulakis, Esq.
                                      PA ID #59255

                                      3362 Babcock Blvd.
                                      P.O. Box 15479
                                      Pittsburgh, PA 15237

                                      412-600-8608
                                      Diana@Stavroulakislaw.com

Respondents' Exhibit 74

0957

IN THE COURT OF COMMON PLEAS OF ALLGHENY COUNTY,
PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH of PENNSYLVANIA               CP-02-CR-2821-2012

v.

MATTHEW EBO                                JUDGE LAZZARA

### CONCISE STATEMENT OF ERRORS ON APPEAL

AND NOW comes the Matthew Ebo, (Ebo), through his attorney Diana Stavroulakis, Esquire, and submits this *Concise Statement of Errors on Appeal* pursuant to Rule 1925(b) of the Rules of Appellate Procedure:

1. The PCRA Court erred in denying relief where Ebo established his after-discovered evidence claim through Raglin's exculpatory eyewitness testimony.

2. The PCRA Court erred in denying relief by incorrectly concluding that Raglin's testimony was offered solely to impeach Robinson's testimony, when in fact it was being offered as substantive, exculpatory evidence establishing Ebo's innocence.

3. The PCRA Court erred in denying relief because Raglin's testimony is likely to compel a different verdict at a new trial.


Respectfully Submitted,

 /s/Diana Stavroulakis____
Diana Stavroulakis, Esq.

2

Respondents' Exhibit 74

## PROOF OF SERVICE

I, undersigned counsel, do hereby verify that this pleading has been PACFiled and a courtesy copy has been mailed to the following individuals, this 1st day of February 2020, as follows:

### Service by First Class U.S.P.S. Mail:

Hon. Beth A. Lazzara
Court of Common Pleas
509 Courthouse
436 Grant Street
Pittsburgh, PA  15219

Alicia Searfoss, Assistant District Attorney
District Attorney's Office
436 Grant Street
401 Courthouse
Pittsburgh, PA 15219

Respectfully Submitted:

/s/Diana Stavroulakis
Diana Stavroulakis

3

Respondents' Exhibit 74

0959

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA,     CRIMINAL DIVISION

v.                                CC No.: 2012-2821

MATTHEW EBO,

Defendant.

## ORDER

AND NOW, this _____ **24ᵗʰ** _____ day of ___ January ___, 2018, it is hereby ORDERED, ADJUDGED and DECREED as follows:

1.    On January 17, 2018, the Defendant filed a *pro se* Petition under the Post-Conviction Relief Act ("PCRA").

2.    Attorney Diana Stavroulakis, Esquire (262 Elm Court, Pittsburgh, PA 15237) is **HEREBY APPOINTED** as PCRA Counsel.

3.    An Amended PCRA Petition or No-Merit Letter shall be filed within **90 days** from the date of this Order.

4.    The Defendant is indigent, and any fees shall be paid by Allegheny County.

BY THE COURT:

_____, J.
BETH A. LAZZARA, JUDGE

2018 JAN 24  AM 11:56

Appellant's Respondents' Exhibit 74