Received 8/28/2020 2:44:50 PM Superior Court Western District

Filed 8/28/2020 2:44:00 PM Superior Court Western District
58 WDA 2020

**0960**

IN THE

**SUPERIOR COURT OF PENNSYLVANIA**

**PITTSBURGH DISTRICT**
_____

**NO. 58 WDA 2020**
_____

**COMMONWEALTH OF PENNSYLVANIA,**
*Appellee*

**V.**

**MATTHEW EBO,**
*Appellant*
_____

**BRIEF FOR APPELLEE**
_____

**Appeal from the Order Dismissing PCRA Petition entered on December 13, 2019 at No. CC 20120002821 in the Court of Common Pleas of Allegheny County, Pennsylvania, Criminal Division**
_____

**STEPHEN A. ZAPPALA, JR.**
*District Attorney*

**MICHAEL W. STREILY**
*Deputy District Attorney*

**AMY E. CONSTANTINE\***
*Assistant District Attorney*
**PA I.D. NO. 63385**

**Office of the District Attorney**
**401 Allegheny County Courthouse**
**Pittsburgh, Pennsylvania 15219-2489**
**(412) 350-4377**

**\*Counsel of Record**

Respondents' Exhibit 75

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................II

COUNTER-STATEMENT OF THE QUESTION INVOLVED .......................1

COUNTER-STATEMENT OF THE CASE....................................................2

SUMMARY OF THE ARGUMENT ............................................................19

ARGUMENT ..........................................................................................20

    I.    THE PCRA COURT PROPERLY DISMISSED APPELLANT'S CLAIM THAT THE TESTIMONY OF ROBERT RAGLIN QUALIFIED AS AFTER DISCOVERED EVIDENCE, WHERE THE PCRA COURT CONCLUDED THAT RAGLIN'S TESTIMONY WOULD HAVE BEEN USED TO IMPEACH THE TESTIMONY OF AN IDENTIFYING WITNESS AND WOULD NOT HAVE CHANGED THE OUTCOME OF TRIAL...................................20

CONCLUSION........................................................................................27

i

Respondents' Exhibit 75

0962

## TABLE OF AUTHORITIES

### Cases

*Commonwealth v. Abu-Jamal*, 720 A.2d 79 (Pa. 1998).............................23

*Commonwealth v. Castro*, 93 A.3d 818 (Pa. 2014) ...................................24

*Commonwealth v. Choice*, 830 A.2d 1005 (Pa. Super. 2003) ..................25

*Commonwealth v. Ford*, 44 A.3d 1190 (Pa. Super. 2012) .........................20

*Commonwealth v. Freeland*, 106 A.3d 768 (Pa. Super. 2014) .................20

*Commonwealth v. Johnson*, 966 A.2d 523 (Pa. 2009) ..............................25

*Commonwealth v. Jones*, 912 A.2d 268 (Pa. 2006) ..................................23

*Commonwealth v. Padillas,* 997 A.2d 356 (Pa. Super. 2010)....................22

*Commonwealth v. Smith,* 17 A.3d 873 (Pa. 2011)...............................20, 22

*Commonwealth v. Washington,* 927 A.2d 586 (Pa. 2007) .........................22

### Statutes

42 Pa. C.S.A. § 9543(a)...........................................................................22

Respondents' Exhibit 75

0963

## COUNTER-STATEMENT OF THE QUESTION INVOLVED

I.      WHETHER THE PCRA COURT PROPERLY DISMISSED APPELLANT'S CLAIM THAT THE TESTIMONY OF ROBERT RAGLIN QUALIFIED AS AFTER DISCOVERED EVIDENCE, WHERE THE PCRA COURT CONCLUDED THAT RAGLIN'S TESTIMONY WOULD HAVE BEEN USED TO IMPEACH THE TESTIMONY OF AN IDENTIFYING WITNESS AND WOULD NOT HAVE CHANGED THE OUTCOME OF TRIAL?

Answered in the affirmative by the PCRA court.

Respondents' Exhibit 75

<u>COUNTER-STATEMENT OF THE CASE</u>

Appellant was charged by Criminal Information at CP-02-CR-0002821-2012 with: 1 count of Criminal Homicide (18 Pa. C.S.A. §2501, for the death of Todd Mattox); 1 count of Robbery - Serious Bodily Injury (18 Pa. C.S.A. §3701(A)(1)(i)); 1 count of Robbery of a Motor Vehicle (18 Pa. C.S.A. §3702(A)); 1 count of Carrying a Firearm Without a License (18 Pa. C.S.A. §6106(A)(1)); 1 count of Persons Not to Possess a Firearms (18 Pa. C.S.A. §6105(A)(1)), and 1 count of Criminal Conspiracy - Robbery-Serious Bodily Injury (18 Pa. C.S.A. §903(A)(1) for Robbery - Serious Bodily Injury with Co-Defendant Thaddeus Crumbley), and one 1 count of Criminal Conspiracy - Homicide (18 Pa. C.S.A. §903(A)(1) for Criminal Homicide with Co-Defendant Thaddeus Crumbley).

