IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MATTHEW EBO,
                        Petitioner,

                V.                                    CIVIL ACTION NO. 22-930

SUPERINTENDENT ERIC TICE, *et al.*,
                        Respondents.


                                                      ELECTRONICALLY FILED


**RESPONDENTS' ANSWER TO
PETITION FOR WRIT OF HABEAS CORPUS**

AND NOW, to-wit this 16th day of September, 2022, comes the Commonwealth of

Pennsylvania by its attorneys STEPHEN A. ZAPPALA, JR., District Attorney of Allegheny

County, Pennsylvania, and SAMANTHA R. BENTLEY, Assistant District Attorney, and in

answer to the above-captioned Petition for Writ of Habeas Corpus, respectfully shows:

Petitioner, Matthew Ebo, was charged by Criminal Information[1] in the Court of

Common Pleas of Allegheny County, Criminal Division. At CP-02-CR-0002821-2012,[2]

Petitioner was charged with one count of each of the following: Criminal Homicide,[3]

Robbery – Serious Bodily Injury,[4] Robbery of Motor Vehicle,[5] Carrying Firearm Without A

---

[1] A copy of the Criminal Information at CP-02-CR-0002821-2012 is attached hereto, incorporated herein, and marked as Respondents' Exhibit 1 (APP 0001-0008). Numerals in Parenthesis preceded by the letters "APP" refer to pages of the Respondents' Exhibits.

[2] A copy of the Docket Sheet is attached hereto, incorporated herein, and marked as Respondents' Exhibit 2 (APP 0009-0033).

[3] 18 Pa. C.S.A. § 2501(a).

[4] 18 Pa. C.S.A. § 3701(a)(1)(i).

[5] 18 Pa. C.S.A. § 3702(a).

License,[6] Person not to possess a Firearm,[7] and Criminal Conspiracy.[8]

The Commonwealth, through Deputy District Attorney Steven M. Stadtmiller, Esquire, subsequently filed several pretrial motions. On May 23, 2012, he filed Commonwealth's Proposed Voir Dire Questions.[9] On May 24, 2012, he filed Commonwealth's Petition to Amend Criminal Information.[10] On May 25, 2012, he filed a Motion in Limine.[11] On May 2019, 2012, he filed Commonwealth's Motion for Discovery.[12] On May 30, 2012, he filed Notification of Commonwealth's Intention to Present Evidence of Other Crimes, Wrongs, or Acts Pursuant to Rule 404(B)(2).[13] On June 1, 2012, he filed Commonwealth's Proposed Points for Charge.[14] On June 5, 2012, he filed a Motion in Limine.[15]

On June 7, 2012, the Honorable Beth A. Lazzara issued an Order regarding the

---

[6] 18 Pa. C.S.A. § 6106(a)(1).

[7] 18 Pa. C.S.A. § 6105(c).

[8] 18 Pa. C.S.A. § 903(a)(1).

[9] A copy of the Commonwealth's Proposed Voir Dire Questions is attached hereto, incorporated herein, and marked as Respondents' Exhibit 3 (APP 0034-0037).

[10] A copy of the Commonwealth's Petition to Amend Criminal Information is attached hereto, incorporated herein, and marked as Respondents' Exhibit 4 (APP 0038-0052).

[11] A copy of the Motion in Limine is attached hereto, incorporated herein, and marked as Respondents' Exhibit 5 (APP 0053-0066).

[12] A copy of the Motion for Discovery is attached hereto, incorporated herein, and marked as Respondents' Exhibit 6 (APP 0067-0074).

[13] A copy of the Notification of Commonwealth's Intention to Present Evidence of Other Crimes, Wrongs, or Acts Pursuant to Rule 404(B)(2). is attached hereto, incorporated herein, and marked as Respondents' Exhibit 7 (APP 0075-0080).

[14] A copy of the Commonwealth's Proposed Points for Charge is attached hereto, incorporated herein, and marked as Respondents' Exhibit 8 (APP 0081-0085).

[15] A copy of the Motion in Limine is attached hereto, incorporated herein, and marked as Respondents' Exhibit 9 (APP 0086-0101).

Commonwealth's Proposed Voir Dire Questions,[16] an Order granting the Commonwealth's Motion to Amend Criminal Information,[17] and an Order granting the Commonwealth's Motion for Discovery.[18]

On June 7, 2012, Petitioner appeared before Judge Lazzara for a Motions Hearing.[19] Randal McKinney, Esquire, represented Petitioner. Wendy Williams, Esquire, represented Petitioner's co-defendant, Thaddeus Crumbley.[20] DDA Stadtmiller represented the Commonwealth. At the hearing, Attorney McKinney made an oral motion to sever Petitioner's case. (MT[21] at 8-10). On June 8, 2012, the Commonwealth, through DDA Stadtmiller, filed Commonwealth's Memorandum of Law in Opposition to Defendant's Motion to Sever.[22]

On June 8, 2012, Petitioner appeared before Judge Lazzara for a Pretrial Motion's Hearing.[23] Attorney McKinney represented Petitioner. Attorney Williams represented Mr.

---

[16] A copy of the Order Regarding Voir Dire is attached hereto, incorporated herein, and marked as Respondents' Exhibit 10 (APP 0102-0103).

[17] A copy of the Order granting the Commonwealth's Motion to Amend Criminal Information is attached hereto, incorporated herein, and marked as Respondents' Exhibit 11 (APP 0104-0105).

[18] A copy of the Order granting the Commonwealth's Motion for Discovery is attached hereto, incorporated herein, and marked as Respondents' Exhibit 12 (APP 0106).

[19] The Department of Court Records, Criminal Division, will transmit a transcript of this proceeding.

[20] Mr. Crumbley's case was docketed in the Court of Common Pleas of Allegheny County, Criminal Division at CP-02-CR-0002820-2012.

[21] Numerals in parentheses preceded by the abbreviation "MT" refer to pages of the June 7, 2012 Motions Transcript.

[22] A copy of the Commonwealth's Memorandum of Law in Opposition to Defendant's Motion to Sever is attached hereto, incorporated herein, and marked as Respondents' Exhibit 13 (APP 0107-0113).

[23] The Department of Court Records, Criminal Division, will transmit a transcript of this proceeding.

Crumbley. DDA Stadtmiller represented the Commonwealth. At the hearing, Attorney McKinney made an oral motion to withdraw his motion for severance. (PM[24] at 5-6).

On June 13, 2012, Petitioner, through Attorney McKinney, filed a Petition for Nominal Bond Pursuant to Pa.R.Crim.P. Rule 600(E).[25] That same day, Petitioner appeared before Judge Lazzara for a Bail Hearing.[26] Attorney McKinney represented Petitioner. Attorney Williams represented Mr. Crumbley. DDA Stadtmiller represented the Commonwealth. After the hearing, Judge Lazzara issued an Order denying Petitioner's Petition for Nominal Bond.[27]

On July 27, 2012, Petitioner appeared before Judge Lazzara for a Pretrial Motions Hearing.[28] Attorney McKinney represented Petitioner. Attorney Williams represented Mr. Crumbley. DDA Stadtmiller represented the Commonwealth. At the conclusion of the hearing, Judge Lazzara issued several Orders, including an Order allowing the Commonwealth to introduce into evidence at trial the statement made to Anthony Synder by the victim;[29] an Order allowing the Commonwealth to introduce into evidence at trial a

---

[24] Numerals in parentheses preceded by the abbreviation "PM" refer to pages of the June 8, 2012 Pretrial Motions Transcript.

[25] A copy of the Petition for Nominal Bond Pursuant to Pa.R.Crim.P. Rule 600(E) is attached hereto, incorporated herein, and marked as Respondents' Exhibit 14 (APP 0114-0119).

[26] The Department of Court Records, Criminal Division, will transmit a transcript of this proceeding.

[27] A copy of the Order denying the Petition for Nominal Bond Pursuant to Pa.R.Crim.P. Rule 600(E) is attached hereto, incorporated herein, and marked as Respondents' Exhibit 15 (APP 0120).

[28] The Department of Court Records, Criminal Division, will transmit a transcript of this proceeding.

[29] A copy of the Order is attached hereto, incorporated herein, and marked as Respondents' Exhibit 16 (APP 0121).

limited portion of the 911 call;[30] an Order allowing the Commonwealth to present evidence of Mr. Crumbley's actions on June 2, 2011 to prove identity;[31] and an Order severing count 5, Person Not to Possess a Firearm, which was heard and decided non-jury.[32]

On August 20, 2012, Petitioner proceeded to a jury trial before Judge Lazzara.[33] Attorney McKinney represented Petitioner. Attorney Williams represented Mr. Crumbley. DDA Stadtmiller represented the Commonwealth. On August 30, 2012, Petitioner, through Attorney McKinney and co-counsel Attorney Williams, filed Proposed Jury Instructions.[34] At the conclusion of the trial on September 4, 2012, the jury found Petitioner guilty of Criminal Homicide of the First Degree, Robbery with Serious Bodily Injury, Robbery of a Motor Vehicle, Carrying a Firearm Without a License, Criminal Conspiracy to Commit Robbery, and Criminal Conspiracy to Commit Murder. (JT Vol. II[35] at 1509).

On September 14, 2012, Mr. Crumbley, through Attorney Williams, filed a Post-Verdict Motion: Motion for Extraordinary Relief.[36] On October 4, 2012, DDA Stadtmiller

---

[30] A copy of the Order is attached hereto, incorporated herein, and marked as Respondents' Exhibit 17 (APP 0122).

[31] A copy of the Order is attached hereto, incorporated herein, and marked as Respondents' Exhibit 18 (APP 0123).

[32] A copy of the Order is attached hereto, incorporated herein, and marked as Respondents' Exhibit 19 (APP 0124).

[33] The Department of Court Records, Criminal Division, will transmit a transcript of this proceeding.

[34] A copy of the Proposed Jury Instructions is attached hereto, incorporated herein, and marked as Respondents' Exhibit 20 (APP 0125-0136).

[35] Numerals in parentheses preceded by the abbreviation "JT Vol. II" refer to pages of the August 20 through September 4, 2012 Jury Trial Transcript – Volume II.

[36] A copy of the Post-Verdict Motion: Motion for Extraordinary Relief is attached hereto, incorporated herein, and marked as Respondents' Exhibit 21 (APP 0137-0142).

filed a Memorandum of Law in Response to Defendant's Motion for Extraordinary Relief.[37] On October 5, 2012, Petitioner, through Attorney McKinney, filed a Post-Verdict Motion: Motion for Extraordinary Relief.[38] That same day, Petitioner appeared before Judge Lazzara for a hearing regarding the Motion for Extraordinary Relief.[39] Attorney McKinney represented Petitioner. Attorney Williams represented Mr. Crumbley. DDA Stadtmiller represented the Commonwealth. At the hearing, Attorney McKinney made an oral motion to join Mr. Crumbley's written motion. (Motion for Extraordinary Relief Transcript, October 5, 2012, at 2). At the conclusion of the hearing, Judge Lazzara denied Petitioner's Motion for Extraordinary Relief.[40]

On November 28, 2012, Petitioner proceeded to sentencing before Judge Lazzara.[41] Attorney McKinney represented Petitioner. Assistant District Attorney Courtney Butterfield, Esquire, represented the Commonwealth.

At count 1, Criminal Homicide – First Degree, Petitioner received a term of life imprisonment. At count 2, Robbery – Serious Bodily Injury, Petitioner received no further penalty. At count 3, Robbery of a Motor Vehicle, Petitioner received ten to twenty years of incarceration to run consecutive to count 1. At count 4, Carrying a Firearm Without a

---

[37] A copy of the Memorandum of Law in Response to Defendant's Motion for Extraordinary Relief is attached hereto, incorporated herein, and marked as Respondents' Exhibit 22 (APP 0143-0150).

[38] A copy of the Post-Verdict Motion: Motion for Extraordinary Relief is attached hereto, incorporated herein, and marked as Respondents' Exhibit 23 (APP 0151-0165).

[39] The Department of Court Records, Criminal Division, will transmit a transcript of this proceeding.

