# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**MATTHEW EBO**

       **Petitioner**

**vs.**                                       **CIVIL ACTION NO. 22-930**

**ERIC TICE, SUPERINTENDENT,**

**SCI-SOMERSET**

       **Respondent**

## PETITIONER'S RESPONSE IN OPPOSITION TO RESPONDENT'S ANSWER

## I.    OVERVIEW

Petitioner's convictions were the direct result of his accuser's out of court statements being used against him.  Since that accuser did not testify, Petitioner never had the opportunity to confront his accuser.  This was not simply a fleeting reference to a statement that was a "close call" as to its admissibility.  Rather, a detective told the jury what the accuser (Carpenter) supposedly said, and then a prosecutor actually offered testimony about what Carpenter said and attested to his credibility.  These developments occurred after Carpenter's supposed statements were featured in the prosecution's opening argument, and then Carpenter never appeared at trial to be cross examined.  Respondent's arguments that these

developments are "harmless" or do not present "substantial" issues of counsel's ineffectiveness are wrong.

Moreover, Respondent misses the whole point of the *Kloiber* issue. The circumstances surrounding Robinson's ability to observe the event and make an accurate identification were highly questionable, yet the jury was not instructed to consider that in evaluating her supposed identification of Petitioner.

**A. Petitioner's Right to Confront His Accuser Was Violated**

There are three instances in this trial where Carpenter's out of court statements were used to implicate Petitioner: the Commonwealth's opening argument; Detective Perry's testimony; and DDA Tranquilli's testimony. Perry and Tranquilli's testimony should have never been allowed to happen; and the opening argument should have resulted in a mistrial motion after Carpenter failed to appear.

**(i)     Detective Perry's and DDA Tranquilli's testimony conveyed inadmissible hearsay.**

Respondent argues that the claim relative to Detective Perry's and DDA Tranquilli's unobjected to testimony are not "substantial" claims of ineffectiveness because Petitioner's Confrontation Clause rights were not implicated. The argument should be rejected.

Respondent argues that the testimony provided by Detective Perry pertaining to the photo arrays does not implicate the Confrontation Clause because said testimony was used to demonstrate the course of the police investigation and how Petitioner became a suspect in the case. Respondents point out that Detective Perry testified that Petitioner became a suspect in the case around the time he created the photo arrays, the same time officers received the statement from Carpenter identifying Petitioner as being involved in the shooting and excluded a potential suspect from the photo arrays.

It is well established that "certain out-of-court statements offered to explain a course of police conduct are admissible. *Commonwealth v. Sneed*, 514 Pa. 597, 606-07, 526 A.2d 749, 754 (1987). Such statements do not constitute hearsay since they are not offered for the truth of the matters asserted; rather, they are offered merely to show the information upon which police acted." *Id*.

However, it cannot be said that every out-of-court statement bearing upon *subsequent* police conduct is to be admitted, for there is great risk that, *despite cautionary jury instructions*,[1] certain types of statements will be considered by the jury as substantive evidence of guilt. *Commonwealth v. Dent*, 837 A.2d 571, 579 (Pa. Super. 2002)(e*mphasis added).* The police conduct rule does not open the door

---

[1] No applicable cautionary instructions were provided in this case.

to unbounded admission of testimony, for such would nullify an accused's right to cross-examine and confront the witnesses against him. *Id*. The need for the evidence is slight, the likelihood of misuse great. *Commonwealth v. Palsa*, 521 Pa. 113, 118, 555 A.2d 808, 810-11 (1989).

In *Commonwealth v. Farris*, 251 Pa. Super. 277, 380 A.2d 486 (1977), the defendant was on trial for robbery and conspiracy after he and another individual allegedly robbed a bar in Philadelphia before fleeing the scene in a car. *Id*. at 487. Law enforcement arrested Gary Moore and interrogated him. *Id*.  During the interrogation Moore gave a statement identifying the Farris as being involved in the robbery. *Id*.

At trial the only issue of substance was identification. *Id*. Detective Robert Aiken, testified to the following:

By  the Assistant District Attorney:

Q. What, if anything was the first thing you did once you received the assignment in [the robbery of Dave's Tavern] case?

A. Well, one of the first things I did was interrogate Gary Moore.

Q. Was he already in police custody at that time?

A. Yes, he was.

Q. Did Gary Moore say something to you?

A. He made a statement to me, yes.

APPELLANT'S COUNSEL: Objected to, Your Honor.

ADA: Your Honor, it is a statement of fact, not hearsay.

THE COURT: All right. Objection overruled. Go ahead.

Q. *As a result of what Gary Moore told you, what if anything did you do*?

A. I arrested Emanuel Farris.

*Id.* at 487. *(Emphasis added)*

At the conclusion of the trial the jury found Farris guilty of conspiracy. On appeal the defendant raised several issues, but the Superior Court only found it necessary to address one; the trial court's error in overruling Farris' hearsay objection.