On August 20, 2012, appellant, represented by Randall McKinney, Esquire, appeared for trial before the Honorable Beth A. Lazzara and a jury. Deputy District Attorney Steven Stadtmiller and Assistant District Attorney Courtney Butterfield represented the Commonwealth. At the conclusion of trial on September 4, 2012, the jury found appellant guilty of Murder in the First Degree, Robbery, Robbery of a Motor Vehicle and Possession of a Firearm Without a License. On November 28, 2012, appellant and co-defendant Crumbley were sentenced at a joint sentencing

2

Respondents' Exhibit 75

0965

hearing. Assistant District Attorney Courtney Butterfield represented the Commonwealth, and Attorney McKinney represented appellant. Judge Lazzara sentenced appellant as follows: at Count 1, Criminal Homicide, to a term of life imprisonment; at Count 2, Robbery, to no further penalty; at Count 3, Robbery of a Motor Vehicle, to a term of ten to twenty years of confinement to be served consecutive to the sentence at Count 1; at Count 4, Carrying a Firearm Without a License, to a term of three and a half to seven years of incarceration to be served consecutive to Count 3; at Count 5, Persons Not to Possess a Firearm, to a term of two and a half to five years of confinement to be served consecutive to Count 4; at Count 6, Conspiracy (Robbery), to a term of ten to twenty years of confinement to be served consecutive to Count 5; and at Count 7, Conspiracy (Homicide) to a term of twenty to forty years of confinement to be served consecutive to the sentence at Count 6.

On November 30, 2012, Attorney McKinney filed a Motion to Withdraw as Counsel. On December 12, 2012, the court issued an order granting Attorney McKinney's request to withdraw and appointing the Office of the Public Defender. Post sentence motions were filed, and denied on June 26, 2013.

On July 25, 2013, Assistant Public Defender Jessica Herndon filed a

3

Respondents' Exhibit 75

0966

Notice of Appeal in the Superior Court on appellant's behalf that was docketed at 1194 WDA 2013. On July 30, 2013, Judge Lazzara issued an Order directing the filing of a Concise Statement. On August 20, 2013, Attorney Herndon filed a Statement of Errors Complained of on Appeal that raised the following claims:

> a. The trial court abused its discretion by failing to grant Mr. Ebo a new trial due to the discovery violations involving the photo arrays presented to Saday Robinson. Robinson testified regarding a photo array that had not been provided to defense counsel. Law enforcement confirmed that there were multiple officers performing tasks on this case and showing different people multiple photo arrays. No one was in charge of monitoring what was occurring with these photo arrays. Law enforcement noted at trial that there was evidence that was not provided to the defense. Since Robinson was the only eyewitness to testify regarding Mr. Ebo's involvement in this case and there was no physical evidence tying Mr. Ebo to this case, it was imperative for the defense to have all information pertaining to the identification of Mr. Ebo by Robinson. This information was necessary for the defense to properly cross-examine Robinson. As such, Mr. Ebo was prejudiced and he is entitled to a new trial.

> b. The trial court abused its discretion by admitting any testimony and physical evidence, such as the handgun, related to the shooting of codefendant, Thaddeus Crumbley, that occurred on June 2, 2011. This evidence was completely irrelevant to whether Mr. Ebo was a perpetrator in the events that occurred on May 16, 2011. This evidence involving the shooting of Mr. Crumbley on

4

Respondents' Exhibit 75

June 2, 2011 did not prove Mr. Ebo's identity in the commission of the events of May 16, 2011. In addition to having no relevance, this evidence was prejudicial since the evidence made it appear that Mr. Ebo was somehow linked to this gun violence. Also, this evidence regarding completely unrelated events was very confusing since the jury was presented with a significant amount of evidence and testimony relating to a subsequent shooting that had absolutely no relevance to Mr. Ebo's involvement in the May 16, 2011 shooting for which he was on trial.

c. The trial court erred and abused its discretion by admitting evidence that Saday Robinson reviewed a photo array and identified Mr. Ebo as the perpetrator, and by permitting her subsequent in-court identification of Mr. Ebo. Robinson's identification of Mr. Ebo was not sufficiently reliable and the trial court's failure to suppress her unreliable identification violated Mr. Ebo due process rights. The photo array procedure was highly suggestive. She failed to identify Mr. Ebo as the perpetrator for fourteen months, and she could only identify him in a photo array after law enforcement continued to show her arrays with Mr. Ebo's image and told her that the suspects had been arrested. Also, people had told her that Mr. Ebo was the perpetrator and there was significant media coverage on this matter. The suggestiveness and taint surrounding Robinson's photo array identification gave rise to a substantial likelihood of misidentification. Moreover, the Commonwealth did not establish by clear and convincing evidence that Robinson's in-court identification of Mr. Ebo had an independent origin in her observations at the time of the incident. For example, Robinson had limited opportunity to view these events, she could not provide any significant description of the actors, and the description that she provided of Mr. Ebo did not