[40] A copy of the Order denying Petitioner's Motion for Extraordinary Relief is attached hereto, incorporated herein, and marked as Respondents' Exhibit 24 (APP 0166).

[41] The Department of Court Records, Criminal Division, will transmit a transcript of this proceeding.

License, Petitioner received three and a half to seven years of incarceration to run consecutive to count 3. At count 5, Person not to Possess a Firearm, Petitioner received two and a half to five years of incarceration to run consecutive to count 4. At count 6, Criminal Conspiracy to Commit Robbery, Petitioner received ten to twenty years of incarceration to run consecutive to count 5. At count 7, Criminal Conspiracy to Commit Murder, Petitioner received twenty to forty years of incarceration to run consecutive to count 6. (ST[42] at 12-14). Accordingly, Petitioner received an aggregate sentence of life in prison without the possibility of parole and a consecutive period of forty-six to ninety-two years of incarceration.[43]

On December 19, 2012, Petitioner, through Assistant Public Defender Jessica L. Herndon, Esquire, filed Emergency Petition for Leave to File Post-Sentence Motions *Nunc Pro Tunc*.[44] That same day, Petitioner, through Attorney Herndon, Petitioner filed Post-Sentence Motions *Nunc Pro Tunc*; Motion for Leave to File Supplemental Post-Sentence Motions *Nunc Pro Tunc*; Motion for an Extension of Time to Decide All of the Post-Sentence Motions *Nunc Pro Tunc*; and Motion for the Immediate Production of the

---

[42] Numerals in parentheses preceded by the abbreviation "ST" refer to pages of the November 28, 2012 Sentencing Transcript.

[43] A copy of the Order of Court Imposing Life Sentence is attached hereto, incorporated herein, and marked as Respondents' Exhibit 25 (APP 0167).

[44] A copy of the Emergency Petition for Leave to File Post-Sentence Motions *Nunc Pro Tunc* is attached hereto, incorporated herein, and marked as Respondents' Exhibit 26 (APP 0168-0174).

Transcripts.[45] On December 21, Judge Lazzara issued an Order granting the motion[46] and an Order permitting Post-Sentence Motions *Nunc Pro Tunc*.[47]

On March 27, 2013, Petitioner filed a *pro se* document titled Additional Issues for Post Sentence Motions to the Courts.[48] On April 19, 2013, Petitioner, through Attorney Herndon, filed Supplemental Post-Sentence Motions.[49] On June 13, 2013, the Commonwealth, through DDA Stadtmiller, filed Commonwealth's Answer/Memorandum of Law in Response to Defendant's Post Sentence Motions.[50] On June 26, 2013, Petitioner's post sentence motion was denied.[51]

On July 25, 2013, Petitioner, through Attorney Herndon, filed a Notice of Appeal to the Superior Court of Pennsylvania, docketed at **1194 WDA 2013**.[52] On July 30, 2013,

---

[45] A copy of the Post-Sentence Motions *Nunc Pro Tunc*; Motion for Leave to File Supplemental Post-Sentence Motions *Nunc Pro Tunc*; Motion for an Extension of Time to Decide All of the Post-Sentence Motions *Nunc Pro Tunc*; and Motion for the Immediate Production of the Transcripts is attached hereto, incorporated herein, and marked as Respondents' Exhibit 27 (APP 0175-0186).

[46] A copy of the Order is attached hereto, incorporated herein, and marked as Respondents' Exhibit 28 (APP 0187).

[47] A copy of the Order is attached hereto, incorporated herein, and marked as Respondents' Exhibit 29 (APP 0188).

[48] A copy of the Additional Issues for Post Sentence Motions to the Courts is attached hereto, incorporated herein, and marked as Respondents' Exhibit 30 (APP 0189-0190).

[49] A copy of the Supplemental Post Sentence Motions is attached hereto, incorporated herein, and marked as Respondents' Exhibit 31 (APP 0191-0208).

[50] A copy of the Commonwealth's Answer/Memorandum of Law in Response to Defendant's Post Sentence Motions is attached hereto, incorporated herein, and marked as Respondents' Exhibit 32 (APP 0209-0217).

[51] A copy of the Order denying Petitioner's Post Sentence Motion is attached hereto, incorporated herein, and marked as Respondents' Exhibit 33 (APP 0218).

[52] A copy of the Notice of Appeal to the Superior Court is attached hereto, incorporated herein, and marked as Respondents' Exhibit 34 (APP 0219-0237).

Petitioner was ordered to file a concise statement of errors complained of on appeal.[53]

On August 20, 2013, Petitioner, through Attorney Herndon, filed the Statement of Errors

Complained of on Appeal.[54] On June 25, 2014, the trial court issued its Opinion.[55]

On December 11, 2014, Petitioner, through Attorney Herndon, filed a Brief for

Appellant,[56] which raised the following claims:

> I.    The evidence that the co-defendant was involved in
> gun violence two weeks after the homicide was inadmissible
> evidence of other bad acts against Mathew Ebo. Also, the
> irrelevant evidence had no connection to Matthew and it
> should not have bene presented as evidence that Matthew
> was somehow involved in the homicide.
>
> II.   The highly suggestive pretrial identification procedure
> tainted the main Commonwealth eyewitness' identification of
> Matthew Ebo and any information about the witness' photo
> array identification and her subsequent in-court identification
> should have been suppressed.
>
> III.  The trial court abused its discretion by failing to grant
> Matthew Ebo a new trial since the verdict was against the
> weight of the evidence when the unreliable testimony of the
> eyewitness connecting Matthew to the crime was so
> untrustworthy that basing a guilty verdict on this evidence was
> manifestly unreliable.
>
> IV.   The trial court's imposition of the mandatory minimum
> sentence under 42 Pa. C.S.A. § 9712, an unconstitutional
> statute, was illegal since the factfinder never found the
> required facts beyond a reasonable doubt for the imposition
> of the mandatory as required by the United States Supreme
> Court in *Alleyne v. United States*, 133 S.Ct. 2151 (2013).

---

[53] A copy of the Order is attached hereto, incorporated herein, and marked as Respondents' Exhibit 35 (APP 0238).

[54] A copy of the Statement of Errors Complained of on Appeal is attached hereto, incorporated herein, and marked as Respondents' Exhibit 36 (APP 0239-0247).

[55] A copy of the Trial Court Opinion is attached hereto, incorporated herein, and marked as Respondents' Exhibit 37 (APP 0248-0295).

[56] A copy of the Brief for Appellant is attached hereto, incorporated herein, and marked as Respondents' Exhibit 38 (APP 0296-0403).

On January 22, 2015, the Commonwealth, through Deputy District Attorney Michael W. Streily, Esquire, filed a Brief for Appellee.[57]

On August 5, 2015, Petitioner, through Attorney Herndon, filed a Petition for Remand to the Trial Court Based on After-Discovered Evidence in Accordance with Pa.R.Crim.P., Rule 720(C).[58] On August 6, 2015, the Superior Court issued an Order granting the petition and remanding the case for an evidentiary hearing.[59]

On October 29, 2015, Petitioner appeared before Judge Lazzara for an evidentiary hearing.[60] Victoria H. Vidt, Esquire, represented Petitioner. Sally Frick, Esquire, represented Mr. Crumbley. DDA Stadtmiller represented the Commonwealth.

On November 9, 2015, Petitioner, through Victoria H. Vidt, Esquire, filed a Memorandum of Law in Support of Request for a New Trial Based on After-Discovered Evidence.[61] On November 25, 2015, the Commonwealth, through DDA Stadtmiller, filed Commonwealth's Brief in Opposition to Defense Request for New Trial Based on Newly Discovered Evidence.[62] On December 22, 2015, the Court issued an Order finding that a

---

[57] A copy of the Brief for Appellee is attached hereto, incorporated herein, and marked as Respondents' Exhibit 39 (APP 0404-0460).

[58] A copy of the Petition for Remand to the Trial Court Based on After-Discovered Evidence in Accordance with Pa.R.Crim.P., Rule 720(C) is attached hereto, incorporated herein, and marked as Respondents' Exhibit 40 (APP 0461-0471).

[59] A copy of the Order is attached hereto, incorporated herein, and marked as Respondents' Exhibit 41 (APP 0472).

[60] The Department of Court Records, Criminal Division, will transmit a transcript of this proceeding.

[61] A copy of the Memorandum of Law in Support of Request for a New Trial Based on After-Discovered Evidence is attached hereto, incorporated herein, and marked as Respondents' Exhibit 42 (APP 0473-0487).

[62] A copy of the Commonwealth's Brief in Opposition to Defense Request for New Trial Based on Newly Discovered Evidence is attached hereto, incorporated herein, and

new trial was not warranted.[63]

On January 13, 2016, Petitioner, through Attorney Vidt, filed a Notice of Appeal to the Superior Court of Pennsylvania, docketed at **92 WDA 2016**.[64] That same day, Petitioner was ordered to file a concise statement of errors complained of on appeal.[65] On February 2, 2016, Petitioner, through Attorney Vidt, filed a Statement of Errors Complained of on Appeal.[66] On March 28, 2016, the trial court issued its Opinion.[67]

On May 16, 2016, Petitioner, through Attorney Vidt, filed Brief for Appellant,[68] which raised the following claims:

> I.      The trial court abused its discretion when it failed to award the Defendant a new trial based upon the recantation of the sole witness connecting him to the crime, Saday Robinson.
>
> II.      The evidence that the co-defendant was involved in gun violence two weeks after the homicide was inadmissible evidence of other bad acts against Matthew Ebo. Also, the irrelevant evidence had no connection to Matthew and it should not have been presented as evidence that Mathew was somehow involved in the homicide.
>
> III.      The highly suggestive pretrial identification procedure

---

marked as Respondents' Exhibit 43 (APP 0488-0501).

[63] A copy of the Order finding a new trial is not warranted is attached hereto, incorporated herein, and marked as Respondents' Exhibit 44 (APP 0502-0507).

[64] A copy of the Notice of Appeal is attached hereto, incorporated herein, and marked as Respondents' Exhibit 45 (APP 0508-0532).

[65] A copy of the Order is attached hereto, incorporated herein, and marked as Respondents' Exhibit 46 (APP 0533).

[66] A copy of the Statement of Errors Complained of on Appeal is attached hereto, incorporated herein, and marked as Respondents' Exhibit 47 (APP 0534-0544).

[67] A copy of the Trial Court Opinion is attached hereto, incorporated herein, and marked as Respondents' Exhibit 48 (APP 0545-0553).

[68] A copy of the Brief for Appellant is attached hereto, incorporated herein, and marked as Respondents' Exhibit 49 (APP 0554-0624).

tainted the main Commonwealth eyewitness' identification of Matthew Ebo and any information about the witness' photo array identification and her subsequent in-court identification should have been suppressed.

IV.     The trial court's imposition of the mandatory minimum sentence under 42 Pa. C.S. § 9712, an unconstitutional statute, was illegal since the factfinder never found the required facts beyond a reasonable doubt for the imposition of the mandatory as required by the United States Supreme Court in *Alleyne v. United States*, 133 S.Ct. 2151 (2013).

On June 24, 2016, the Commonwealth, through DDA Streliy, filed a Brief for Appellee.[69]

On March 6, 2017, Petitioner, through Attorney Vidt, filed a Motion Seeking to Incorporate the Supplemental Record from Co-Defendant's Appeal, Docketed at 127 WDA 2016, into the Certified Record in This Appeal, 92 WDA 2016.[70] On March 8, 2017, the Superior Court granted Petitioner's Motion.[71]

On June 21, 2017, the Superior Court affirmed Petitioner's convictions but vacated and remanded for resentencing as to counts 3 and 6.[72]

On July 14, 2017, Petitioner, through Attorney Vidt filed a Petition for Allowance of Appeal in the Supreme Court of Pennsylvania docketed at **279 WAL 2017**.[73] Petitioner

---

[69] A copy of the Brief for Appellee is attached hereto, incorporated herein, and marked as Respondents' Exhibit 50 (APP 0625-0685).