Like in the instant case, the Commonwealth argued that since the statement itself was never read to the jury the Detective's testimony regarding the steps he took after speaking to Moore did not constitute hearsay. *Id*. at 488. Further, according to the Commonwealth, "Moore's statement . . . was merely referred to as part of the investigation . . . ." *Id*. The lower court accepted this argument, saying that "Detective Aiken merely described the steps in his investigation leading to the arrest of Emanuel Farris." *Id*.

The Superior Court rejected these arguments, and found that to regard the testimony in such a manner was disingenuous because the testimony elicited from the detective had the effect of telling the jury that the statements he received from Moore identified the defendant as being involved in the robbery. *Id*. at 487. The

Superior Court went on to find that "Common sense tells us a jury is not likely to make nice legal distinctions between a flat-out narrative ("Moore told me that…) and an oblique narrative (as a result of what Moore told me I did…). *Id.* at 488.

The Superior Court concluded that "there is little doubt…that the assistant district attorney intended to get across to the jury that Moore had identified the defendant as being involved in the robbery" and "that was the only reason to question the detective as he was questioned." *Id.* The Superior Court conceded that sometimes it is relevant to ask law enforcement officers to "describe the steps in your investigation," for example, when the issue is whether the officer had reasonable cause to get a search warrant." *Id.* Here, however, the Superior Court decided "the fact that the detective had taken "a statement" from Moore, and had then "[a]s a result of" that statement arrested appellant, were of no possible relevance -- except to show that Moore had told the detective that appellant was involved in the robbery. *Id.*[2]

*Farris* is directly on point here.  That Detective Perry did not read verbatim Carpenter's statement to the jury is of no moment.  The inescapable truth is that as

---

[2] The Superior Court also disagreed with the Commonwealth's argument that counsel should have requested cautionary instructions, finding that "such instructions could not cure the admission of a hearsay statement identifying a defendant as one of several participants in a crime. Id. (*citing Commonwealth v. Ransom*, 446 Pa. 457, 288 A.2d 762 (1972).

a result of the prosecutor's question and the detective's answer, the jury learned that Carpenter supposedly told law enforcement that Petitioner was involved in the crime.  Suggesting otherwise is pure sophistry. *See also*, *Commonwealth v. Thomas*, 396 Pa. Super. 92, 578 A.2d 422 (1990)(defendant was entitled to relief on his second PCRA petition because counsel was ineffective for failing to object through post-trial motions to the state's introduction of hearsay statements where an officer's testimony conveyed the impression that the second man identified defendant as the perpetrator which constituted an impermissible oblique narrative, and the error likely affected the verdict).

DDA Tranquilli's testimony is even more problematic.  He testified regarding the favorable sentence Carpenter received in exchange for his identification of Petitioner.  Respondent now argues that this was necessary to provide context to the investigation and explain why Carpenter was in witness protection. DDA Tranquilli also testified that Mr. Carpenter was "actually an eyewitness to what happened" and insinuated that Mr. Carpenter's identification of Petitioner was so "credible" that it was paramount to remove Carpenter from jail and into a safe house. (JT Vol. II at 1106-1109).[3] DDA Tranquilli testified that Mr. Carpenter had reached out to law enforcement with important information. After

---

[3] Numerals in parentheses preceded by the abbreviation "JT Vol. I"  refer to pages of the August 20 through September 4, 2012 Jury Trial Transcript – Volume I.

police interviewed Carpenter, and "compared it against what [we] already know to see if it was credible" removed Carpenter from jail to "safeguard his person." (JT Vol. II at 1106-1109). Furthermore, in the same exchange Tranquilli explicitly testified that "Mr. Carpenter was actually an eyewitness to what happened. So, it was even more important [to] removed him from the danger zone." *Id*. This testimony can only mean that the statements made by Carpenter to the officers and relayed to Tranquilli was deemed reliable by law enforcement.

Here again, it is of no moment that Carpenter's statement was not relayed verbatim to the jury.  Any suggestion that the jury didn't know what Carpenter supposedly told DDA Tranquilli is nonsense.