5

Respondents' Exhibit 75

0968

correlate to what Mr. Ebo actually looked like. Thus, this evidence should have been suppressed.

d. The trial court abused its discretion by failing to grant a new trial since the verdict on all counts was against the weight of the evidence. There was no physical evidence connecting Mr. Ebo to the crime scene or to the victim or co-defendant. The only evidence presented at trial linking Mr. Ebo to the incident consisted of Saday Robinson's questionable identification of him. There was no other testimony that Mr. Ebo was present at the crime scene, that he ever had contact with the murder weapon, or that he even knew the victim or the co-defendant, much less interacted with them during this incident. Robinson's testimony and her identification of Mr. Ebo were vague, tenuous, and uncertain at best. Robinson was only able to identify Mr. Ebo as a participant in this incident fourteen months after the incident. Although she had been shown photo arrays multiple times over the fourteen month period, she never identified Mr. Ebo until one month before trial. Additionally, Robinson's testimony was so incredible that it simply cannot support the verdict. During the fourteen months prior to Robinson's identification of Mr. Ebo, she had the opportunity to look into news stories and social media postings on this matter. She also discussed this incident with people in the community who informed her who they thought participated in this murder. Thus, she was likely influenced to identify Mr. Ebo since he was a suspect awaiting trial on this matter. Moreover, Robinson's story was completely untrustworthy because she presented incredible testimony under oath. She initially accused a different person of committing murder in this matter, she admitted to lying to police officers about this incident, the description that she provided of the perpetrator did not match Mr. Ebo's description, and her description

6

0969

of what occurred changed over time. She also testified about her lack of internet access during this time period, even though she had a Facebook account with postings on it regarding her young child. There was limited testimony from law enforcement that another individual, who received substantial payments for his participation in this investigation, may have identified Mr. Ebo as a suspect; however, this person never testified under oath regarding his alleged identification so it is unclear whether he could identify Mr. Ebo. Robinson was the only person who could identify Mr. Ebo at trial as participating in the incident. Her testimony was the only evidence linking Mr. Ebo to this crime, but her testimony was so incredible that basing a conviction on this meager evidence shocks the conscience.

(Docket entry number 51).   On June 25, 2014, Judge Lazzara filed an Opinion rejecting appellant's arguments.

On August 6, 2015, the Superior Court remanded the case for an evidentiary hearing and to determine whether a new trial was warranted based on after-discovered evidence. On October 29, 2015, a hearing was held for both appellant and co-defendant Crumbley. On December 22, 2015, Judge Lazzara issued an Order finding that a new trial was not warranted.

On January 13, 2016, Attorney Vidt filed a Notice of Appeal in the Superior Court that was docketed at 92 WDA 2016. On January 13, 2016, Judge Lazzara issued an Order directing the filing of a Concise Statement.

Respondents' Exhibit 75

0970

On February 2, 2016, Attorney Vidt filed a Concise Statement that raised

the following claims:

> a. The trial court abused its discretion by failing to award Mr. Ebo a new trial based upon after-discovered evidence. The new evidence is Ms. Saday Robinson's recantation of her identification of Mr. Ebo. Ms. Robinson was the sole connection between Mr. Ebo and the crimes in question. No physical evidence connected Mr. Ebo to the crime scene. The recantation testimony is substantive, exonerating evidence that Mr. Ebo is not connected to this crime. It is not mere cumulative evidence because, as noted, Ms. Robinson's identification testimony was the only thing connecting Mr. Ebo to this crime. As the Pennsylvania Supreme Court explained in *Commonwealth v. McCracken*, 659 A.2d 541, 549-50 (Pa. 1995):

>> "where the only Commonwealth witness who identified the perpetrator has recanted his testimony, such evidence can not be considered cumulative or corroborative because the defendant claimed that he did not commit the crime in question. This was the essence of [McCracken's] defense and the ultimate question in [McCracken's] trial. Thus, [the witness's] recantation is neither cumulative, corroborative, nor for impeachment purposes.

>> Ms. Robinson's recantation is direct and compelling testimony that Mr. Ebo was not present at the scene of the crime. Of course, Ms. Robinson recanted her recantation at the evidentiary hearing. Nonetheless, the jury should have been able to evaluate all of the different evidence provided by Ms. Robinson during their deliberations. Ms. Robinson's testimony is so full of inconsistencies

8

Respondents' Exhibit 75

that the jury must be given the opportunity to evaluate all of the information in order to adjudge whether Mr. Ebo is guilty. As they were unable to do so, a new trial is required.