[70] A copy of the Motion Seeking to Incorporate the Supplemental Record from Co-Defendant's Appeal, Docketed at 127 WDA 2016, into the Certified Record in This Appeal, 92 WDA 2016 is attached hereto, incorporated herein, and marked as Respondents' Exhibit 51 (APP 0686-0691).

[71] A copy of the Order is attached hereto, incorporated herein, and marked as Respondents' Exhibit 52 (APP 0692).

[72] A copy of the Superior Court Opinion is attached hereto, incorporated herein, and marked as Respondents' Exhibit 53 (APP 0693-0709).

[73] A copy of the Petition for Allowance of Appeal is attached hereto, incorporated herein,

raised the following issues:

> I.      When there is only one witness who identifies a defendant as the perpetrator of a crime, and that witness has recanted her story, and then recanted the recantation, the defendant must be granted a new trial so that the jury, not the trial judge, may evaluate the witness's credibility.

> II.      When the evidence against a defendant consists of one purported eye-witness's testimony, and the defendant is tried jointly with a co-defendant, the trial court should have granted the motion *in limine* to preclude the Commonwealth from presenting evidence of a second shooting that was only admissible against the co-defendant, is wholly irrelevant to Matthew's guilt or innocence, and is more prejudicial than probative? In other words, is the defendant's right to a fair trial violated by the admission of Pa.R.E. 404(b) evidence that is only relevant against the co-defendant?

On December 13, 2017, the Pennsylvania Supreme Court denied the Petition for Allowance of Appeal.[74]

On January 4, 2018, Petitioner filed a *pro se* Motion for Enforcement of Superior Court Order to Remand and Re-Sentence.[75] On January 17, 2018, Petitioner filed a *pro se* Motion for Post Conviction Collateral Relief.[76]

On February 28, 2018, Petitioner appeared before Judge Lazzara for a resentencing hearing.[77] Attorney Vidt represented Petitioner. Assistant District Attorney

---

and marked as Respondents' Exhibit 54 (APP 0710-0764).

[74] A copy of the Order denying the Petition for Allowance of Appeal is attached hereto, incorporated herein, and marked as Respondents' Exhibit 55 (APP 0765).

[75] A copy of the *pro se* Motion for Enforcement of Superior Court Order to Remand and Re-Sentence attached hereto, incorporated herein, and marked as Respondents' Exhibit 56 (APP 0766-0767).

[76] A copy of the *pro se* Motion for Post Conviction Collateral Relief is attached hereto, incorporated herein, and marked as Respondents' Exhibit 57 (APP 0768-0777).

[77] The Department of Court Records, Criminal Division, will transmit a transcript of this proceeding.

Chelsie Pratt, Esquire, represented the Commonwealth. Pursuant to the Superior Court Opinion, Petitioner was resentenced at count 3 and count 6. At count 3, Robbery of a Motor Vehicle, Petitioner received ten to twenty years of incarceration. At count 6, Conspiracy to Commit Robbery – Serious Bodily Injury, Petitioner received ten to twenty years of incarceration. Petitioner's aggregate sentence remained the same, life in prison without the possibility of parole and a consecutive period of forty-six to ninety-two years of incarceration.[78]

On March 6, 2018, Petitioner, through Attorney Vidt, filed a Post-Sentence Motion.[79] On April 10, 2018, Petitioner appeared before Judge Lazzara for a hearing regarding his Post-Sentence Motion.[80] Attorney Vidt represented Petitioner. DDA Stadtmiller represented the Commonwealth. That same day, Judge Lazzara issued an order denying Petitioner's Post-Sentence Motion.[81]

On May 8, 2018, Petitioner filed a *pro se* Notice of Appeal to the Superior Court of Pennsylvania docketed at **679 WDA 2018**.[82] On May 9, 2018, Petitioner was ordered to file a concise statement of errors complained of on appeal.[83] On May 30, 2018, Petitioner,

---

[78] A copy of the Sentencing Order is attached hereto, incorporated herein, and marked as Respondents' Exhibit 58 (APP 0778-0779).

[79] A copy of the Post-sentence Motion is attached hereto, incorporated herein, and marked as Respondents' Exhibit 59 (APP 0780-0786).

[80] The Department of Court Records, Criminal Division, will transmit a transcript of this proceeding.

[81] A copy of the Order denying Petitioner's Post-Sentence Motion is attached hereto, incorporated herein, and marked as Respondents' Exhibit 60 (APP 0787).

[82] A copy of the *pro se* Notice of Appeal is attached hereto, incorporated herein, and marked as Respondents' Exhibit 61 (APP 0788-0790).

[83] A copy of the Concise Statement Order is attached hereto, incorporated herein, and marked as Respondents' Exhibit 62 (APP 0791).

through Attorney Vidt, filed a Praecipe for Discontinuance.[84]

On June 29, 2018, Petitioner, through Diana Stavroulakis, Esquire, filed a Motion for Private Investigator.[85] On July 5, 2018, the trial court granted the Motion.[86]

On November 29, 2018, Petitioner, through Attorney Stavroulakis, filed a Supplement to Post-Conviction Relief Act Petition, *Nunc Pro Tunc.*[87] On December 3, 2018, the Commonwealth, through Assistant District Attorney Alicia H. Searfoss, filed Commonwealth's Answer to Post Conviction Relief Act Petition.[88]

On May 10, 2019, Petitioner appeared before Judge Lazzara for a PCRA Hearing.[89] Attorney Stavroulakis represented Petitioner. ADA Searfoss represented the Commonwealth. Patrick Nightengale, Esquire, represented Mr. Crumbley, Petitioner's co-defendant. At the conclusion of the hearing, the court permitted the parties to submit post hearing briefs.

On June 11, 2019, Petitioner, through Attorney Stavroulakis, filed a Memorandum in Support of Post-Conviction Relief Act Petition.[90] On July 5, 2019, the Commonwealth,

---

[84] A copy of the Praecipe for Discontinuance is attached hereto, incorporated herein, and marked as Respondents' Exhibit 63 (APP 0792).

[85] A copy of the Motion for Private Investigator is attached hereto, incorporated herein, and marked as Respondents' Exhibit 64 (APP 0793-0798).

[86] A copy of the Order granting Petitioner's Motion for Private Investigator is attached hereto, incorporated herein, and marked as Respondents' Exhibit 65 (APP 0799).

[87] A copy of the Supplement to Post-Conviction Relief Act Petition, *Nunc Pro Tunc* is attached hereto, incorporated herein, and marked as Respondents' Exhibit 66 (APP 0800-0816).

[88] A copy of the Commonwealth's Answer to Post Conviction Relief Act Petition is attached hereto, incorporated herein, and marked as Respondents' Exhibit 67 (APP 0817-0835).

[89] The Department of Court Records, Criminal Division, will transmit a transcript of this proceeding.

[90] A copy of the Memorandum in Support of Post-Conviction Relief Act Petition is attached

through ADA Searfoss, filed Commonwealth's Post Hearing Submission.[91] On December 13, 2019, the trial court issued a Memorandum Order denying Petitioner's PCRA.[92]

On January 10, 2020, Petitioner, through Attorney Stavroulakis, filed a Notice of Appeal to the Superior Court of Pennsylvania, docketed at **58 WDA 2020**.[93] On January 14, 2020, Petitioner was ordered to file a concise statement of errors complained of on appeal.[94] On February 1, 2020, Petitioner, through Attorney Stavroulakis, filed Concise Statement of Errors on Appeal.[95] On June 30, 2020, Petitioner, through Attorney Stavroulakis, filed Brief for Appellant,[96] which raised the following claims:

> I.      The PCRA Court erred in denying relief where Ebo established his after-discovered evidence claim through Raglin's exculpatory eyewitness testimony.
>
> II.      The PCRA Court erred in denying relief by incorrectly concluding that Raglin's testimony was offered solely to impeach Robinson's testimony, when in fact it was being offered as substantive, exculpatory evidence establishing Ebo's innocence.
>
> III.      The PCRA Court erred in denying relief because Raglin's testimony is likely to compel a different verdict at a new trial.

---

hereto, incorporated herein, and marked as Respondents' Exhibit 68 (APP 0836-0846).

[91] A copy of the Commonwealth's Post Hearing Submission is attached hereto, incorporated herein, and marked as Respondents' Exhibit 69 (APP 0847-0855).

[92] A copy of the Order denying Petitioner's PCRA is attached hereto, incorporated herein, and marked as Respondents' Exhibit 70 (APP 0856-0872).

[93] A copy of the Notice of Appeal is attached hereto, incorporated herein, and marked as Respondents' Exhibit 71 (APP 0873-0896).

[94] A copy of the Order is attached hereto, incorporated herein, and marked as Respondents' Exhibit 72 (APP 0897).

[95] A copy of the Concise Statement of Errors Complained on Appeal is attached hereto, incorporated herein, and marked as Respondents' Exhibit 73 (APP 0898-0900).

[96] A copy of the Brief for Appellant is attached hereto, incorporated herein, and marked as Respondents' Exhibit 74 (APP 0901-0959).

On August 28, 2020, the Commonwealth, through Assistant District Attorney Amy E. Constantine, Esquire, filed Brief for Appellee.[97]

On February 19, 2021, the Superior Court affirmed the judgment of the PCRA Court, finding it did not abuse its discretion to commit an error of law in dismissing Petitioner's PCRA petition.[98]

On March 3, 2021, Petitioner, through Attorney Stavroulakis, filed a Petition for Allowance of Appeal in the Supreme Court of Pennsylvania docketed at **61 WAL 2021**.[99] Petitioner raised the following issues:

> I.      The Superior Court erred in affirming the Order of the PCRA Court where Ebo established his after-discovered evidence claim through Raglin's exculpatory eyewitness testimony.
>
> II.     The Superior Court erred in affirming the Order of the PCRA Court because Raglin's testimony is likely to compel a different verdict at a new trial.

On July 26, 2021, the Pennsylvania Supreme Court denied the Petition for Allowance of Appeal.[100]

On June 23, 2022, Petitioner, through Todd Michael Mosser, Esquire, filed a Petition for Writ of Habeas Corpus by A Person in State Custody Pursuant to 28 U.S.C. § 2254. (ECF No. 1). On June 29, 2022, this Honorable Court issued an Order directing

---

[97] A copy of the Brief for Appellee is attached hereto, incorporated herein, and marked as Respondents' Exhibit 75 (APP 0960-0990).

[98] A copy of the Opinion is attached hereto, incorporated herein, and marked as Respondents' Exhibit 76 (APP 0991-1006).

[99] A copy of the Petition for Allowance of Appeal is attached hereto, incorporated herein, and marked as Respondents' Exhibit 77 (APP 1007-1073).

[100] A copy of the Order denying the Petition for Allowance of Appeal is attached hereto, incorporated herein, and marked as Respondents' Exhibit 78 (APP 1074).

a response within twenty-one days of service. (ECF No. 2). On August 2, 2022, Respondents filed a Motion for Extension of Time to File Its Answer. (ECF No. 8). On August 3, 2022, this Honorable Court granted Respondents' Motion and ordered Respondents to file its Answer on or before September 16, 2022. (ECF No. 9). Respondents' Answer follows.

## FACTUAL HISTORY

The Trial Court summarized the facts of the case in their June 25, 2014 Opinion as follows:

> On May 16, 2011, Todd Mattox was shot to death in the parking lot of the Leechburg Garden apartments in Penn Hills. He had suffered three (3) gunshot wounds, two (2) to the trunk and one (1) fatal shot to the head.

> An eyewitness, Saday Robinson, described the sounds of an altercation above her apartment in the minutes before the shooting, followed by the noise of people running down stairs. She then saw Mr. Mattox being pushed out the front door of the apartment complex by two (2) African-American males with handguns. She was able to hear Mr. Mattox pleading for his life, offering the two (2) males everything that he had, and backing away from them with his hands up. The eyewitness described seeing a man that she later identified as Defendant Ebo shooting at Mr. Mattox three (3) times. Mr. Mattox fell to the ground after the gunshots were fired. The witness then described seeing Defendant Ebo going through the pants pockets of Mr. Mattox before she saw a person that she later identified as Defendant Crumbley walk up to Mr. Mattox, stand over his body as it lay in the parking lot, and shoot him directly in the head. She then indicated that she saw the Defendants get into Mr. Mattox's white Nissan and speed out of the parking lot. Mr. Mattox's vehicle was later found after it had been set on fire on Hill Street in Penn Hills.