Equally unavailing is Respondent's repeated "course of conduct" explanation to justify DDA Tranquilli's testimony.  *See Farris, supra*.  *See also Commonwealth v. Dent* 837 A.2d 571 (police officer's narrative that included appellant's sister's identification of her was inadmissible hearsay).[4]

Finally, Respondent makes a passing argument that the testimony from Detective Perry and DDA Tranquilli was not offered for substantive purposes.  But

---

[4] "The concern with identification evidence presented in the form of oblique narratives relating the course of police investigation is that a jury will accept third-party declarations as substantive evidence of guilt without giving the defendant an opportunity to cross- examine the declarant."  *Id.*

the jury did not know this.  At no point was the jury instructed about how to evaluate what Carpenter supposedly told law enforcement.[5]

In sum, Respondent's argument that Petitioner's claims of ineffectiveness relative to counsel's failure to object to Perry's and Tranquilli's testimony are not "substantial" ones should be rejected.  Consequently, Respondent's argument that Petitioner's claim also fails on the merits (for the same reasons) shoud also be rejected.

**(ii)    This testimony was not harmless.**

Respondent makes a passing argument that the above referenced testimony was harmless.

The test for harmless error is whether it is highly probable that the error did not contribute to the judgment, which requires that the court possess a sure conviction that the error did not prejudice the defendant. *United States v. Cunningham*, 694 F.3d 372, 391-92 (3d Cir. 2012) (quoting *United States v. Vosburgh*, 602 F.3d 512, 540 (3d Cir. 2010)) (internal quotation marks omitted)

---

[5] Even if there were such instructions, same would not have cured the constitutional violations.  *Accord*, *Farris*, *supra*.

(alterations omitted). The Government bears the burden of showing harmlessness. *United States v. Reynolds*, 710 F.3d 498, 515 (3d Cir. 2013).

Respondent has waived its harmless error argument for failing to develop it in any meaningful way.  Respondent does not argue, nor could it, that the evidence in this case was overwhelming.  The suspect was identified as five feet, six inches tall, medium build, and light skinned. (JT Vol 1 at 553). Petitioner is six feet, three inches tall, with a large build, and is dark skinned.

Rather, Respondent's harmless error analysis is confined to arguing that there was nothing improper about accusations from a non-testifying accuser being used to secure Petitioner's conviction.  As demonstrated *infra*, this is simply wrong. A verdict based in any material respect on inadmissible hearsay is unreliable because inadmissible hearsay is by definition unreliable. *Commonwealth v. Thomas*, 396 Pa. Super. 92, 106, 578 A.2d 422, 429 (1990).

Here, other than Robinson's eminently questionable "identification" of Petitioner, all the Commonwealth had to convict Petitioner was what Carpenter had to say.  Thus, suggesting that using a detective and a prosecutor to improperly relay Carpenter's accusations through the back door is perfectly fine and had no effect on the outcome of this trial is outrageous.

**(iii)** **There should have been a mistrial after Carpenter failed to appear in light of the prosecutor's repeated references to him in the opening argument.**

In the prosecutor's opening argument, he described in detail exactly what Carpenter allegedly told the police, including the identification of Petitioner, what Petitioner allegedly did, and how Carpenter allegedly picked Petitioner out of a photo array. (JT Vol. at 131-32).

Further, he went on to say that the investigation was going on for months until police got a "break in the case" in the form of Carpenter's statements, further solidifying in the minds of the jury how credible and important Carpenter's statements were to law enforcement.[6] *Id.*

Carpenter never testified and was thus never cross examined.

The trial court is in the best position to assess the effect of a prejudicial statement on the jury. Thus, the decision of whether to grant a mistrial is within the sound discretion of the trial court, and will not be reversed on appeal absent an abuse of that discretion. *See Commonwealth v. Simpson*, 562 Pa. 255, 754 A.2d

---

[6] "He (Carpenter) tells the police I was in the building in the hallway with the defendants…they both had guns…watched them follow Mr. Mattox across the parking lot and shoot him and kill him." "Mr. Carpenter picked both defendants from separate photo arrays saying these were the shooters." (JT Vol. I at 131-32).

1264, 1272 (2000); *Commonwealth v. Robinson*, 543 Pa. 190, 200, 670 A.2d 616, 621 (1995).

The remedy of a mistrial is an extreme one that is required only when an incident is of such a nature that its unavoidable effect is to deprive the defendant of a fair and impartial trial by preventing the jury from weighing and rendering a true verdict. *Commonwealth v. Spotz*, 552 Pa. 499, 525, 716 A.2d 580, 592 (1998). Furthermore, a mistrial is not necessary if a court's cautionary instructions adequately cure any prejudice. *Id.*, 716 A.2d at 592.

When considering the totally of the events that transpired in Petitioner's case it is apparent that the statements made in DDA Stadtmiller's opening argument paired with the subsequent testimony provided by Detective Perry and DDA Tranquilli were an incident "of such a nature that its unavoidable effect is to deprive the defendant of a fair and impartial trial by preventing the jury from weighing and rendering a true verdict. *Id*.