b. The trial court abused its discretion by failing to grant Mr. Ebo a new trial due to the discovery violations involving the photo arrays presented to Saday Robinson. Robinson testified regarding a photo array that had not been provided to defense counsel. Law enforcement confirmed that there were multiple officers performing tasks on this case and showing different people multiple photo arrays. No one was in charge of monitoring what was occurring with these photo arrays. Law enforcement noted at trial that there was evidence that was not provided to the defense. Since Robinson was the only eyewitness to testify regarding Mr. Ebo's involvement in this case and there was no physical evidence tying Mr. Ebo to this case, it was imperative for the defense to have all information pertaining to the identification of Mr. Ebo by Robinson. This information was necessary for the defense to properly cross-examine Robinson. As such, Mr. Ebo was prejudiced and he is entitled to a new trial.

c. The trial court abused its discretion by admitting any testimony and physical evidence, such as the handgun, related to the shooting of codefendant, Thaddeus Crumbley, which occurred on June 2, 2011. This evidence was completely irrelevant to whether Mr. Ebo was a perpetrator in the events that occurred on May 16, 2011. This evidence involving the shooting of Mr. Crumbley on June 2, 2011 did not prove Mr. Ebo's identity in the commission of the events of May 16, 2011. In addition to having no relevance, this evidence was prejudicial since the evidence made it appear that Mr. Ebo was somehow linked to this gun violence.

9

Respondents' Exhibit 75

Also, this evidence regarding completely unrelated events was very confusing since the jury was presented with a significant amount of evidence and testimony relating to a subsequent shooting that had absolutely no relevance to Mr. Ebo's involvement in the May 16, 2011 shooting for which he was on trial.

d. The trial court erred and abused its discretion by admitting evidence that Saday Robinson reviewed a photo array and identified Mr. Ebo as the perpetrator, and by permitting her subsequent in-court identification of Mr. Ebo. Robinson's identification of Mr. Ebo was not sufficiently reliable and the trial court's failure to suppress her unreliable identification violated Mr. Ebo due process rights. The photo array procedure was highly suggestive. She failed to identify Mr. Ebo as the perpetrator for fourteen months, and she could only identify him in a photo array after law enforcement continued to show her arrays with Mr. Ebo's image and told her that the suspects had been arrested. Also, people had told her that Mr. Ebo was the perpetrator and there was significant media coverage on this matter. The suggestiveness and taint surrounding Robinson's photo array identification gave rise to a substantial likelihood of misidentification. Moreover, the Commonwealth did not establish by clear and convincing evidence that Robinson's in-court identification of Mr. Ebo had an independent origin in her observations at the time of the incident. For example, Robinson had limited opportunity to view these events, she could not provide any significant description of the actors, and the description that she provided of Mr. Ebo did not correlate to what Mr. Ebo actually looked like. Thus, this evidence should have been suppressed.

e. The trial court abused its discretion by failing to grant a new trial since the verdict on all

10

Respondents' Exhibit 75

counts was against the weight of the evidence. There was no physical evidence connecting Mr. Ebo to the crime scene or to the victim or co-defendant. The only evidence presented at trial linking Mr. Ebo to the incident consisted of Saday Robinson's questionable identification of him. There was no other testimony that Mr. Ebo was present at the crime scene, that he ever had contact with the murder weapon, or that he even knew the victim or the co-defendant, much less interacted with them during this incident. Robinson's testimony and her identification of Mr. Ebo were vague, tenuous, and uncertain at best. Robinson was only able to identify Mr. Ebo as a participant in this incident fourteen months after the incident. Although she had been shown photo arrays multiple times over the fourteen month period, she never identified Mr. Ebo until one month before trial. Additionally, Robinson's testimony was so incredible that it simply cannot support the verdict. During the fourteen months prior to Robinson's identification of Mr. Ebo, she had the opportunity to look into news stories and social media postings on this matter. She also discussed this incident with people in the community who informed her who they thought participated in this murder. Thus, she was likely influenced to identify Mr. Ebo since he was a suspect awaiting trial on this matter. Moreover, Robinson's story was completely untrustworthy because she presented incredible testimony under oath. She initially accused a different person of committing murder in this matter, she admitted to lying to police officers about this incident, the description that she provided of the perpetrator did not match Mr. Ebo's description, and her description of what occurred changed over time. She also testified about her lack of internet access during this time period, even though she had a Facebook account with postings on it regarding her young child. There was limited testimony from law

11

Respondents' Exhibit 75

> enforcement that another individual, who received substantial payments for his participation in this investigation, may have identified Mr. Ebo as a suspect; however, this person never testified under oath regarding his alleged identification so it is unclear whether he could identify Mr. Ebo. Robinson was the only person who could identify Mr. Ebo at trial as participating in the incident. Her testimony was the only evidence linking Mr. Ebo to this crime, but her testimony was so incredible that basing a conviction on this meager evidence shocks the conscience.

(Docket entry number 67).

On June 21, 2017, the Superior Court affirmed the convictions, but vacated the sentences at Counts 3 and 6, and remanded the case for resentencing. On July 14, 2017, Attorney Vidt filed a Petition for Allowance of Appeal in the Supreme Court of Pennsylvania. On December 13, 2017, the Supreme Court denied the Petition.