> It should be noted that other witnesses corroborated key points contained in Ms. Robinson's description of the events that night. For example, John Gardone also testified that Mr. Mattox was chased by two (2) African-American males before he was shot several times in the parking lot of the Leechburg Gardens. He

18

also saw the two (2) suspects enter a white vehicle and speed from the parking lot. Another witness, Yurri Lewis, heard multiple shots that day, although he did not witness the shooting. He did, however, see an African-American male going through the pockets of a man lying in the parking lot of Leechburg Garden Apartments. He saw the man who had been rifling through the victim's pockets enter a white car and speed out of the parking lot. Detective Anthony Perry confirmed that the right front pants pocket of Mr. Mattox was pulled out when he arrived at the scene. The left front pocket was in its normal position.

Despite the fact that there were several eyewitnesses to the events that occurred on May 16, 2011, none of the witnesses interviewed by either Penn Hills police officers or Allegheny County detectives were able to positively identify the actors.

The Defendants became suspects in the Todd Mattox murder following a string of events occurring over the course of the several months following the slaying. On June 2, 2011, Defendant Crumbley was involved in a shooting in Swissvale, in which he was shot several times. Two types of shell casings were recovered from the scene, including the same type of shell casings that were found at the Todd Mattox murder scene, those being from a .40 caliber Smith and Wesson Springfield Armory pistol. A friend of Defendant Crumbley's, Asa Thompkins, was present at the scene of the shooting. One week later, on June 9, 2011, Asa Thompkins was pulled over for a traffic stop in South Park. A Springfield Armory pistol was found under the front passenger seat of the car, and Mr. Thompkins said the gun was his.

On September 6, 2011, Thomas Julian Brown wrote a letter from the Allegheny County jail to Detective Garlicki, of the Allegheny County police, asking that he be put in touch with the detective who was handling the Todd Mattox homicide. He indicated that he was willing to provide information on that case. Mr. Brown further indicated that he had heard, several months earlier, Defendant Crumbley saying that he had "smoked" Todd Mattox. Mr. Brown's cousin was Asa Thompkins, and Mr. Brown's son, Leron Brown, was a friend of Defendant Crumbley. Leron Brown was found shot dead in January or February 2012, inside a car with Roman Herring, a cousin of Defendant Crumbley's, who was also found dead in that same car. Roman Herring was allegedly involved in the burning of a vehicle on Hill Street in Penn Hills.

Defendant Crumbley  became a suspect in the Todd Mattox murder in September 2011, after Detective Anthony Perry received a report connecting the handguns used in the Todd Mattox homicide with the weapons used in the Swissvale shooting on June 2, 2011, and after witness Thomas Brown came forward with information about the homicide. Defendant Ebo also became a suspect at that time.

Eyewitness Saday Robinson was shown photo arrays containing photographs of the Defendants on September 16, 2011 (Defendant Crumbley only) and November 4, 2011 (both Defendants). However, on neither date did she select either of the Defendants from the arrays, although she testified that she was aware at the time of viewing the arrays that the Defendants were present in them. Ms. Robinson also indicated in her testimony that she identified someone as "looking like" Defendant Ebo during one of the times when she was presented the photo arrays. She indicated that she did this deliberately. However, no detective involved with presenting her with photo arrays ever indicated that there had been an identification of anyone on either September 16, 2011 or November 4, 2011. Ms. Robinson moved out of Leechburg Gardens in July 2011. She left the Allegheny County area and moved across the country in October 2011. She returned to the area to testify upon the request of the police, who informed her that they had suspects in custody. She was shown photo arrays on July 24, 2012, at which time she identified Defendant Crumbley after an approximately fifteen (15) second pause, and she identified Defendant Ebo immediately.

(Exhibit 37 at APP 0252-0256) (internal citations omitted).

## STATUTE OF LIMITATIONS

The instant petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA). The act provides:

(d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgement of a state court. The limitation period shall run from the latest of—

(A) the date on which the judgement became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by state action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgement or claim is pending shall not be counted toward any period of limitations under this subsection.

28 U.S.C.A. § 2244(d)(1)-(2).

"AEDPA sets a strict statute of limitations on the filing of federal habeas petitions." *Morris v. Horn*, 187 F.3d 333, 337 (3d Cir. 1999). A habeas petitioner has one year to submit an application for a writ of habeas corpus from "the date on which the judgement became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C.A. § 2244(d)(1)(A). However, time accrued during the pendency of a properly filed state collateral petition shall be tolled. *Id.* at (d)(2); *Pace v. DiGuglielmo*, 544 U.S. 408, 410 (2005).

A state collateral petition is properly filed when "submitted according to the state's procedural requirements, such as the rules governing the time and place of filing." *Lovasz v. Vaughn*, 134 F.3d 146, 148 (3d Cir. 1998); *see Artuz v. Bennett*, 531 U.S. 4, 8 (2000)

21

("And an application is '*properly* filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings."). Further, the time that a properly filed state collateral petition is "pending" includes the period between "(1) a lower court's adverse determination, and (2) the prisoner's filing of a notice of appeal, *provided that* the filing of the notice of appeal is timely under state law." *Evans v. Chavis*, 546 U.S. 189, 191 (2006).

Under Pennsylvania law, a Post Conviction Relief Act ("PCRA") petition is timely if it is filed "within one year of the date the judgment becomes final." 42 Pa. C.S.A. § 9545(b). Thus, if timely filed, a habeas petitioner is entitled to the benefit of tolling from the date the *pro se* PCRA Petition was filed until the Supreme Court of Pennsylvania denies a timely filed Petition for Allowance of Appeal. *Lovasz*, 134 F.3d at 149. However, if a habeas petitioner does not file a timely PCRA petition or a timely appeal therefrom, he is not entitled to statutory tolling. *Evans*, 546 U.S. at 191.

Here, Petitioner sought direct review in the Superior Court of Pennsylvania, which affirmed his convictions, but vacated his judgment of sentence as to count three and six and remanded for resentencing only as to those counts. (Exhibit 53 at APP 0709). Petitioner sought direct review in the Pennsylvania Supreme Court as to his affirmed convictions. (Exhibit 54 at APP 0710-0764). The Pennsylvania Supreme Court denied his Petition for Allowance of Appeal on December 13, 2017. (Exhibit 55 at APP 0765). Petitioner did not file a writ of certiorari in the United States Supreme Court, and thus, his judgment of sentence as to the undisturbed counts became final ninety days later on March 13, 2018. *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012).

While his direct appeal was pending, the trial court conducted a limited

resentencing hearing only as to count 3 and count 6. *See* (Sentencing Transcript, February 28, 2018). Where some but not all counts of a conviction are disturbed on appeal, the resentencing is not a "new judgment" as to the undisturbed counts of conviction. *Romansky v. Superintendent Greene SCI*, 933 F.3d 293, 300 (3d Cir. 2019). *See also Lesko v. Secretary of Pennsylvania Department of Corrections*, 34 F.4th 211, 225 (3d Cir. 2022) ("*Romansky* thus stands for the proposition that a resentencing as to one count of a conviction that makes no changes to the confinements authorized by the other undisturbed counts does not affect the 'judgment' as to those counts and, hence, does not reset the habeas counter.").

Because Petitioner was resentenced only at count 3 and count 6, his judgment of sentence as to those counts became final at the conclusion of direct review, or the expiration of the time for seeking such review, as to those counts. *Romansky*, 933 F.3d at 300. After he was resentenced at count 3 and count 6, Petitioner filed a *pro se* Notice of Appeal to the Superior Court, which was later discontinued. (Exhibit 61 at APP 0788-0790); (Exhibit 63 at APP 0792). Thus, Petitioner's judgment of sentence as to count 3 and count 6 became final on May 30, 2018 when the Superior Court discontinued Petitioner's direct appeal at his request. *Commonwealth v. Conway*, 706 A.2d 1243, 1244 (Pa. Super. 1997).

Petitioner had one year from each date to file a timely writ of habeas corpus. 28 U.S.C.A. § 2244(d)(1)(A). However, Petitioner is entitled to statutory tolling during the pendency of his properly filed PCRA petition. 28 U.S.C. § 2244(d)(2).

Petitioner filed a *pro se* PCRA petition on January 17, 2018 before his judgment of sentence became final. (Exhibit 57 at APP 0768-0777). Thus, his PCRA was timely filed.

42 Pa. C.S.A. § 9545(b). Petitioner's collateral proceedings concluded on July 26, 2021 when the Pennsylvania Supreme Court denied his Petition for Allowance of Appeal. (Exhibit 78 at APP 1074). Petitioner is therefore entitled to statutory tolling between January 17, 2018 and July 26, 2021. *Lovasz*, 134 F.3d at 149. Because Petitioner filed a timely PCRA petition prior to the date his judgment of sentence became final, he has not violated the one year limitation set forth in § 2244(d)(1). Petitioner had one year from July 26, 2021 to file a timely writ. His June 23, 2022 Counseled Petition for Writ of Habeas Corpus is timely. (ECF No. 1).

## EXHAUSTION

With respect to exhaustion, § 2254 provides:

> **(b)(1)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
>> **(A)** the applicant has exhausted the remedies available in the courts of the State; or
>>
>> **(B)(i)** there is an absence of available State corrective process; or
>>
>>> **(ii)** circumstances exist that render such process ineffective to protect the rights of the applicant
>>
>> \*       \*       \*
>
> **(c)** An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(b), (c).

To satisfy the exhaustion requirement, a habeas petitioner must first present his

claims to the state's highest court for consideration. 28 U.S.C. § 2254(b)(1)(A); *Preiser v. Rodriguez*, 411 U.S. 475, 491 (1978). "A petitioner has not exhausted such remedies if he has the right under state law to raise his claim by any available procedure." *Keller v. Larkins*, 251 F.3d 408, 413 (3d Cir. 2001). *But see Lambert v. Blackwell*, 387 F.3d 210, 233-34 (3d Cir. 2004) ("[P]etitioners need not seek review from the Pennsylvania Supreme Court in order to give the Pennsylvania courts a 'full opportunity to resolve any constitutional claims.'"). Further, a habeas petitioner must present the factual and legal substance of their claims in such a manner that puts the state court on notice that they are asserting a federal claim. *Keller*, 251 F.3d at 413.

"[A] federal habeas claim must have been 'fairly presented' to the state courts." *Id.* It is not enough that all of the facts necessary to support a federal claim were before the state court. *Id.*; *Anderson v. Harless*, 459 U.S. 4, 6 (1982). Nor is mere similarly of claims sufficient for purposes of exhaustion. *Keller*, 251 F.3d at 413. It is equally insufficient for purposes of exhaustion to assert general appeals to broad constitutional principles. *Gray v. Netherland*, 518 U.S. 152, 163 (1996).

A federal habeas petitioner must raise claims that are the "substantial equivalent" to the claims presented in the state courts to properly exhaust. *Picard v. Connor*, 404 U.S. 270, 278 (1971). A claim raised in federal court is not the substantial equivalent of a claim raised in state court where the claims arise under different federal constitutional provisions, *Picard*, 404 U.S. at 278, or are conceptually distinct, despite arising under the same constitutional provision. *Gray*, 518 U.S. at 164-65.

Failure to exhaust may be excused in unusual circumstances where no state remedy exists or the state remedy is ineffectual. *Castilles v. Peoples*, 489 U.S. 346, 350

25

(1989). *See Rose v. Lundy*, 455 U.S. 509, 515 (1982) ("[S]tate remedies must be exhausted except in unusual circumstances."); *Story v. Kindt*, 26 F.3d 402, 405 (3d Cir. 1994) ("The federal courts need not defer to the state judicial process when no appropriate remedy exists at the state level or when the state process would frustrate the use of an available remedy.").