The testimony by these witnesses along with the opening statements by DDA Stadtmiller prevented the jury from properly weighing the facts of this case because through their statements the jury was under the impression that there were multiple witnesses who identified Petitioner as being the shooter. Since the sole issue at trial was one of identity the mention of any additional witness to the

shooting who could identify Petitioner would without question influence the jury's deliberations.

In his opening argument, the DDA placed Carpenter's role in this case, and his accusations, directly at issue by prominently referring to him and what he supposedly told law enforcement.  When Carpenter didn't show up to testify, the prosecution backdoored the substance of Carpenter's accusations by having them impermissibly relayed to the jury through a detective and a fellow prosecutor. Carpenter was never cross examined.

No reasonable lawyer would have ever allowed this to happen. Had counsel motioned for a mistrial when the Commonwealth failed to produce Carpenter after explicitly relaying his accusations against Petitioner to the jury, such a motion would have to have been granted.  Allowing a jury to deliberate under these circumstances was inherently unfair, and no reasonable basis can be conjured up to justify why trial counsel allowed that to happen.

### B. The *Kloiber* charge

Respondent claims that Petitioner's counsel was not ineffective for failing to request sufficient Kloiber jury instructions and failing to object to the insufficient jury instructions that were given.

The need for a Kloiber instruction focuses on the ability of a witness to identify the defendant. *Commonwealth v. Reid*, 627 Pa. 151, 164, 99 A.3d 470, 478 (2014). When reviewing a challenge to jury instructions, the reviewing court must consider the charge as a whole to determine if the charge was inadequate, erroneous, or prejudicial." *Commonwealth v. Estepp*, 2011 PA Super 53, 17 A.3d 939, 946.

A Kloiber charge is appropriate where there are particular concerns regarding identification, such as where a witness did not have an opportunity to clearly view the defendant, equivocated on the identification of the defendant, or had a problem making an identification in the past. *Commonwealth v. Ali*, 608 Pa. 71, 10 A.3d 282, 303 (Pa. 2010). Where an eyewitness has had "protracted and unobstructed views" of the defendant and consistently identified the defendant "throughout the investigation and at trial," there is no need for a *Kloiber* instruction. *Id*.

Respondent argues that that the instruction offered here was not improper "simply because the trial court did not provide a sampling of each conceivable factor that may play into the jury's decision regarding Robinson's credibility." (Respondent's reply at 56).  Respondent misses the point.

14

The jury instruction presented here focused *solely* on Robinson's prior omissions and misidentifications of Petitioner during the photo array identifications and *not* whether Robinson's initial viewing of the incident was flawed by an inability to view the crime.

As Respondent notes, and Petitioner agrees, "Jurors are presumed to follow the court's instructions." *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) ("This accords with the almost invariable assumption of the law that jurors follow their instructions[.]"); *Glenn*, 743 F.3d at 407.

However, the jury was only instructed to consider whether one factor from Jury Instruction 4.07A and 4.07B was present instead of the many that were present and that the court should have listed. By not listing all the applicable factors the court effectively lowered the bar for the jury to determine whether Robinson's testimony was credible. This prejudiced Petitioner because the jury was not instructed to consider *all* of the surrounding circumstances of Robinson's identification.  This is not just a case where a witness made inconsistent statements about an identification, this is also a case where that witness' ability to actually observe the crime was limited.  The jury was not instructed on the latter.  That is error, and, in this case where identification was the crucial issue, Petitioner was prejudiced by this omission.

Thus, Petitioner's claim has merit, and this is a substantial question of ineffectiveness.  No reasonable basis can be conjured up for failing to request that the jury be charged with the appropriate law.  Counsel had nothing to lose by requesting a proper, and applicable, *Kloiber* instruction.

## **CONCLUSION**

Petitioner has raised substantial claims of trial counsel's ineffectiveness for allowing accusations from a non-testifying (and thus, non-cross examined) accuser to be used against him at trial, and for failing to ensure that the jury was appropriately charged with a straightforward and obviously applicable *Kloiber* instruction. These claims are meritorious and entitle Petitioner to relief.

**WHEREFORE**, Petitioner requests that a Writ of Habeas Corpus issue and that he be released from custody if he is not re-tried within ninety (90) days of this Court's decision.

**Respectfully Submitted:**

_____
/s/Todd M. Mosser
TODD M. MOSSER, ESQUIRE
Counsel for Petitioner Matthew Ebo

DATE: 10/24/22

## CERTIFICATE OF SERVICE

I hereby certify that I am this day serving the foregoing document upon all Parties via the e-filing system.

**RESPECTFULLY SUBMITTED,**

**/S/ Todd Michael Mosser**
**MOSSER LEGAL, PLLC**
**Attorney ID# 87534**
**448 North 10th St., Suite 502**
**PHILADELPHIA, PA 19123**
**215-567-1220**
**todd@mosserlegal.com**

**Date: 10/24/22**