On February 28, 2018, Judge Lazzara resentenced appellant.  The sentence imposed was essentially the same, as the court imposed a sentence of life with an additional aggregate term of forty-six to ninety-two years of imprisonment. Post-Sentence Motions were filed, and denied on April 11, 2018.

On May 8, 2016, Attorney Vidt filed a Notice of Appeal in the Superior Court that was docketed at 679 WDA 2018. On May 10, 2018, Judge Lazzara issued an Order directing the filing of a Concise Statement. On

Respondents' Exhibit 75

May 30, 2018, Attorney Vidt filed a Praecipe for Discontinuance so that appellant could proceed under the Post-Conviction Relief Act. On that same day, the Superior Court filed a Certification of Discontinuance.

On January 17, 2018, appellant filed a pro se Petition for Post-Conviction Collateral Relief.  This petition was stayed pending his potential appeals. On February 27, 2018, Diana Stavroulakis, Esquire, entered her appearance on appellant's behalf for PCRA proceedings. On November 28, 2018, Attorney Stavroulakis filed an Amended Motion for Relief under the Post-Conviction Relief Act.  On December 3, 2018, Assistant District Attorney Alicia H. Searfoss filed an Answer on the Commonwealth's behalf. On May 10, 2019, a PCRA hearing was held before Judge Lazzara. Assistant District Attorney Searfoss represented the Commonwealth and Attorney Stavroulakis appeared for appellant. On December 13, 2019, Judge Lazzara issued an Order denying appellant's PCRA petition.  This appeal followed.

On January 14, 2020, Judge Lazzara issued an Order directing the filing of a Concise Statement. On February 1, 2020, Attorney Stavroulakis filed a Concise Statement on appellant's behalf that raised the following claims:

> 1. The PCRA Court erred in denying relief where Ebo established his after-discovered evidence claim

13

through Raglin's exculpatory eyewitness testimony.

2. The PCRA Court erred in denying relief by incorrectly concluding that Raglin's testimony was offered solely to impeach Robinson's testimony, when in fact it was being offered as substantive, exculpatory evidence establishing Ebo's innocence.

3. The PCRA Court erred in denying relief because Raglin's testimony is likely to compel a different verdict at a new trial.

On February 5, 2020, Judge Lazzara issued an Order stating that its Order

dismissing appellant's PCRA petition, dated December 13, 2019, should

serve as the court's Rule 1925 Opinion.

The trial court summarized the facts of the underlying appellant's

convictions in its June 25, 2014 Opinion, as follows:

> On May 16, 2011, Todd Mattox was shot to death in the parking lot of the Leechburg Garden apartments in Penn Hills. (T.R. 8/20/12, p.240).[1] He had suffered three (3) gunshot wounds, two (2) to the trunk and one (1) fatal shot to the head. (T.R. 8/20/12, pp.246-261, Ex. 4-16).
>
> An eyewitness, Saday Robinson, described the sounds of an altercation above her apartment in the minutes before the shooting, followed by the noise of people running down stairs. (T.R. 8/02/12, pp. 527-528). She then saw Mr. Mattox being

---

[1] The notation "T.R. 8/20/12" refers to Volumes I and II of the trial transcript for August 20, 2012 through September 4, 2012.

14

Respondents' Exhibit 75

pushed out the front door of the apartment complex two by (2) African-American males with handguns. (T.R. 8/20/12, pp.528-529). She was able to hear Mr. Mattox pleading for his life, offering the two (2) males everything that he had, and backing away from them with his hands up. (T.R. 8/20/12, pp.529-531). The eyewitness described seeing a man that she later identified as Defendant Ebo shooting at Mr. Mattox three (3) times. (T.R. 8/20/12, p. 531). Mr. Mattox fell to after the ground the gunshots were fired. (T.R. 8/20/12, p. 531). The witness then described seeing Defendant Ebo going through the pants pockets of Mr. Mattox before she saw a person that she later identified as Defendant Crumbley walk up to Mr. Mattox, stand dover his body as it lay in the parking lot, and shoot him directly in the head. (T.R. 8/20/12, pp. 532-534). She then indicated that she saw the Defendants get into Mr. Mattox's white Nissan and speed out of the parking lot. (T.R. 8/20/12, p. 534). Mr. Mattox's vehicle was later found after it had been set on fire on Hill Street in Penn Hills. (T.R. 8/20/12, pp.757-759, 762-780, 782-787, 804, 818, 841; Ex. 58-63, Ex. 66-67).