Pennsylvania has an available remedy under the Post Conviction Relief Act and "has a preference for post conviction attacks being initially litigated in its courts rather than the United States district courts[.] . . ." *Peoples v. Fulcomer*, 882 F.2d 828, 832 (3d Cir. 1989) (quoting *Ross v. Petsock*, 868 F.2d 639, 642 (3d Cir. 1989)); *see* 42 Pa. C.S.A. §§ 9541 et seq.

Petitioner raises the following claims in his writ of habeas corpus:

> I.     Trial counsel was ineffective for failing to object to any reference to Carpenter's alleged identification of [Petitioner] or request a mistrial after Carpenter failed to appear.

> II.    Trial counsel was ineffective for failing to ensure that a proper *Kloiber* instruction was given to the jury.

(ECF No. 1 at 12).[101]

Both of Petitioner's claims are unexhausted. Petitioner failed to raise either ineffective assistance of counsel claim in his PCRA. (Exhibit 66 at APP 0800-0816). However, exhaustion of these claims may be excused on the basis of futility as no appropriate state remedy exists. *See Story*, 26 F.3d at 405.

---

[101] Petitioner's pagination at the bottom page of his petition differs from the pagination at the top of the page. Respondents' citations to his petition rely on the pagination at the top of the page.

## STANDARDS OF REVIEW

Federal habeas corpus relief can be granted only for violations of the United States Constitution or its laws. Specifically, with respect to claims adjudicated on the merits in state court proceedings, AEDPA requires:

> (d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254(d).

A state court decision is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in our cases." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A decision will also be "contrary to" clearly established federal law "if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." *Id.* at 406.

A state court decision is an "unreasonable application of" clearly established federal law if it is "objectively unreasonable, not merely wrong; even clear error will not suffice." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (*per curiam*) (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014)). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court

was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *White*, 572 U.S. at 419-20). *See also Harris v. Ricci*, 607 F.3d 92, 96 (3d Cir. 2010) ("[A] state court ruling is considered an 'unreasonable application' if the state court unreasonably applies the correct legal rule to the particular facts, unreasonably extends a legal principle to a new context, or unreasonably refuses to extend the principle to a new context where it should apply.").

For purposes of § 2254(d)(1), clearly established federal law "includes only the holdings, as opposed to the *dicta*, of this Court's decisions." *White*, 572 U.S. at 419. Newly established constitutional rules will not be applied for the first time in a federal habeas proceeding. *Teague v. Lane*, 489 U.S. 288, 310 (1989).

With respect to § 2254(d)(2), a "statement of reasons" is not required to show the state court's decision was based on an unreasonable determination of the facts. *Harrington v. Richter*, 562 U.S 86, 98 (2011). "[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Id.* Where a state court's decision has no explanation, a petitioner's burden "must be met by showing there was no reasonable basis for the state court to deny relief. This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient[.] . . ." *Id.*

Moreover, in a habeas petition federal courts are bound to presume the state court's factual findings are correct. 28 U.S.C.A. § 2254(e)(1). A habeas petitioner has the burden to rebut those findings by clear and convincing evidence. *Id.* "This is a difficult to

meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal citations omitted); *see Harrington*, 562 U.S. at 102; *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*).

With respect to claims not adjudicated on the merits in state court proceedings, § 2254(d) does not apply.

> In such an instance, the federal habeas court must conduct a de novo review over pure legal questions and mixed questions of law and fact, as a court would have done prior to the enactment of AEDPA. However, the state court's factual determinations are still presumed to be correct, rebuttable upon a showing of clear and convincing evidence.

*Appel v. Horn*, 250 F.3d 203, 210 (3d. Cir. 2001) (citing 28 U.S.C. § 2254(e)(1)).

A claim is adjudicated on the merits when the state court's decision "1) finally resolves the claim, and 2) resolves the claim on the basis of its substance, rather than on a procedural, or other, grounds. . . . This means that the state court's resolution of the claim must have preclusive effect." *Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). "'[A]djudication on the merits' can occur at any level of state court. . . . Section 2254(d) does not specify that the 'adjudication on the merits' be from any particular state court." *Id.*

Here, neither of Petitioner's claims were adjudicated on the merits. Thus, § 2254(d) does not apply. Instead, the proper standard of review for those claims is the pre-AEDPA standard: *de novo* over pure legal questions and mixed questions of law and fact. *Appel* 250 F.3d at 210.

## ANALYSIS OF HABEAS CLAIMS

Petitioner raises two claims, which he concedes are procedurally defaulted. (ECF

No. 1 at 12). He argues he demonstrated cause for the default and actual prejudice as a result. *Id.* He asserts the default of each claim should be excused pursuant to *Martinez v. Ryan*, 566 U.S. 1 (2012). *Id.*

If a state court refuses to consider a habeas petitioner's claim because of a violation of a state procedural rule, the habeas court is barred, by procedural default, from considering the claim. *Preston v. Superintendent Graterford SCI*, 902 F.3d 365, 375 (3d Cir. 2018). Procedural default applies regardless of whether a habeas petitioner violated a state procedural rule at trial, on appeal, or on state collateral review. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

Federal courts need not consider the merits of a procedurally defaulted claim unless the habeas petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Keller*, 251 F.3d at 415 (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

Here, Petitioner concedes his claims are procedurally defaulted. (ECF No. 1 at 12). Petitioner asserts cause exists to overcome procedural default pursuant to *Martinez v. Ryan*. Cause exists where a habeas petitioner "can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Ineffective assistance of collateral review counsel may establish cause to avoid procedural default of a habeas petitioner's claim of ineffective assistance of trial counsel. *Martinez*, 566 U.S. at 9.

Where state law requires claims of ineffective assistance of trial counsel to be "raised in an initial-review collateral proceeding, a procedural default will not bar a federal

habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Martinez*, 566 U.S. at 17. Pennsylvania law requires ineffective assistance of trial counsel be raised in an initial-review collateral proceeding pursuant to the Post Conviction Relief Act. 42 Pa. C.S.A. § 9543(2)(ii); *Commonwealth v. Grant*, 813 A.2d 726, 738 ("We now hold that, as a general rule, a petition should wait to raise claims of ineffective assistance of trial counsel until collateral review."). Thus, if properly pled and proven, *Martinez* may constitute "cause" to overcome procedural default where PCRA counsel provided ineffective assistance on collateral review.

Pursuant to *Martinez*, "counsel's failure to raise an ineffective assistance claim on collateral review may excuse a procedural default if: '(1) collateral attack counsel's failure itself constituted ineffective assistance of counsel under *Strickland*, and (2) the underlying ineffective assistance claim is a substantial one.'" *Bey v. Superintendent Greene SCI*, 856 F.3d 230, 237-38 (3d Cir. 2017) (quoting *Glenn v. Wynder*, 743 F.3d 402, 409-10 (3d Cir. 2014)).

First, to prove PCRA counsel provided ineffective assistance, a habeas petitioner must meet the following standard:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a

> breakdown in the adversary process that renders the result
> unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Second, a habeas petitioner must demonstrate the underlying ineffective assistance claim is a substantial one, meaning "the claim has some merit." *Martinez*, 566 U.S. at 14 (citing *Miller-El v. Cockrell*, 537 U.S. 322 (2003)). The *Martinez* Court "suggest[ed] that we apply the standard for issuing certificates of appealability in resolving the inquiry into what constitutes a 'substantial' claim." *Bey,* 856 F.3d at 238. *Miller-El* held a certificate of appealability should be granted when a habeas petitioner demonstrates "a substantial showing of the denial of a constitutional right." 537 U.S. at 327 (citing 28 U.S.C. § 2253(c)(2)). A habeas petitioner satisfies this standard where he demonstrates "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327. "Thus, whether a claim is 'substantial' is a 'threshold inquiry' that 'does not require full consideration of the factual or legal bases adduced in support of the claims.'" *Bey*, 856 F.3d at 238 (quoting *Miller-El*, 537 U.S. at 327, 336).

## I.    Neither trial counsel nor PCRA counsel were ineffective for failing to argue that Petitioner was deprived of his Sixth Amendment right to confront witnesses against him.

Petitioner argues testimony from several Commonwealth witnesses relating to Richard Carpenter's statements to law enforcement about Petitioner's involvement in the shooting implicate Petitioner's Sixth Amendment right to confront Carpenter, who did not testify at Petitioner's jury trial. Based on this alleged Confrontation Clause violation, Petitioner asserts trial counsel was ineffective for failing to object to testimony referencing

Carpenter and for failing to request a mistrial.

Specifically, Petitioner points to three instances where he alleges the Commonwealth introduced hearsay testimony in violation of his right to confront witnesses against him: 1) the Commonwealth's opening argument where the prosecutor, DDA Stadtmiller, informed the jury that Carpenter witnessed the shooting and spoke to police; 2) testimony from Detective Anthony Perry where he stated Petitioner became a suspect of interest after Carpenter was shown a photo array of Petitioner; and 3) testimony from former Deputy District Attorney Mark Tranquilli who testified that Carpenter was an eyewitness to the shooting and that homicide charges were not filed against Petitioner until Carpenter came forward as a witness.

Petitioner concedes these claims are procedurally defaulted but argues PCRA counsel's ineffectiveness constitutes cause to overcome this otherwise procedurally defaulted claim. *Martinez*, 566 U.S. at 9. Respondents aver Petitioner has failed to prove cause and prejudice; PCRA counsel was not ineffective because Petitioner's underlying claims do not implicate the Confrontation Clause.

"The Sixth Amendment's Confrontation Clause provides that, '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.' We have held that this bedrock procedural guarantee applies to both federal and state prosecutions." *Crawford v. Washington*, 541 U.S. 36, 42 (2004) (quoting U.S. Const. amend. VI). The Supreme Court further explained this provision bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination." *Davis v. Washington*, 547 U.S. 813, 821 (2006) (quoting *Crawford*, 541 U.S. at 53-54).

The Confrontation Clause applies only to testimonial statements offered for their truth; it "does not apply to non-testimonial statements or testimony that is not used for a hearsay purpose." *Lambert v. Warden Greene SCI*, 861 F.3d 459, 469 (3d Cir. 2017).

The core class of testimonial statements that directly implicate the Confrontation Clause include "[e]x parte examinations and interrogations used as a functional equivalent for in-court testimony[.]" *Lambert*, 861, F.3d at 469. Other statements are nonetheless testimonial if the statement "was taken with the primary purpose of creating an out-of-court substitute for trial testimony." *Id.* at 470 (citing *Michigan v. Bryant*, 562 U.S. 344, 358 (2011)). A statement's primary purpose is assessed based on "what reasonable participants would perceive the primary purpose to be." *Id.*

### a.  DDA Stadtmiller's opening argument

First, Petitioner argues PCRA counsel was ineffective for failing to claim on collateral appeal that trial counsel was ineffective for failing to object to statements DDA Stadtmiller made in his opening argument regarding Carpenter. (ECF No. 1 at 15). He further argues trial counsel should have requested a mistrial after the Commonwealth's opening argument. *Id.* at 17. Carpenter did not testify at Petitioner's trial, and thus, Petitioner argues his testimonial statements should not have been introduced as substantive evidence. *Id.* at 16-17.

### i.  This claim is procedurally defaulted

PCRA counsel's failure to raise this claim does not constitute cause to overcome procedural default pursuant to *Martinez v. Ryan.* Petitioner's underlying ineffective assistance of counsel claim is not a substantial one because it does not possess some merit. Thus, PCRA counsel's failure to raise the claim does not constitute ineffective

assistance of counsel under *Strickland*. *Bey*, 856 F.3d at 237-38 (quoting *Glenn*, 743 F.3d at 409-10).