It should be noted that other witnesses corroborated key points contained in Ms. Robinson's description of the events that night. For example, John Gardone also testified that Mr. Mattox was chased by two (2) African-American males before he was shot several times in the parking lot of the Leechburg Gardens. (T.R. 8/20/12, pp. 591-592). He also saw the two (2) suspects enter a white vehicle and speed from the parking lot. (T.R. 8/20/12, pp. 492-493). Another witness, Yurri Lewis, heard multiple shots that day, although he did not witness the shooting. (T.R. 8/20/12, p. 513). He did, however, see an African-American male going through the pockets of a man lying in the parking lot of Leechburg Garden

15

Respondents' Exhibit 75

Apartments. (T.R. 8/20/12, p. 515). He saw the man who had been rifling through the victim's pockets enter a white car and speed out of the parking lot. (T.R. 8/20/12, p. 515). Detective Anthony Perry confirmed that the right front pants pocket of Mr. Mattox was pulled out when he arrived at the scene. (T.R. 8/20/12, pp. 302-304, 330-334, Ex. 41). The left front pocket was in its normal position. (T.R. 8/20/12, pp. 302-304).

Despite the fact that there were several eyewitnesses to the events that occurred on May 16, 2011, none of the witnesses interviewed by either Penn Hills police officers or Allegheny County detectives were able to positively identify the actors.

The Defendants became suspects in the Todd Mattox murder following a string of events occurring over the course of the several months following the slaying. On June 2, 2011, Defendant Crumbley was involved in a shooting in Swissvale, in which he was shot several times. (T.R. 8/20/12, pp. 855- 858). Two types of shell casings were recovered from the scene, including the same type of shell casings that were found at the Todd Mattox murder scene, those being from a .40 caliber Smith and Wesson Springfield Armory pistol. (T.R. 8/20/12, pp. 885- 886). A friend of Defendant Crumbley's, Asa Thompkins, was present at the scene of the shooting. (T.R. 8/20/12, pp. 847, 852). One week later, on June 9, 2011, Asa Thompkins was pulled over for a traffic stop in South Park. (T.R. 8/3/12, p. 20; T.R. 8/20/12, p. 1009). A Springfield Armory pistol was found under the front passenger seat of the car, and Mr. Thompkins said the gun was his. (T.R. 8/20/12, pp. 1010-1011).

On September 6, 2011, Thomas Julian Brown wrote a letter from the Allegheny County jail to Detective Garlicki, of the Allegheny County police, asking that he be put in touch with the detective

16

Respondents' Exhibit 75

who was handling the Todd Mattox homicide. (T.R. 8/20/12, p. 697). He indicated that he was willing to provide information on that case. (T.R. 8/20/12, pp. 697-698). Mr. Brown further indicated that he had heard, several months earlier, Defendant Crumbley saying that he had "smoked" Todd Mattox. (T.R. 8/20/12, pp. 698-699). Mr. Brown's cousin was Asa Thompkins, and Mr. Brown's son, Leron Brown, was a friend of Defendant Crumbley. (T.R. 8/20/12, pp. 695-696). Leron Brown was found shot dead in January or February 2012, inside a car with Roman Herring, a cousin of Defendant Crumbley's, who was also found dead in that same car. (T.R. 8/20/12, pp. 948, 991). Roman Herring was allegedly involved in the burning of a vehicle on Hill Street in Penn Hills. (T.R. 8/20/12, p. 945).

Defendant Crumbley became a suspect in the Todd Mattox murder in September 2011, after Detective Anthony Perry received a report connecting the handguns used in the Todd Mattox homicide with the weapons used in the Swissvale shooting on June 2, 2011, and after witness Thomas Brown came forward with information about the homicide. (T.R. 8/20/11, pp. 1017, 1020, 1021, 1025). Defendant Ebo also became a suspect at that time. (T.R. 8/20/11, p. 1017).

Eyewitness Saday Robinson was shown photo arrays containing photographs of the Defendants on September 16, 2011 (Defendant Crumbley only) and November 4, 2011 (both Defendants). (T.R. 8/20/12, pp. 356-357). However, on neither date did she select either of the Defendants from the arrays, although she testified that she was aware at the time of viewing the arrays that the Defendants were present in them. (T.R. 8/20/12, p. 548). Ms. Robinson also indicated in her testimony that she identified someone as "looking like" Defendant Ebo during one of the times when

Respondents' Exhibit 75

she was presented the photo arrays. (T.R. 8/20/12, p .548). She indicated that she did this deliberately. (T.R. 8/20/12, p. 549). However, no detective involved with presenting her with photo arrays ever indicated that there had been an identification of anyone on either September 16, 2011 or November 4, 2011. (T.R. 8/20/12, pp. 349-356, 337-344). Ms. Robinson moved out of Leechburg Gardens in July 2011. She left the Allegheny County area and moved across the country in October 2011. (T.R. 8/20/12, p. 546). She returned to the area to testify upon the request of the police, who informed her that they had suspects in custody. (T.R. 8/20/12, p. 546). She was shown photo arrays on July 24, 2012, at which time she identified Defendant Crumbley after an approximately fifteen (15) second pause, and she identified Defendant Ebo immediately. (T.R. 8/20/12, pp. 540-543).

(Docket entry number 52 at pp. 4-8; footnote in original).