The Commonwealth's opening argument at trial included a summation of the evidence the Commonwealth expected to introduce at trial. In pertinent part, the Commonwealth stated:

> So they say what happened and in this case Richard Carpenter came forward in just such a manner. He was in trouble, he got caught with a gun, he was scared, he called the police. He tells the police I was in the building in the hallway with the defendants prior to the shooting and they both had guns. He describes the guns, he tells and he follows them as they go into the next building over at Leechburg Garden Apartments where Mr. Mattox is, and they both draw these firearms. Mr. Carpenter is now watching as these two men follow Mr. Mattox across the parking lot and shoot him and kill him.
>
> He was shown photo arrays, you say you know these guys, can you pick them out for us. Mr. Carpenter picked both defendants from separate photo arrays saying this was a shooter, this was a shooter. Now, because of that the defendants have been charged with the crimes that the Judge described to you in her opening comments and Dr. Karl Williams from the Allegheny County Medical Examiner's Office will be testifying in this case.

(JT Vol. I[102] at 131-32).

DDA Stadtmiller's opening statement does not implicate the Confrontation Clause. "[T]he Confrontation Clause does not apply to non-testimonial statements or testimony that is not used for a hearsay purpose." *Lambert v. Warden Greene SCI*, 861 F.3d 459, 469 (3d Cir. 2017). Further, "the Confrontation Clause is violated when 'hearsay evidence [is] admitted as substantive evidence against the [petitioner]' with no opportunity to cross-

---

[102] Numerals in parentheses preceded by the abbreviation "JT Vol. I" refer to pages of the August 20 through September 4, 2012 Jury Trial Transcript – Volume I.

examine the hearsay declarant at trial[.]" *Kentucky v. Stincer*, 482 U.S. 730, 737 (1987) (quoting *Tennessee v. Street*, 471 U.S. 409, 413 (1985)).

An opening statement is not substantive evidence. "The purpose of an opening statement is to apprise the jury how the case will develop, its background and what will be attempted to be proved; but it is not evidence." *Commonwealth v. Parker*, 919 A.2d 943, 950 (Pa. 2007). "A prosecutor's opening statements must be based on evidence that she plans to introduce at trial, and must not include mere assertions designed to inflame the jury's emotions. However, a prosecutor's opening statements may refer to facts that she reasonably believes will be established at trial." *Commonwealth v. Begley*, 780 A.2d 605, 626 (Pa. 2001).

The trial court clearly instructed the jury on multiple occasions that opening statements are not substantive evidence:

> You should remember that the statements, arguments, questions and comments from the lawyers in this case are not evidence. The attorneys are not sworn in and they are here as advocates and spokespersons not as witnesses in this case.
>
> \*      \*      \*
>
> You need [to] realize an opening statement is not evidence but it is simply a summary of what the attorney expects that the evidence will show during the course of the trial. The opening statements are designed to highlight for you the disagreements and factual differences between the two sides in order to help you judge the significance of the evidence when it is presented.
>
> An opening statement is really just an initial overview of what the case is about. The opening statements of counsel are not binding on you and they are not evidence. This will also be true of counsel's closing arguments to you. However, you should consider these statements and arguments carefully. It is proper for you to be guided by them if the statements and

> arguments are supported by the evidence and appeal to your
> reason and judgment."

(JT Vol. I at 101-02, 114-15). *See also* (JT Vol. II at 1455) ("I remind you that the arguments of counsel are not evidence and should not be considered as such."). Jurors are presumed to follow the court's instructions. *Glenn*, 743 F.3d at 407 ("It is well established that, absent extraordinary circumstances, jurors are presumed to follow the instructions given [to] them by the court.").

Because an opening statement is a preview of the evidence a prosecutor plans to introduce at trial and not substantive evidence used for a hearsay purpose, DDA Stadtmiller's opening argument did not implicate the Confrontation Clause. Thus, Petitioner failed to demonstrate his claim has some merit. *Bey*, 856 F.3d at 238. PCRA counsel cannot be found ineffective for failing to raise a meritless claim of trial counsel's ineffectiveness. *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999) ("There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument.").

Petitioner failed to demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law. *Keller*, 251 F.3d at 415 (quoting *Coleman*, 501 U.S. at 750). Accordingly, this claim should be dismissed as unexhausted and procedurally defaulted.

### ii.  This claim fails on the merits

Even upon consideration of the merits of Petitioner's claim, he is not entitled to relief. With respect to claims not adjudicated on the merits in state court proceedings, § 2254(d) does not apply. Instead:

> [T]he federal habeas court must conduct a de novo review

over pure legal questions and mixed questions of law and fact, as a court would have done prior to the enactment of AEDPA. However, the state court's factual determinations are still presumed to be correct, rebuttable upon a showing of clear and convincing evidence.

*Appel*, 250 F.3d at 210 (citing 28 U.S.C. § 2254(e)(1)).

To prove counsel provided ineffective assistance, a habeas petitioner must meet the following standard:

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687.

In assessing the deficiency of counsel's performance, the court is to apply a reasonableness standard. *Id.* at 688. The court is to give a strong presumption to counsel's effectiveness and "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. A habeas petitioner bears the burden of proof to demonstrate ineffective assistance of counsel. *United States v. Baynes*, 622 F.2d 66, 69 (3d Cir. 1980).

Here, trial counsel's actions were not *per se* unreasonable. *See* (ECF No. 1 at 16). Though the law presumes "the lawyer is competent to provide the guiding hand that the defendant needs" limited circumstances exist "that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *United States v.*

*Cronic*, 466 U.S. 648, 658 (1984). Such circumstances include the complete denial of counsel at a critical stage, counsel's failure to "subject the prosecution's case to meaningful adversarial testing," or where a petitioner was denied the right of effective cross examination." *Cronic*, 466 U.S. at 659. "Apart from circumstances of that magnitude, however, there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." *Cronic*, 466 U.S. at 659 n.26

As argued in detail above, Petitioner's claim does not implicate the Confrontation Clause. Trial counsel's actions were not *per se* unreasonable because counsel's inaction did not equate to a failure to subject the prosecution's case to meaningful adversarial testing. Petitioner likewise cannot overcome the "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Even if DDA Stadtmiller's opening argument implicated the Confrontation Clause, the alleged error was harmless.

"The erroneous admission of testimonial hearsay in violation of the Confrontation Clause is 'simply an error in the trial process itself' . . . [that] we may affirm if the error was harmless." *United States v. Jimenez*, 513 F.3d 62, 78 (3d Cir. 2008) (quoting *United States v. Hinton*, 423 F.3d 355, 361-62 (3d Cir. 2005)). "An evidentiary error is harmless only if it is highly probable that the improperly admitted evidence did not contribute to the jury's judgment of conviction." *Id.* To assess whether the erroneous admission of testimonial evidence in violation of the Confrontation Clause was harmless, courts should consider numerous factors, including: "the importance of the testimony to the Government's case, the cumulative nature of the evidence, the existence of corroborating

evidence, the extent of cross-examination allowed in the case, and the strength of the Government's case as a whole." *Id.*

It is not highly probable that the allegedly improper evidence in DDA Stadtmiller's opening argument contributed to the jury's judgment of conviction. Carpenter was the only eyewitness DDA Stadtmiller mentioned in his opening statement because the trial court prohibited reference to Saday Robinson's testimony during opening arguments. *See* (JT Vol. I at 96). Further, the trial court clearly instructed the jury on multiple occasions that opening statements are not substantive evidence and should not be considered as such. *See* (JT Vol. 1 at 101-02, 114-15); (JT Vol. 2 at 1455). Jurors are presumed to follow the court's instructions. *Glenn*, 743 F.3d at 407. Petitioner has provided no evidence the jurors in this case disregarded the court's instructions and used DDA Stadtmiller's opening arguments as substantive evidence against him.

Thus, even if DDA Stadtmiller's opening argument implicated the Confrontation Clause, the alleged violation constituted harmless error. Accordingly, this claim should be dismissed.

### b. Testimony of Detective Anthony Perry

Next, Petitioner argues PCRA counsel was ineffective for failing to claim on collateral appeal that trial counsel was ineffective for failing to object to Detective Perry's testimony. (ECF No. 1 at 15). He avers Detective Perry made references to Carpenter's inculpation of Petitioner, which were testimonial in nature. *Id.* at 15-16. He argues trial counsel's actions had no reasonable basis and trial counsel's actions prejudiced him because the references to Carpenter "effectively rehabilitated Saday Robinson's otherwise incredible testimony." *Id.* at 17.

### i.  This claim is procedurally defaulted

PCRA counsel's failure to raise this claim does not constitute cause to overcome procedural default pursuant to *Martinez v. Ryan*. Petitioner's underlying ineffective assistance of counsel claim is not a substantial one and PCRA counsel's failure to raise this claim does not constitute ineffective assistance of counsel under *Strickland. Bey*, 856 F.3d at 237-38 (quoting *Glenn*, 743 F.3d at 409-10).

DDA Stadtmiller elicited the following testimony from Detective Perry regarding the photo array he created of Petitioner:

> Q.      [DDA STADTMILLER] Okay. Who is this -- who is the person of 16 interest in Commonwealth 44?
>
> A.      [DETECTIVE PERRY] The subject of that photo array is Mr. Ebo.
>
> Q.      Okay. And who was -- whom was this shown to?
>
> A.      Again that was shown to Saday Robinson.
>
> Q.      On what day?
>
> A.      July 24 of 2012.
>
> MR. STADTMITTER: We would offer 44 into evidence.
>
> THE COURT: Any objection?
>
> MR. MCKINNEY: Your Honor, I would ask when that photo array was created.
>
> THE WITNESS: Mr. Ebo's photo array was created October of 2011.
>
> MR. MCKINNEY: No objection
> .
> THE COURT: Ms. Williams, any objection?
>
> MS. WILLIAMS: No.

THE COURT: It is admitted.

BY MR. STADTMILLER:
Q.      Detective, Commonwealth 45, that's another photo array of whom?

A.      Mr. Crumbley.

Q.      Why the two photo arrays, who created it?

A.      This is the photo array that I created.

Q.      This is the same photo array?

A.      Yes, it is the same subject, Mr. Crumbley, and then the same other seven individuals.

Q.      Was that created at the same time as Commonwealth 43?

A.      The subjects -- subject and the other seven individuals were picked at the same time, but this was printed out at a later time.

Q.      Whom was this shown to?

A.      This was shown to Mr. Richard Carpenter.

Q.      When?

A.      On December 5 of 2011.

MR. STADTMILLER: We would offer Commonwealth 45 into evidence.

THE COURT: Any objection?

MS. WILLIAMS: No.

MR. MCKINNEY: No objection.

THE COURT: It is admitted.

BY MR. STADTMILLER:
Q.      Commonwealth 46, that's another photo array?

A.      Yes.

Q.      Of whom?

A.      The subject of this photo array is Mr. Ebo.

Q.      Is it the same photo array that was constructed by you?

A.      Yes.

Q.      And was it the same exact people that were in Commonwealth 44 on Mr. Ebo?

A.      Yes.

Q.      And whom was that shown to?

A.      This was also shown to Richard Carpenter.

Q.      On what date?

A.      The same date, December 2011.

MR. STADTMILLER: We would offer 46 into evidence.

THE COURT: Any objection?

MR. MCKINNEY: No objection.

THE COURT: It is admitted.

(JT Vol. I at 338-41).

Detective Perry was later recalled as a witness and testified to the following:

Q.      [DDA Stadtmiller] When did Matthew Ebo become a suspect in this case?

A.      [Detective Perry] That was when I created the photo array with him. I can't recall the date that the photo array was created, I believe it was in September 2011.

(JT Vol. II at 1017).