Respondents' Exhibit 75

0981

## SUMMARY OF THE ARGUMENT

Appellant claims that the PCRA court erred in dismissing his PCRA petition based on after discovered evidence. This Court's standard of review of an order dismissing a PCRA petition is whether the PCRA court's ruling is supported by the evidence of record and is free of legal error. In evaluating a PCRA court's decision, this Court's scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party. This Court grants great deference to the PCRA court's factual findings and will not disturb those findings unless they have no support in the record. The Commonwealth submits that the PCRA court properly determined that appellant is not entitled to relief because he cannot satisfy his burden of proving that the evidence at issue would not be used solely for impeachment purposes and would not likely compel a different verdict at a new trial. The PCRA court also concluded that Raglin was not a credible witness. This conclusion cannot be disturbed by this Court. The record supports the PCRA court's findings of fact and that the PCRA court's conclusions of law are free of legal error. Accordingly, the Commonwealth respectfully submits that the Order dismissing appellant's PCRA Petition should be upheld.

Respondents' Exhibit 75

<u>ARGUMENT</u>

I.   THE PCRA COURT PROPERLY DISMISSED APPELLANT'S
     CLAIM THAT THE TESTIMONY OF ROBERT RAGLIN
     QUALIFIED AS AFTER DISCOVERED EVIDENCE, WHERE
     THE PCRA COURT CONCLUDED THAT RAGLIN'S
     TESTIMONY WOULD HAVE BEEN USED TO IMPEACH THE
     TESTIMONY OF AN IDENTIFYING WITNESS AND WOULD
     NOT HAVE CHANGED THE OUTCOME OF TRIAL.

Appellant argues that the PCRA court erred in dismissing his claim that the testimony of Robert Raglin constituted after discovered evidence that warranted a new trial. Concerning appellant's claim, this Court's standard of review of an order dismissing a PCRA petition is whether the PCRA court's ruling is supported by the evidence of record and is free of legal error. *Commonwealth v. Smith,* 17 A.3d 873, 882 (Pa. 2011). In evaluating a PCRA court's decision, this Court's scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level. *Commonwealth v. Freeland*, 106 A.3d 768, 775 (Pa. Super. 2014) (citation and brackets omitted). This Court grants great deference to the PCRA court's factual findings and will not disturb those findings unless they have no support in the record. *Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa. Super. 2012).

To be eligible for post-conviction relief pursuant to the PCRA, a petitioner must plead and prove by a preponderance of the evidence:

20

Respondents' Exhibit 75

(2) That the conviction or sentence resulted from one or more of the following:

(i) A violation of the Constitution of this Commonwealth or the Constitution or the laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

(ii) Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

(iii) A plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused the petitioner to plead guilty and the petitioner is innocent.

(iv) The improper obstruction by government officials of the petitioner's right of appeal where a meritorious appealable issue existed and was properly preserved in the trial court.

(vi) The unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced.

(vii) The imposition of a sentence greater than the lawful maximum.

(viii) A proceeding in a tribunal without jurisdiction.

(3) That the allegation of error has not been previously litigated or waived.

(4) That the failure to litigate the issue prior to or during trial, during unitary review or on direct appeal could not have been the result of any rational

21

Respondents' Exhibit 75

strategic or tactical decision by counsel.

42 Pa. C.S.A. § 9543(a).

The Commonwealth respectfully submits that the PCRA court did not err. The testimony of Raglin would have been that appellant was not at the scene of the crime on May 16, 2011 and therefore could not be responsible for the death of the victim Todd Mattox. In order to obtain relief based upon newly-discovered evidence under the PCRA, the petitioner must show that the evidence (1) could not have been obtained prior to or before the conclusion of trial through reasonable diligence; (2) is not merely cumulative; (3) will not be used solely for impeachment purposes; and (4) would likely compel a different outcome. *Commonwealth v. Washington,* 927 A.2d 586, 595-596 (Pa. 2007); *Smith, supra*, 17 A.3d at 887. Because the above test is conjunctive, if even one of the prongs is not met, no relief is warranted. *Commonwealth v. Padillas,* 997 A.2d 356, 363 (Pa. Super. 2010).

The Commonwealth submits that the PCRA court properly determined that appellant is not entitled to relief because he cannot satisfy his burden of proving that the evidence at issue would not be used solely for impeachment purposes and would not likely compel a different verdict at a new trial. (PCRA Court Opinion ("PCO") at 11). The court specifically

22

Respondents' Exhibit 75

rejected appellant's argument that Raglin's testimony constituted "substantive, exculpatory evidence which unequivocally establishe[d] their innocence". (PCO at 13). The court pointed out that it had presided over appellant's PCRA hearing, and concluded that Raglin was not a credible witness. *Id.* Based on the record of that evidentiary hearing, the court concluded that Raglin's testimony at best established only that he was present at the scene of the shooting

Appellant maintains that Raglin's testimony is exculpatory and that if admitted, it would have changed the outcome of trial. (Brief for Appellant at 19-20). However, as just set forth, the PCRA court specifically addressed and rejected these arguments based on its finding that Raglin was not credible, and this Court is bound by the court's credibility determinations. *Commonwealth v. Jones*, 912 A.2d 268, 293 (Pa. 2006) (holding that a PCRA court passes on witness credibility at PCRA hearings, and its credibility determinations should be provided great deference by reviewing courts); *Commonwealth v. Abu-Jamal*, 720 A.2d 79, 99 (Pa. 1998) (holding that "[j]ust as with any other credibility determination, where the record supports the PCRA court's credibility determinations, those determinations are binding" on an appellate Court.").