43

On redirect, Detective Perry again referenced Carpenter after Attorney McKinney and counsel for Petitioner's codefendant cross examined him regarding payments made to Carpenter in exchange for his testimony:

> Q.      [DDA Stadtmiller] Detective, you said that the witness Richard Carpenter has not testified yet. We all heard that but he was given a subpoena to be here last week, wasn't he?
>
> A.      [Detective Perry] He was.
>
> Q.      Has he honored that subpoena?
>
> A.      Not as of yet.
>
> Q.      Meaning has he shown up, has he come in?
>
> A.      He has not.
>
> Q.      In light with the other witnesses in the case that did not show up when they were subpoenaed did we get a warrant for his arrest because he didn't honor his subpoena?
>
> A.      Yes, it is called a material witness warrant.
>
> Q.      We have been looking for him and trying to get him here?
>
> A.      That's correct.
>
> Q.      Have you been able to get him in here?
>
> A.      I have not.
>
> Q.      You said you talked to him today. How was that communication?
>
> A.      Text messages over the last couple days, our communication has been through –via text message over the last couple days.
>
> Q.      So he will text you but won't come in?
>
> A.      No, he will not.

> Q.      Who is looking for him?
>
> A.      There is a whole host of people looking for him, fellow homicide detectives are looking for him, the sheriff's office is looking for him and the federal marshals are looking for him.

(JT Vol. II at 1042-43).

Petitioner's underlying ineffective assistance of counsel claim is not a substantial one. The fact that Detective Perry showed a photo array of Petitioner to Carpenter was offered for a non-hearsay purpose, namely to explain the course of the police investigation. It was not offered to prove the truth of Carpenter's out of court identification of Petitioner or the substance of his statements to Detective Perry.

Detective Perry did not introduce a statement from Carpenter that directly inculpated Petitioner. He did not testify to whether Carpenter identified Petitioner in the photo array he created. Nor he did testify to statements Carpenter made while viewing the photo array of Petitioner. Detective Perry's testimony merely showed he created a photo array of Petitioner and showed it to multiple people, including Carpenter. Thus, Detective Perry's testimony that he showed a photo array of Petitioner to Carpenter does not implicate the Confrontation Clause. *See Lambert*, 861 F.3d at 469 ("[T]he Confrontation Clause does not apply to non-testimonial statements or testimony that is not used for a hearsay purpose.").

Further, Detective Perry's statement that Petitioner became a suspect when he created a photo array of him likewise does not implicate the Confrontation Clause. This testimony was used to demonstrate the course of the police investigation to the jury and show how Petitioner became a suspect in the case. Detective Perry's testimony was

based on his own knowledge of the investigation; he was not relaying out of court statements Carpenter made to him.

Lastly, Detective Perry's testimony on redirect that he spoke with Carpenter about whether he would honor his subpoena does not implicate the Confrontation Clause because it was not offered for a hearsay purpose. Both Attorney Williams and Attorney McKinney cross examined Detective Perry about payments made to Carpenter in exchange for his testimony. (JT Vol. II at 1025-1028, 1037-1040). On redirect, Detective Perry clarified those payments were made as part of the witness relocation program. (JT Vol. II at 1041). Despite Carpenter's participation in this program, Detective Perry testified Carpenter failed to honor his subpoena to come to court and provide testimony. (JT Vol. II at 1042). Detective Perry noted "a whole host of people [are] looking for [Carpenter]" including homicide detectives, the sheriff's office, and federal marshals. (JT Vol. II at 1042-1043).

This testimony was not offered for a hearsay purpose. Detective Perry stated he spoke to Carpenter and based on those conversations, he did not believe Carpenter would willingly appear in court. Detective Perry's testimony was not offered to prove the substance of the conversation between himself and Carpenter. This testimony did not reference Carpenter's potential testimony against Petitioner nor did it refer to Carpenter's out of court inculpation of Petitioner. It was merely offered to show Detective Perry spoke to Carpenter, Detective Perry believed Carpenter did not intend to honor his subpoena, and Detective Perry knew multiple officers were searching for Carpenter because a warrant was issued for his arrest.

Because Detective Perry's testimony was offered for a non-hearsay purpose, Petitioner's underlying claim of trial counsel's ineffectiveness is insubstantial. Petitioner failed to demonstrate his claim as some merit. *Bey*, 856 F.3d at 238. Moreover, PCRA counsel cannot be found ineffective for failing to raise a meritless claim of trial counsel's ineffectiveness. *Sanders*, 165 F.3d at 253. Accordingly, Petitioner failed to prove cause exists to excuse his procedurally defaulted claim and it should be dismissed.

### ii.  This claim fails on the merits

Even upon consideration of the merits of Petitioner's claim, he is not entitled to relief. With respect to claims not adjudicated on the merits in state court proceedings, § 2254(d) does not apply. Instead:

> [T]he federal habeas court must conduct a de novo review over pure legal questions and mixed questions of law and fact, as a court would have done prior to the enactment of AEDPA. However, the state court's factual determinations are still presumed to be correct, rebuttable upon a showing of clear and convincing evidence.

*Appel*, 250 F.3d at 210 (citing 28 U.S.C. § 2254(e)(1)).

Here, trial counsel's actions were not *per se* unreasonable. *See* (ECF No. 1 at 16). As argued in detail above, Petitioner's claim does not implicate the Confrontation Clause. Trial counsel's actions were not *per se* unreasonable because counsel's inaction did not equate to a failure to subject the prosecution's case to meaningful adversarial testing. Petitioner likewise cannot overcome the "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Even if Detective Perry's testimony implicated the Confrontation Clause, the alleged error was harmless.

Petitioner asserts Detective Perry's statements were not harmless because

Robinson's testimony was "inherently unreliable" and permitting Carpenter's "untested statements" into evidence "effectively rehabilitated Saday Robinson's otherwise incredible testimony." (ECF No. 1 at 17).

Detective Perry did not introduce a statement from Carpenter that directly inculpated Petitioner and his testimony did not "rehabilitate" Robinson's testimony. Further, the issue of Robinson's credibility is not a proper consideration on habeas review. Federal habeas courts are not permitted "to redetermine [the] credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). Robinson's credibility is a factual issue determined by the state courts and is presumed to be correct. *Appel*, 250 F.3d at 210. Petitioner has not made a showing of clear and convincing evidence to rebut this presumption. *Id.* Thus, the alleged violation constituted harmless error.

Accordingly, Petitioner failed to prove trial counsel was ineffective and this claim should be dismissed.

### c. Testimony of DDA Mark Tranquilli

Lastly, Petitioner argues PCRA counsel was ineffective for failing to claim on collateral appeal that trial counsel was ineffective for failing to object to testimony from Deputy District Attorney Mark Tranquilli. (ECF No. 1 at 15). Petitioner avers DDA Tranquilli's testimony that he spoke with Carpenter, that Carpenter was an eyewitness to the events, and homicide charges were filed against Petitioner and Mr. Crumbley once Carpenter came forward as a witness were testimonial in nature. *Id.* at 15-16. He argues trial counsel had no reasonable basis for his failure to act and his conduct prejudiced Petitioner. *Id.* at 16-17.

### i.  This claim is procedurally defaulted

PCRA counsel's failure to raise this claim does not constitute cause to overcome procedural default pursuant to *Martinez v. Ryan*. Petitioner's underlying ineffective assistance of counsel claim is not a substantial one and PCRA counsel's failure to raise the claim does not constitute ineffective assistance of counsel under *Strickland*. *Bey*, 856 F.3d at 237-38 (quoting *Glenn*, 743 F.3d at 409-10).

DDA Stadtmiller elicited the following testimony from DDA Tranquilli to explain that Carpenter received a favorable sentence in his criminal case in exchange for his testimony against Petitioner:

> Q.      [DDA Stadtmiller] Mr. Tranquilli, regarding Richard Carpenter, did you make any offers or promises or anything to influence him to cooperate with the police?
>
> A.      [DDA Tranquilli] Again, I initially got information that Mr. Carpenter had important information on this case. I detailed county police to go and find out what that information was because we always want to find out what the person knows and we compare it against what we already know to see if it was credible or not. Once the county did that and they interviewed Mr. Carpenter they let me know the information that he gave them. At that point I did then take steps again to safeguard his person.
>
> Q.      But nothing prior to induce him to talk?
>
> A.      No, no, that would defeat the purpose. We want to know what they know first, we don't want them to be influenced by us. We want to know whether the information they are giving us is truthful at the outset.
>
> Q.      Would you explain to our jury the circumstances surrounding Mr. Carpenter and the help that you provided for him after the fact, after he had talked to the police?
>
> A.      Mr. Carpenter had I believe pled guilty to a charge in front of Judge Cashman. He had worked out a –

> Q.      A gun charge?
>
> A.      It was a gun charge Mr. Carpenter had pled guilty to and he had gotten a one to three year state sentence from Judge Cashman. Judge Cashman gave him a date that he had to come back to begin his sentence, and Mr. Carpenter did not come back to report when he was supposed to so a warrant was issued for his arrest. Ultimately he was picked up and he was put in jail and he reached out with the information that he had on this particular case. Once the detectives interviewed him and found out what he had to say, I could not leave him in the jail, again for the reasons that I mentioned with regards to Mr. Brown. Mr. Carpenter was actually an eyewitness to what happened. So it was even more important that we remove him from the jail, remove him from sort of the danger zone where something or somebody would get to him where he is incarcerated.
>
> Q.      Is this an uncommon practice in your experience?
>
> A.      It depends completely on the nature of the case and the parties involved. You know, if it is a husband who stabs a wife to death and we have a witness we are not too worried that friends are going to go out and intimidate the witness. If it is sort of a shooting in an atmosphere or case like this one with the parties involved, it is not uncommon for us to do that. I would say it happens probably maybe one case in five.

(JT Vol. II at 1106-1109).

Petitioner's underlying ineffective assistance of counsel claim is not a substantial one. The fact that DDA Tranquillli testified that he spoke to Carpenter does not automatically implicate the Confrontation Clause. DDA Tranquilli's testimony was offered for a non-hearsay purpose, namely to explain how Carpenter was involved in the case and what the Commonwealth provided in exchange for Carpenter's cooperation. It was not offered to prove the truth of Carpenter's out of court identification of Petitioner or the substance of what Carpenter witnessed at the scene of the crime. DDA Tranquilli's testimony was offered to provide context to the investigation and explain why Carpenter

was in witness protection and why he received a favorable sentence in his criminal case. *See Lambert*, 861 F.3d at 469 ("[T]he Confrontation Clause does not apply to non-testimonial statements or testimony that is not used for a hearsay purpose.").

Because DDA Tranquilli's testimony was offered for a non-hearsay purpose, Petitioner's underlying claim of trial counsel's ineffectiveness is insubstantial. Petitioner failed to demonstrate his claim as some merit. *Bey*, 856 F.3d at 238. Moreover, PCRA counsel cannot be found ineffective for failing to raise a meritless claim of trial counsel's ineffectiveness. *Sanders*, 165 F.3d at 253. Accordingly, Petitioner failed to prove cause exists to excuse his procedurally defaulted claim and it should be dismissed.

### ii.  This claim fails on the merits

Even upon consideration of the merits of Petitioner's claim, he is not entitled to relief. With respect to claims not adjudicated on the merits in state court proceedings, § 2254(d) does not apply. Instead:

> [T]he federal habeas court must conduct a de novo review over pure legal questions and mixed questions of law and fact, as a court would have done prior to the enactment of AEDPA. However, the state court's factual determinations are still presumed to be correct, rebuttable upon a showing of clear and convincing evidence.

*Appel*, 250 F.3d at 210 (citing 28 U.S.C. § 2254(e)(1)).

Here, trial counsel's actions were not *per se* unreasonable. *See* (ECF No. 1 at 16). As argued in detail above, Petitioner's claims do not implicate the Confrontation Clause. Trial counsel's actions were not *per se* unreasonable because counsel's inaction did not equate to a failure to subject the prosecution's case to meaningful adversarial testing. Petitioner likewise cannot overcome the "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Even if DDA Tranquilli's testimony implicated the Confrontation Clause, the alleged error was harmless. It is not highly probable that the allegedly improper testimony from DDA Tranquilli contributed to the jury's judgment of conviction. He provided context for Carpenter's favorable treatment from the Commonwealth. He did not testify to out of court statements Carpenter made to him that inculpated Petitioner.

Accordingly, Petitioner failed to prove trial counsel was ineffective and this claim should be dismissed.

## II. Neither trial counsel nor PCRA counsel were ineffective for failing to ensure the trial court provided a proper and adequate *Kloiber* jury instruction.