Appellant also claims that the PCRA court erred in finding that

Respondents' Exhibit 75

0986

Raglin's testimony would have been utilized only to impeach the testimony of Saday Robinson, because it also would have been used to exculpate appellant by "[identifying] two other actors". (Brief for Appellant at 25). The Commonwealth respectfully submits that the fact that Raglin would have identified two other actors does not change the fact that this testimony would have been used to impeach the testimony of Robinson.  As the PCRA court pointed out, Robinson observed appellant and his co-defendant shoot the victim. She was shown photo arrays, and she identified co-defendant Crumbley after approximately fifteen seconds, and she immediately identified appellant as one of the shooters. (T.R. 8/20/12, pp. 540-543). She also identified appellant in court. *Id.* at 531. Moreover, she testified that she had seen appellant before, at the apartment complex where the shooting occurred. *Id.* at 537.

Presently, the evidence that appellant claims warrants relief is impeachment evidence regardless of how appellant characterizes it, and it did not warrant a new trial.  See *Commonwealth v. Castro*, 93 A.3d 818, 824–825 (Pa. 2014) (rejecting appellant's claim that newly discovered evidence would not be used solely for impeachment even where defendant argued it would "completely destroy and obliterate the testimony of the one witness upon whose testimony the defendant was convicted" and allegedly

Respondents' Exhibit 75

went to the ultimate question in the trial); *Commonwealth v. Choice*, 830 A.2d 1005, 1008-1009 (Pa. Super. 2003) (concluding PCRA court did not err in dismissing PCRA petition without a hearing where after-discovered evidence of purported mistaken identity was offered for impeachment purposes only).

Additionally, where, as here, the petitioner claims newly discovered evidence, the Pennsylvania Supreme Court has held that a PCRA court's credibility determinations are connected to the fourth prong of the newly discovered evidence test. *Commonwealth v. Johnson*, 966 A.2d 523, 542 (Pa. 2009). In *Johnson*, the Supreme Court instructed that the PCRA court must evaluate "whether the nature and quality of the evidence is such that there is a reasonable probability that the jury would have credited it and rendered a more favorable verdict." *Id.* As the *Johnson* Court stated, "[i]ndeed, one of the primary reasons PCRA hearings are held in the first place is so that credibility determinations can be made; otherwise, issues of material fact could be decided on pleadings and affidavits alone". *Id.* at 539. The *Johnson* Court's holding in this regard directly refutes appellant's claim that the PCRA court somehow "usurped the province of the jury" in determining that Raglin was not credible. (See Brief for Appellant at 27). It was for the PCRA court to "[pass on witness credibility], and its credibility

Respondents' Exhibit 75

0988

determinations should be provided great deference by reviewing courts." *Johnson, supra,* at 539.

Pursuant to this controlling guidance, the Commonwealth respectfully submits that the PCRA court's ruling that Raglin was not a credible witness, and whose testimony therefore could not have changed the outcome of a new trial if it had been presented, cannot be disturbed by this Court.  The record supports the PCRA court's findings of fact and the PCRA court's conclusions of law are free of legal error. Based on all of the authority and analysis, the Commonwealth respectfully submits that the Order dismissing appellant's PCRA Petition must be affirmed.

Respondents' Exhibit 75

0989

## CONCLUSION

WHEREFORE, the Commonwealth respectfully requests that the Order dismissing appellant's PCRA Petition be affirmed.

Respectfully submitted,

STEPHEN A. ZAPPALA, JR.
DISTRICT ATTORNEY

MICHAEL W. STREILY
DEPUTY DISTRICT ATTORNEY

AMY E. CONSTANTINE
ASSISTANT DISTRICT ATTORNEY
PA I.D. NO. 63385

Attorneys for Appellee

27

Respondents' Exhibit 75

## PROOF OF SERVICE

I hereby certify that I am this day serving the within Brief for Appellee upon Counsel for Appellant in the manner indicated below which service satisfies the requirements of Pa. R. A. P. 121:

Electronic Service by PACFile addressed as follows:

Diana Stavroulakis, Esquire
3362 Babcock Boulevard
P.O. Box 15479
Pittsburgh, PA 15237
412-600-8608

Dated: August _28___, 2020

/s/ Amy E. Constantine

_____

AMY E. CONSTANTINE
ASSISTANT DISTRICT ATTORNEY
PA I.D. NO. 63385

Office of the District Attorney
401 Allegheny County Courthouse
Pittsburgh, PA 15219

Respondents' Exhibit 75