Petitioner next argues trial counsel was ineffective because he failed to ensure the trial court gave an adequate *Kloiber* instruction. (ECF No. 1 at 18). He further argues trial counsel should have requested that the trial court instruct the jury on all applicable factors listed in Jury Instruction 4.07A and 4.07B of the Pennsylvania Suggested Standard Criminal Jury Instructions. *Id.* at 20. He avers the jury instruction the trial court provided was insufficient because it did not specify for the jury each factor listed in the Standard Criminal Jury Instructions. *Id.* at 21-22.

### a. Petitioner's claim is procedurally defaulted

Petitioner concedes this claim is procedurally defaulted but argues PCRA counsel's ineffectiveness constitutes cause to overcome this otherwise procedurally defaulted claim. *Martinez v. Ryan*.  Respondents aver Petitioner failed to prove cause and prejudice; PCRA counsel was not ineffective because Petitioner's underlying claim is meritless.

A *Kloiber* instruction used to inform the jury "that a witness'[s] identification should be viewed with caution is required where the eyewitness: (1) did not have an opportunity

to clearly view the defendant; (2) equivocated on the identification of the defendant; or (3) had a problem making an identification in the past." *Commonwealth v. Ali*, 10 A.3d 282, 303 (Pa. 2010). A *Kloiber* instruction is unnecessary "[w]here an eyewitness has had 'protracted and unobstructed views' of the defendant and consistently identified the defendant 'throughout the investigation and trial[.]'" *Ali*, 10 A.3d at 303 (quoting *Commonwealth v. Dennis*, 715 A.2d 404, 411 (Pa. 1998)). Moreover, "[o]ur Commonwealth's decisional law has long held that prior inconsistent statements based upon fear of endangerment do not equate to a prior failure of ability to identify a defendant." *Commonwealth v. Reid*, 99 A.3d 427, 449 (Pa. 2014).

At the conclusion of Petitioner's trial, the trial court instructed the jury as follows:

> You have heard testimony that a witness made a statement on a prior occasion that was inconsistent with his present testimony. As a general rule you may consider evidence of prior inconsistent statements for one purpose only, that is you may consider such statements to help you judge the credibility and weight of the testimony given by the witness at this trial. You may not consider such statements as proof of the truth of anything said in those statements.
>
> However, special rules apply when the prior inconsistent statements were made in a prior proceeding while the witness was under oath. In such a case you may if you choose consider this evidence as proof of the truth of anything that the witness said in the earlier statement. You may also consider this evidence to help you judge the credibility and weight of the testimony given by the witness at this trial. Stated differently, where the prior inconsistent statements were made at a prior proceeding while the witness was under oath you may consider these statements just as though the witness had testified to them before you at this trial if you decide that the witness was being truthful on the prior occasion. On the other hand, if you decide that the witness gave truthful testimony before you at trial about the matters that were the subject of the prior statements you may choose to rely upon the trial testimony instead of the prior consistent

statements. As with any witness, you may choose to believe all, part or none of the witness' testimony.

In her testimony Saday Robinson has identified the defendants as the persons who have committed the crimes. There is a question of whether this identification is accurate. A victim or other witness will sometimes make a mistake when trying to identify a criminal. If certain factors are present the accuracy of identification testimony is so doubtful that a jury must receive it with caution.

Identification testimony must be received with caution if the witness' positive testimony as to identity is weakened by her not identifying the defendants or identifying someone else as the criminals when shown photo arrays at various times before trial.

If you believe that this factor is present then you must consider with caution Saday Robinson's testimony identifying the defendants as the person who committed the crime. If, however, you do not believe that this factor is present, then you need not receive the testimony with caution. You may treat it like any other testimony. You should consider all of the evidence relevant to the question of who committed the crimes here, including the testimony of Saday Robinson as well as any evidence of facts and circumstances from which identity or non-identity of the criminals may be inferred. You cannot find the defendants or either of the them individually guilty unless you are satisfied beyond a reasonable doubt by all the evidence, direct and circumstantial, not only that the crimes were committed but that it was the defendants or either of them individually who committed the crimes.

(JT Vol. II at 1463-1466).

Petitioner argues this instruction was insufficient because it failed to specifically state each of the factors listed in the Pennsylvania Suggested Standard Criminal Jury Instructions. Instruction 4.07A, Identification Testimony – Accuracy Not in Doubt,[103] states:

---

[103] Instruction 4.07B, Identification Testimony – Accuracy in Doubt, also lists similar specific factors a court may instruct the jury to consider.

> 1.    In [his] [her] testimony, [*name of witness*] has identified
> the defendant as the person who committed the crimes. In
> evaluating [his] [her] testimony, in addition to the other
> instructions I will have provided to you for judging the
> testimony of witnesses, you should consider the additional
> following factors:
>
>> a.    Did the witness have a good opportunity to
>> observe the perpetrator of the offense?
>>
>> b.    Was there sufficient lighting for [him] [her] to
>> make [his] [her] observations?
>>
>> c.    Was [he] [she] close enough to the individual to
>> note [his] [her] facial and other physical characteristics,
>> as well as any clothing [he] [she] was wearing?
>>
>> d.    Has [he] [she] made a prior identification of the
>> defendant as the perpetrator of these crimes at any
>> other proceeding?
>>
>> e.    Was [his] [her] identification positive or was it
>> qualified by any hedging or inconsistencies?
>>
>> f.    During the course of this case, did the witness
>> identify any else as the perpetrator?

Petitioner's underlying ineffective assistance of counsel claim is not substantial. Trial counsel's failure to request that the trial court include these specific factors in its jury instructions was inconsequential. The trial court noted there was a question of whether Robinson's identification was accurate. (JT Vol. II at 1464). Accordingly, it provided jury instructions similar to those delineated in the Pennsylvania Suggested Standard Criminal Jury Instructions, instruction 4.07B Identification Testimony – Accuracy in Doubt.

Though the trial court did not list each specific factor provided in the standard jury instructions, it noted Robinson's identification testimony "must be received with caution if the witness' positive testimony as to identity is weakened by her not identifying the

defendants or identifying someone else as the criminals *when shown photo arrays at various times before trial*." (JT Vol. II at 1464-1465).

Whether Robinson accurately identified Petitioner in a photo array was the crux of her inconsistent identification testimony. The trial court's instruction aligned with the First Alternative instruction listed in instruction 4.07B: "In this case [there was evidence that [*name of the witness*] could not see the criminal clearly] [*give specifics*]. Therefore, you must consider with caution [his] [her] testimony identifying the defendant as the person who committed the crime." The trial court filled in the blanks with the specifics of Robinson's inconsistent identification testimony.

These instructions were not improper simply because the trial court did not provide a sampling of each conceivable factor that may play into the jury's decision regarding Robinson's credibility. The trial court's instructions were adequate and cautioned the jurors as to the accuracy of Robinson's inconsistent identifications in multiple photo arrays. Jurors are presumed to follow the court's instructions. *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) ("This accords with the almost invariable assumption of the law that jurors follow their instructions[.]"); *Glenn*, 743 F.3d at 407. Here, there is no evidence jurors disregarded the trial court's clear instructions.

Thus, Petitioner's underlying claim of trial counsel's ineffectiveness is insubstantial and Petitioner failed to demonstrate his claim as some merit. *Bey*, 856 F.3d at 238. Moreover, PCRA counsel cannot be found ineffective for failing to raise a meritless claim of trial counsel's ineffectiveness. *Sanders*, 165 F.3d at 253. Accordingly, Petitioner failed to prove cause exists to excuse his procedurally defaulted claim and it should be dismissed.

### b.  This claim is meritless

As explained above, Petitioner's claim that trial counsel was ineffective for failing to request an adequate *Kloiber* instruction is unexhausted and procedurally defaulted. However, even upon consideration of the merits of Petitioner's claim, he is not entitled to relief. With respect to claims not adjudicated on the merits in state court proceedings, § 2254(d) does not apply. Instead:

> [T]he federal habeas court must conduct a de novo review over pure legal questions and mixed questions of law and fact, as a court would have done prior to the enactment of AEDPA. However, the state court's factual determinations are still presumed to be correct, rebuttable upon a showing of clear and convincing evidence.

*Appel*, 250 F.3d at 210 (citing 28 U.S.C. § 2254(e)(1)).

Here, Petitioner failed to prove trial counsel's inaction was constitutionally deficient or that it prejudiced him. As argued in detail above, the trial court's instructions were adequate and cautioned the jurors as to the accuracy of Robinson's inconsistent identifications in multiple photo arrays. Jurors are presumed to follow the court's instructions. *Glenn*, 743 F.3d at 407. Here, there is no evidence jurors disregarded the trial court's clear instructions.

Accordingly, trial counsel cannot be found ineffective for failing to raise a meritless claim. *Sanders*, 165 F.3d at 253. This claim should be dismissed as it is procedurally defaulted and meritless.

### c.  Petitioner was not deprived of his right to federal due process

Lastly, Petitioner argues in a footnote that the allegedly inadequate jury instruction deprived him of his federal right to due process. (ECF No. 1 at 24, n.11). Petitioner failed to raise this claim in state court; it is both unexhausted and procedurally defaulted. 28

U.S.C. § 2254(b)(1)(A); *Preston*, 902 F.3d at 375. Petitioner has not alleged or established cause and prejudice necessary to overcome procedural default of this claim. *See Coleman*, 501 U.S. at 753; *Preston*, 902 F.3d at 375. Nor has Petitioner alleged or established a fundamental miscarriage of justice occurred to overcome procedural default of this claim. *See Schlup*, 513 U.S. at 315, 327. Thus, this claim is procedurally defaulted and barred from federal habeas review.

Further, his Petition fails to meaningfully develop this claim. Petitioner's bald assertions and conclusory allegations are unsupported and fail to establish he is entitled to federal habeas relief. *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 301 (3d Cir. 1991).

Jury instructions are generally a matter of state law and "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67-68, (1991). Jury instructions are reviewable on habeas only if the instruction violates specific federal constitutional standards imposed on the states through the Due Process Clause of the Fourteenth Amendment. *Hallowell v. Keve*, 555 F.2d 103, 106 (3d Cir. 1977).

Habeas relief for a due process violation concerning an absent or defective jury instruction is available only when the absence or defect of an instruction infects the entire trial with unfairness. *Real v. Shannon*, 600 F.3d 302, 309 (3d Cir. 2010). A single deficient instruction does not render a judgment of conviction invalid if the charge, when considered as a whole, clearly informs the jury of the correct legal principle. *Henderson v. Kibbe*, 431 U.S. 145, 153-155 (1977).

Here, Petitioner failed to plead or prove the alleged defect in the jury instruction infected the entire trial with unfairness. His assertion that the trial court deprived him of his right to federal due process is simply insufficient to warrant federal habeas relief.

Accordingly, this claim should be dismissed as procedurally defaulted and meritless.

WHEREFORE, on the basis of the foregoing, Respondents respectfully requests that this petition be dismissed and a certificate of appealability be denied.

Respectfully submitted,

STEPHEN A. ZAPPALA, JR.
DISTRICT ATTORNEY

By:     s/ Samantha R. Bentley
        SAMANTHA R. BENTLEY
        ASSISTANT DISTRICT ATTORNEY
        PA I.D.  328809

<u>PROOF OF SERVICE</u>

I, the undersigned authority, hereby certify that on this 16th day of September, 2022, filed the foregoing with the Clerk of Court using the CM/ECF system, and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants named below.

By:     <u>s/ Samantha R. Bentley</u>
        SAMANTHA R. BENTLEY
        ASSISTANT DISTRICT ATTORNEY
        PA I.D. 328809

Office of the District Attorney
401 Allegheny County Courthouse
Pittsburgh, PA 15219
(412) 350-4377
e-mail: sbentley@alleghenycountyda.us

cc:     Todd Michael Mosser
        Mosser Legal, PLLC
        448 North 10th St., Suite 502
        Philadelphia, PA 19123
        (215) 567-1220
        todd@mosserlegal.com