IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MATTHEW EBO, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 2:22-cv-930 |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Patricia L. Dodge |
| DISTRICT ATTORNEY OF | ) | |
| ALLEGHENY COUNTY, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

**MEMORANDUM**

Before the Court[1] is the counseled Petition for a Writ of Habeas Corpus (ECF 1) filed by state prisoner Matthew Ebo under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). For the reasons below, the Court will deny the Petition and deny a certificate of appealability.

## I. Relevant Background

On May 16, 2011, Todd Mattox was shot to death in the parking lot of the Leechburg Garden apartments, located in Penn Hills. Mattox's assailants shot him three times—once in the head, once in the upper back, and once in the left buttock. From the statements given by witnesses, the police learned that two black males were involved in the shooting. One or both assailants were also seen rifling through Mattox's pockets. They then fled the scene in Mattox's car, which was found the next day on Hill Street in Penn Hills. It had been set on fire.

None of the witnesses interviewed by either Penn Hills police officers or Allegheny County detectives initially identified Mattox's assailants. The trial court described how Ebo and his co-

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

defendant, Thaddeus Crumbley, came to be charged with robbing and killing Mattox, stealing his vehicle, and related crimes:

> [Ebo and Crumbley] became suspects in the Todd Mattox murder following a string of events occurring over the course of the several months following the slaying. On June 2, 2011, Defendant Crumbley was involved in a shooting in Swissvale, in which he was shot several times. (T.R. 8/20/12, pp. 855-858). Two types of shell casings were recovered from the scene, including the same type of shell casings that were found at the Todd Mattox murder scene, those being from a .40 caliber Smith and Wesson Springfield Armory pistol. (T.R. 8/20/12, pp. 885-886). A friend of Defendant Crumbley's, Asa Thompkins, was present at the scene of the shooting. (T.R. 8/20/12, pp. 847, 852). One week later, on June 9, 2011, Asa Thompkins was pulled over for a traffic stop in South Park. (T.R. 8/3/12, p. 20; T.R. 8/20/12, p. 1009). A Springfield Armory pistol was found under the front passenger seat of the car, and Mr. Thompkins said that the gun was his. (T.R. 8/20/12, pp. 1010-1011).
>
> On September 6, 2011, Thomas Julian Brown wrote a letter from the Allegheny County jail to Detective Garlicki, of the Allegheny County police, asking that he be put in touch with the detective who was handling the Todd Mattox homicide. (T.R. 8/20/12, p. 697). He indicated that he was willing to provide information on that case. (T.R. 8/20/12, pp. 697-698). Mr. Brown further indicated that he had heard, several months earlier, Defendant Crumbley saying that he had "smoked" Todd Mattox. (T.R. 8/20/12, pp. 698-699). Mr. Brown's cousin was Asa Thompkins, and Mr. Brown's son, Leron Brown, was a friend of Defendant Crumbley. (T.R. 8/20/12, pp. 695-696). Leron Brown was found shot dead in January or February 2012, inside a car with Roman Herring, a cousin of Defendant Crumbley's, who was also found dead in that same car. (T.R. 8/20/12, pp. 948, 991). Roman Herring was allegedly involved in the burning of a vehicle on Hill Street in Penn Hills. (T.R. 8/20/12, p. 945).
>
> Defendant Crumbley became a suspect in the Todd Mattox murder in September 2011, after Detective Anthony Perry received a report connecting the handguns used in the Todd Mattox homicide with the weapons used in the Swissvale shooting on June 2, 2011, and after witness Thomas Brown came forward with information about the homicide. (T.R. 8/20/11, pp. 1017, 1020, 1021, 1025). Defendant Ebo also became a suspect at that time. (T.R. 8/20/11, p. 1017).

(ECF 10-37 at 7-8.)

Saday Robinson lived in the Leechburg Garden apartments in May 2011 and witnessed Mattox's murder. She was around 20 years old at the time. When she was first interviewed shortly after the murder, she told investigators she saw two men shoot Mattox and speed off in a white car. (Trial Tr. Vol. I at 526, 536.) She described one of the assailants as being light-skinned with

a medium build. (*Id.* at 72.) The other assailant she described as dark-skinned and wearing a hoody. (*Id.* at 72, 571-72.) She also said that she could pick out the light-skinned assailant but not the dark-skinned one. (*Id.* at 575.) At the end of the interview, however, Robinson stated she could identify both individuals if she saw them again. (*Id.* at 594.)

In September 2011, Robinson was shown a photo array containing Crumbley's picture, and in November 2011 she was shown arrays containing Crumbley's and Ebo's pictures. On neither date did she select either of them from the arrays. (*Id.* at 356-57, 548-49.)

In early December 2011, investigators showed Richard Carpenter, then an inmate in state custody who claimed to have knowledge of the shooting, arrays that included Ebo's and Crumbley's photographs. (*Id.* at 339.) Carpenter identified Ebo and Crumbley as Mattox's shooters. (*Id.* at 365.)

Thereafter, warrants were issued for Crumbley's and Ebo's arrests. (*Id.* at 366-67.) Their joint trial was scheduled to begin in August 2012. Attorney Randall McKinney ("trial counsel") represented Ebo. Attorney Wendy Williams represented Crumbley.

In July 2012, and after Robinson understood that Ebo and Crumbley were in custody, investigators showed her arrays containing their pictures. Robinson identified them as the men she saw shoot Mattox. (*Id.* at 183-84, 338.)

Ebo and Crumbley filed a pre-trial motion to suppress Robinson's identification in which the argued that it was inherently unreliable and tainted under the circumstances. Robinson, Detective Anthony Perry, and Detective Steve Hitchings testified at the suppression hearing, which was held on August 21 and 22, 2012. (Trial Tr. Vol. I at 28-217.) At the conclusion of the hearing the trial court denied the suppression motions. (*Id.* at 215.)

When the trial started the trial court had not yet ruled on the admissibility of Robinson's identifications and, therefore, precluded the parties from referencing her in their opening statements. (Trial Tr. Vol. I at 96.) During opening arguments the prosecutor referenced Carpenter's statements to the detective about his eyewitness accounts of the shooting as well as his positive identifications of the defendants. (*Id.* at 131-32.)

When Robinson testified at the trial, she made in-court identifications of both Ebo and Crumbley as Mattox's shooter. (*Id.* at 527.) The Commonwealth also introduced evidence of her July 2012 identifications of them from the photo arrays. She was cross-examined extensively as to the credibility of her identifications. (*Id.* at 561-635, 641-47.)

The trial court summarized Robinson's trial testimony as follows:

> Robinson was shown photo arrays containing photographs of the Defendants on September 16, 2011 (Defendant Crumbley only) and November 4, 2011 (both Defendants). (T.R. 8/20/12, pp. 356-357). However, on neither date did she select either of the Defendants from the arrays, although she testified that she was aware at the time of viewing the arrays that the Defendants were present in them. (T.R. 8/20/12, pp. 548-549). She indicated that she did not make the identifications on these dates because she was afraid, and her family and friends were telling her not to get involved. (T.R. 8/20/12, p. 548). Ms. Robinson also indicated in her testimony that she identified someone as "looking like" Defendant Ebo during one of the times when she was presented with photo arrays. (T.R. 8/20/12, p. 548). She indicated she did this deliberately. (T.R. 8/20/12, p. 549). However no detective involved with presenting her with photo arrays ever indicated that there had been an identification of anyone on either September 16, 2011 or November 4, 2011. (T.R. 8/20/12, pp. 349-356, 337-344). Ms. Robinson moved out of Leechburg Gardens in July 2011. She left the Allegheny County area and moved across the country in October 2011. (T.R. 8/20/12, p. 546). She returned to this area to testify upon the request of the police, who informed her that they had suspects in custody. (T.R. 8/20/12, p. 546). She was shown photo arrays on July 24, 2012, at which time she identified Defendant Crumbley after an approximately fifteen (15) second pause, and she identified Defendant Ebo immediately. (T.R. 8/20/12, pp. 540-543).

(ECF 10-37 at 8-9.)

The Commonwealth subpoenaed Carpenter to testify at the trial but he did not appear. According to Ebo, several law enforcement witnesses testified to Carpenter's account of the shooting and his identification of the defendants. (ECF 1, ¶ 45.)

The trial concluded on September 4, 2012. The jury found Ebo and Crumbley each guilty of first-degree murder, robbery (serious bodily injury), robbery (motor vehicle), conspiracy to commit murder, conspiracy to commit robbery, and carrying a firearm without a license. (Trial Tr. Vol. II at 1508-09.) The trial court, in a bench trial, also convicted each of them of possession of a firearm prohibited. (*Id.* at 1512-13.)

The trial court sentenced Ebo and Crumbley to the mandatory term of life imprisonment on their respective first-degree murder convictions. It also sentenced each of them to aggregate, consecutive terms of imprisonment on their remaining convictions. Specifically, the trial court sentenced Ebo to life without the possibility of parole to be followed by a term of 46 to 92 years of incarceration. *Commonwealth v. Ebo*, 2017 WL 2684563, at *1 (Pa. Super. Ct. June 21, 2017).

Thereafter, Crumbley file a post-trial motion in which he claimed, among other things, that he was entitled to a new trial based on after-discovered evidence that Robinson recanted her trial testimony. (ECF 10-21.) Ebo, through new counsel (Attorney Victoria H. Vidt), joined this motion.

The trial court held a hearing on Crumbley's and Ebo's motion on October 25, 2015. Robinson, Barry Fox (a defense investigator) and Detective Perry testified. Robinson withdrew the recantation of her trial testimony, stated the testimony she gave at trial was truthful, and explained that she had been threatened by associates of Crumbley and Ebo to provide them with favorable post-trial evidence. Robinson also stated that she had been offered $25,000 to recant her trial testimony. In its subsequent memorandum order denying Ebo and Crumbley's motion for a new trial, the trial court held that "a new trial is not warranted because Ms. Robinson credibly

recanted her unsworn recantation statements, and the court finds that her explanation for why she originally made the statements and why she recanted them to be credible, believable and trustworthy." (ECF 10-44 at 3-6.)

Ebo, through Attorney Vidt, filed a direct appeal in which he raised the following claims:

> I. The trial court abused its discretion when it failed to award [Ebo] a new trial based upon the recantation of the sole witness connecting him to the crime, Saday Robinson.
>
> II. The evidence that [Crumbley] was involved in gun violence two weeks after the homicide was inadmissible evidence of other bad acts against [Ebo]. Also, the irrelevant evidence had no connection to [Ebo] and it should not have been presented as evidence that [Ebo] was somehow involved in the homicide.
>
> III. The highly suggestive pretrial identification procedure tainted [Robinson's] identification of [Ebo] and any information about [her] photo array identification and her subsequent in-court identification should have been suppressed.
>
> IV. The trial court's imposition of the mandatory minimum sentence under 42 Pa.C.S. § 9712, an unconstitutional statute, was illegal since the factfinder never found the required facts beyond a reasonable doubt for the imposition of the mandatory as required by the United States Supreme Court in *Alleyne v. United States*, 570 U.S. 99 (2013).

(ECF 10-39 at 2-3.)

In 2017, the Superior Court issued a decision in which it affirmed Ebo's convictions. *Commonwealth v. Ebo*, 2017 WL 2684563, at *1-7 (Pa. Super. Ct. June 21, 2017). The Superior Court held that Ebo's sentencing-phase *Alleyne* claim had merit, however. It therefore remanded the case to the trial court for Ebo to be resentenced at counts three (robbery of a motor vehicle) and six (conspiracy to commit robbery). *Id.*, at *7-8. The Pennsylvania Supreme Court denied Ebo's petition for allowance of appeal. (ECF 10-55 at 1.)

In February 2018, the trial court resentenced Ebo in accordance with the Superior Court's directive. His aggregate sentenced remained the same (life in prison without the possibility of parole followed by a consecutive term of 46 to 92 years of incarceration). (ECF 10-58 at 1-2.)

Ebo, through new counsel (Attorney Diana Stavroulakis) then pursued relief under the Pennsylvania's Post Conviction Relief Act ("PCRA"). (ECF 10-66 at 1-17; ECF 10-68.) He contended that his convictions must be vacated because evidence supplied by an alleged newly discovered witness, Robert Raglin, established that he is actually innocent. (*Id.* at 10-12.) Crumbley raised the same claim in his PCRA proceeding.

Under Pennsylvania law a state prisoner typically must litigate all claims of trial counsel's ineffective assistance in a PCRA proceeding. *Commonwealth v. Grant*, 813 A.2d 726 (Pa. 2002) (abrogated in part on other grounds by *Commonwealth v. Bradley*, 261 A.3d 381 (Pa. 2021). Ebo did not assert in his PCRA proceeding that his trial counsel (Attorney McKinney) was ineffective, however.

The trial court (now the PCRA court) held a joint hearing on Ebo's and Crumbley's PCRA petitions on May 10, 2019. Raglin testified at this hearing. Following it, the PCRA court issued a memorandum order denying both Ebo's and Crumbley's requests for PCRA relief. (ECF 10-70 at 1-17.) Ebo, through counsel, appealed to the Superior Court and raised the following three grounds for relief:

> I. The PCRA court erred in denying relief where Ebo established his after-discovered evidence claim through Raglin's exculpatory eyewitness testimony.
>
> II. The PCRA court erred in denying relief by incorrectly concluding that Raglin's testimony was offered solely to impeach Robinson's testimony, when in fact it was being offered as substantive, exculpatory evidence establishing Ebo's innocence.
>
> III. The PCRA court erred in denying relief because Raglin's testimony is likely to compel a different verdict at a new trial.

(ECF 10-74 at 2.)

In 2021, the Superior Court issued *Commonwealth v. Ebo*, 2021 WL 652992 (Pa. Super. Ct. Feb. 19, 2021) affirming the PCRA court's decision. The Pennsylvania Supreme Court denied his subsequent petition for allowance of appeal. (ECF 10-78.)

Ebo then filed in this Court, through new counsel, the Petition for a Writ of Habeas Corpus (ECF 1) under 28 U.S.C. § 2254 in which he raises the following two grounds for relief.

> Ground 1 "[T]rial counsel was ineffective for failing to object to any reference to Carpenter's alleged identification of [Ebo] or request a mistrial after Carpenter failed to appear;" and,
>
> Ground 2 "Trial counsel was ineffective for failing to ensure that a proper *Kloiber* instruction was given to the jury."[2]

(ECF 1 at 11; *id.* at 13-24.)

Respondents have filed the Answer (ECF 10) and the state court record and Ebo has filed his Reply (ECF 16).

## II. Discussion

### A. Jurisdiction

The Court has jurisdiction under 28 U.S.C. § 2254, the federal habeas statute applicable to prisoners in custody pursuant to a state-court judgment. It permits a federal court to grant a state prisoner a writ of habeas corpus "on the ground that he or she is in custody in violation of the Constitution…of the United States." 28 U.S.C. § 2254(a). Errors of state law are not cognizable. *Id.*; *see, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

It is Ebo's burden to prove that he is entitled to the writ. *See, e.g.*, *Vickers v. Sup't Graterford SCI*, 858 F.3d 841, 848-49 (3d Cir. 2017). There are other prerequisites that he must

[2] In *Commonwealth v. Kloiber*, 106 A.2d 820 (Pa. 1954), the Pennsylvania Supreme Court held that "where the witness is not in a position to clearly observe the assailant, or he is not positive as to identity, or his positive statements as to identity are weakened by qualification or by failure to identify defendant on one or more prior occasions…the court should warn the jury that the testimony as to identity must be received with caution." 106 A.2d at 826-27 (internal citations omitted).

satisfy before he can receive habeas relief on a claim. For example, as explained below, Ebo must have exhausted his available state court remedies with respect to each of his claims or met the difficult burden of showing that the Court must excuse his failure to do so. Ultimately, however, Ebo cannot receive federal habeas relief unless he shows that he is in custody in violation of his federal constitutional rights. 28 U.S.C. § 2254(a); *see, e.g.*, *Vickers*, 858 F.3d at 849.

**B. The Prohibition on Evidentiary Development**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") put into place "even more 'stringent requirements'" regarding evidentiary development than those that were in place before its enactment. *Shinn v. Ramirez*, 596 U.S. 366, 381 (2022) (quoting *Williams v. Taylor*, 529 U.S. 420, 433 (2000)). AEDPA, as codified at 28 U.S.C. § 2254(e)(2), provides:

> *If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim* unless the applicant shows that–
>
> (A) the claim relies on–
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

(Emphasis added).

Importantly, a petitioner cannot avoid § 2254(e)(2)'s requirements by faulting his former counsel for failing to develop the evidence he now wants to present to support any of his federal habeas claims. *Shinn*, 596 U.S. at 382 ("state postconviction counsel's ineffective assistance in developing the state-court record is attributed to the prisoner."). Thus, if a petitioner faults PCRA counsel for failing to litigate a claim in state court, the federal habeas court is prohibited from

holding an evidentiary hearing or otherwise expanding the state court record to introduce evidence to support that claim unless the petitioner has satisfied one of § 2254(e)(2)'s two narrow exceptions to AEDPA's general bar on evidentiary hearings. *Id.* at 382-84. *See also Williams v. Sup't Mahanoy SCI*, 45 F.4th 713, 724 (3d Cir. 2022) (AEDPA's prohibition is not limited to formal evidentiary hearings and applies whenever the petitioner wants to expand the record beyond that developed in state court).

In the rare case in which § 2254(e)(2) does not apply because the petitioner is not at fault for "fail[ing] to develop the factual basis of a claim in State court proceedings," it is within the district court's discretion whether to hold an evidentiary hearing on a claim under Rule 8 of the Rules Governing Section 2254 Cases in the United States District Courts. *See, e.g.*, *Schriro v. Landrigan*, 550 U.S. 465, 473-75 (2007).

**C. Ebo's Claims**

As set forth above, Ebo asserts two claims of ineffective assistance of trial counsel in his Petition, neither of which he litigated in state court when he had the opportunity to do so in his PCRA proceeding. Respondents contend that because Ebo did not exhaust his available state court remedies with respect to his claims he procedurally defaulted them.

The "exhaustion doctrine" requires that a state prisoner raise his federal habeas claims in state court through the proper procedures before he litigates them in a federal habeas petition. 28 U.S.C. § 2254(b), (c); *see, e.g.*, *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997). It is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). It "is designed to give the state courts a full and fair opportunity to

resolve federal constitutional claims before those claims are presented to the federal courts[.]" *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

A petitioner must have "invoke[d] one complete round of the State's established appellate review process[,]" to satisfy the exhaustion requirement. *Id.* In Pennsylvania, this requirement means that a petitioner in a non-capital case such as this one must have first presented every federal constitutional claim raised in his federal habeas petition to the Superior Court. *See, e.g.*, *Lambert v. Blackwell*, 387 F.3d 210, 233-34 (3d Cir. 2004).[3]

The Supreme Court has explained:

> State prisoners…often fail to raise their federal claims in compliance with state procedures, or even raise those claims in state court at all. If a state court would dismiss these claims for their procedural failures, such claims are technically exhausted because, in the habeas context, "state-court remedies are. . . 'exhausted' when they are no longer available, regardless of the reason for their unavailability." *Woodford v. Ngo*, 548 U.S. 81, 92-93, 126 S. Ct. 2378, 165 L. Ed.2d 368 (2006). But to allow a state prisoner simply to ignore state procedure on the way to federal court would defeat the evident goal of the exhaustion rule. *See Coleman*, 501 U.S. at 732, 111 S. Ct. 2546. Thus, federal habeas courts must apply "an important 'corollary' to the exhaustion requirement": the doctrine of procedural default. [*Davila v. Davis*, 582 U.S. 521, 527 (2017)]. Under that doctrine, federal courts generally decline to hear any federal claim that was not presented to the state courts "consistent with [the State's] own procedural rules." *Edwards v. Carpenter*, 529 U.S. 446, 453, 120 S. Ct. 1587, 146 L. Ed.2d 518 (2000).
>
> Together, exhaustion and procedural default promote federal-state comity. Exhaustion affords States "an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights," *Duckworth v. Serrano*, 454 U.S. 1, 3, 102 S. Ct. 18, 70 L. Ed.2d 1 (1981) (per curiam), and procedural default protects against "the significant harm to the States that results from the failure of federal courts to respect" state procedural rules, *Coleman*, 501 U.S. at 750, 111 S. Ct. 2546. Ultimately, "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without [giving] an opportunity to the

[3] In 2000, the Pennsylvania Supreme Court issued *In re: Exhaustion of State Remedies in Criminal and Post Conviction Relief Cases*, No. 218 Judicial Administration Docket No. 1 ("Order 218"). It provides that state prisoners on direct appeal of a criminal case or in a PCRA proceeding need not petition for allowance of review with the Pennsylvania Supreme Court after the Superior Court denies a claim in order to exhaust a claim for the purposes of subsequent federal habeas review. In *Lambert*, the Court of Appeals held that Order 218 was sufficient to render discretionary review before the Pennsylvania Supreme Court "unavailable" to state prisoners on direct appeal and in a PCRA appeal. Therefore, Pennsylvania state prisoners challenging their judgments of sentence in a federal habeas case need only show that they presented their federal habeas claims to the Superior Court. *Lambert*, 387 F.3d at 231-34.

> state courts to correct a constitutional violation," *Darr v. Burford*, 339 U.S. 200, 204, 70 S. Ct. 587, 94 L .Ed. 761 (1950), and to do so consistent with their own procedures, *see Edwards*, 529 U.S. at 452-453, 120 S. Ct. 1587.

*Shinn*, 596 U.S. at 378-79.

Thus, the doctrine of procedural default, like the doctrine of exhaustion, is "grounded in concerns of comity and federalism."[4] *Coleman*, 501 U.S. at 730. For a Pennsylvania prisoner in a non-capital case, it provides that an individual defaults a federal habeas claim if he: (1) failed to present it to the Superior Court and cannot do so now because the state courts would decline to address the claim on the merits as state procedural rules (such as the state's waiver rules or the PCRA's one-year statute of limitations) bar such consideration; or (2) failed to comply with a state procedural rule when he presented the claim to the state court, and for that reason the Superior Court declined to address the federal claim on the merits. *See, e.g.*, *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *O'Sullivan v. Boerckel*, 526 U.S. 838, 851-56 (1999) (Stevens, J. dissenting) (describing the history of the procedural default doctrine); *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Lines v. Larkins*, 208 F.3d 153, 162-69 (3d Cir. 2000).

The first scenario is what has occurred here. As Respondents correctly point out, Ebo did not exhaust either of his claims because he did not raise them in state court under procedures that were available during his PCRA proceeding. He cannot return to state court and litigate them now because they would be barred by state waiver rules and by the PCRA's one-year statute of limitations. Accordingly, Ebo has procedurally defaulted each of these claims.

---

[4] The procedural default doctrine became all the more important after the enactment of AEDPA, which put into place the highly deferential standards of review that a federal court must apply to a state court's adjudication of a petitioner's federal constitutional claims and to its findings of fact. 28 U.S.C. § 2254(d), (e). As explained below, Ebo asserts that he can avoid the default of his claims because his PCRA counsel was allegedly ineffective for not litigating them during his PCRA proceeding. A petitioner cannot avoid the default of his claims by simply making broad, nonspecific allegations that his PCRA counsel was ineffective and then receive de novo review of his claims in federal court, however.

Ebo admits that he defaulted his claims but argues that under the rule of *Martinez v. Ryan*, 566 U.S. 1 (2012), the Court should excuse the default and review them de novo. By relying on *Martinez*, Ebo faults PCRA counsel (Attorney Stavroulakis) for not raising his defaulted claims of trial counsel's ineffectiveness during his initial review proceeding (that is, before the PCRA court).[5] (ECF 1 at 11-13.)

A petitioner may avoid the default of a claim by demonstrating "cause for the default and actual prejudice as a result of the alleged violation of federal law[.]" *Coleman*, 501 U.S. at 750. "'Cause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him." *Id.* at 753 (emphasis in original). The general rule is that, because there is no federal constitutional right to counsel in a PCRA proceeding, a petitioner cannot rely on PCRA counsel's ineffectiveness to establish the "cause" necessary to overcome the default of a federal habeas claim. *Coleman*, 501 U.S. at 753; *Davila v. Davis*, 582 U.S. 521 (2017).

In 2012 in *Martinez*, the Supreme Court announced a narrow exception to this rule. It held that in states like Pennsylvania, where the law requires that claims of ineffective assistance of trial counsel typically be raised for the first time in a collateral proceeding, a petitioner may overcome the default of a claim of trial counsel's ineffectiveness[6] if the petitioner demonstrates: (1) the defaulted claim of trial counsel's ineffectiveness is "substantial"[7] and (2) PCRA counsel was

---

[5] PCRA counsel's alleged ineffectiveness is relevant only to the extent that it is one of the factors that must be established in order to avoid a default under *Martinez*. A habeas petitioner cannot receive habeas relief on a stand-alone claim that any of the attorneys who represented him during the PCRA proceedings were ineffective, a fact codified by statute at 28 U.S.C. § 2254(i), which provides that "[t]he ineffectiveness of counsel during Federal or State collateral post-conviction proceedings shall not be ground for relief in a proceeding arising under section 2254.

[6] The rule of *Martinez* applies only to defaulted claims asserting that trial counsel was ineffective and not any other type of defaulted claim. *Davila v. Davis*, 582 U.S. 521, 524-38 (2017).

[7] The Court of Appeals has explained that for the purposes of determining whether a petitioner can overcome the default of a claim under *Martinez*, he must show that the claim that trial counsel was ineffective is "substantial" by showing it has "some merit." *Workman v. Supt Albion SCI*, 915 F.3d 928, 938 (3d Cir. 2019). This requires that a petitioner "'show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should be

*Footnote continue on next page…*

ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984)[8] for (3) failing to raise that claim in the "initial review collateral proceeding" (meaning to the PCRA court). *Martinez*, 566 U.S. at 17. If the petitioner satisfies these three factors he is then entitled to de novo review of the merits of the defaulted claim. *Id.*

Here, Ebo makes only boilerplate allegations of PCRA counsel's ineffectiveness in an attempt to overcome the default of his claims under *Martinez*. In any event, for the reasons that follow, this Court "need not dwell" on whether Ebo can overcome the default of his claims under *Martinez*. *See Williams v. Sup't Mahanoy SCI*, 45 F.4th 713, 720 (3d Cir. 2022).

Before the Supreme Court's 2022 decision in *Shinn v. Ramirez*, 596 U.S. 366 (2022), the rule in the Third Circuit (and in many other circuits) was that the § 2254(e)(2)'s prohibition on evidentiary hearings *did not apply to whether a petitioner could overcome the default* of a claim. *Cristin v. Brennan*, 281 F.3d 404, 413 (3d Cir. 2002).[9] Rather, the decision to hold a hearing on that issue was a discretionary one. If the federal habeas court held a hearing on whether the petitioner could overcome the default of a claim under *Martinez* (or any other rule that might allow

---

resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'" *Id.* (quoting *Martinez*, 566 U.S. at 14, which cited *Miller-El v. Cockrell*, 537 U.S. 322 (2003)).

[8] Under *Strickland*, it is the petitioner's burden to establish that his "counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 688. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. Counsel cannot be deemed ineffective for failing to raise a meritless claim. *See, e.g.*, *Preston v. Sup't Graterford SCI*, 902 F.3d 365, 379 (3d Cir. 2018). *Strickland* also requires that the petitioner demonstrate that he was prejudiced by counsel's alleged deficient performance. This places the burden on him to establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

[9] In *Cristin*, the Court of Appeals concluded "that the plaining meaning of § 2254(e)(2)'s introductory language does not preclude federal hearings on excuses for procedural default at the state level." 281 F.3d at 413. The Court of Appeals' conclusion was based on two reasons. First, that a hearing used to support an excuse for procedural default is not a hearing on "a claim" under AEDPA because it is not a claim for relief on the merits. *Id.* at 417-18. Second, that a state prisoner "cannot be faulted…for not having previously presented the facts underlying arguments that would have been, on the whole, irrelevant or premature before state courts." *Id.* at 417. As explained below, *Shinn* "suggests that [t]here is good reasons to doubt' [the Court of Appeals'] reading of the word 'claim' in *Cristin*, [but] it [did] not abrogate [*Cristin's*] holding that, generally, AEDPA's text does not forbid federal courts from developing the facts needed to excuse a procedural default." *Williams*, 45 F.4th at 723. However, *Shinn* set significant limits on *Cristin's* reach, which are discussed below.

the avoidance of default), and if the petitioner successfully showed that he could avoid his default, the court could then consider the evidence introduced at the hearing when it issued a de novo ruling on the merits of the underlying habeas claim. *See, e.g.*, *Shinn*, 596 U.S. at 373-75.

*Shinn* clarified that a federal habeas court cannot proceed that way. The Supreme Court held in *Shinn* that if a federal habeas court holds a hearing on whether a petitioner can overcome the default of a claim, *it may not also consider evidence introduced at that hearing in evaluating the merits of the underlying habeas claim unless the petitioner has satisfied one of § 2254(e)(2)'s narrow exceptions to AEDPA's general bar on evidentiary hearings*. 596 U.S. at 381-90; *id.* at 369 ("when a federal habeas court convenes an evidentiary hearing *for any purpose*, or otherwise admits or reviews new evidence *for any purpose*, it may not consider that evidence on the merits" when evaluating the default habeas claim "unless the exceptions in § 2254(e)(2) are satisfied.") (emphasis added). Accordingly, after *Shinn*, federal habeas court can no longer "'end-run' AEDPA by holding hearings on an excuse for procedural default, and then use the expanded federal record to decide the merits of a habeas claim." *Williams*, 45 F.4th at 723 (quoting *Shinn*, 596 U.S. at 389).

In light of *Shinn*, the Court of Appeals in *Williams v. Superintendent Mahanoy SCI*, 45 F.4th 713 (3d Cir. 2022) has instructed that now, before considering whether a petitioner can overcome a default of a claim, a federal habeas court must first decide whether the underlying defaulted habeas claim "succeeds considering *only the state court record*." *Id.* at 724 (emphasis added). If the court concludes that the underlying claim is not supported by the state court record, it "should deny relief without more." *Id.* That is, if the state court record alone does not allow the petitioner to succeed on the habeas claim, the court must skip a hearing on whether the petitioner can overcome the default "altogether and deny habeas relief" on the underlying habeas claim. *Id.* at 723-24; *see also id.* at 720 (explaining that the court "need not dwell" on whether the petitioner

can overcome his default if the petitioner cannot show that his trial counsel was ineffective when considering only the facts developed in state court.)[10]

Here, this Court cannot conclude, when considering only the state record, that Ebo is entitled to relief on either of his defaulted claims of trial counsel's ineffectiveness. Ebo has not directed the Court to any testimony or other evidence from trial counsel explaining why counsel did, or failed to do, the things Ebo faults him for. Because Ebo did not raise his claims during his PCRA proceeding, he did not utilize the procedures available to him during that proceeding to develop and introduce such evidence in a hearing before the PCRA court. Thus, on the state court record, *which Ebo failed to develop*, he cannot overcome the presumption that trial counsel rendered constitutionally adequate assistance. *Burt v. Titlow*, 571 U.S. 12, 23 (2013). ("[i]t should go without saying that the absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'") (quoting *Strickland*, 466 U.S. at 689); *Williams*, 45 F.4th at 726 ("we have no specific evidence of negligence [on the part of trial counsel] in the state court record, and *the absence of evidence cannot overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. We have no trial counsel testimony on the relevant issue.* The best evidence we have is that…trial counsel requested a voluntary manslaughter instruction before

---

[10] The Court of Appeals explained:

> While *Shinn* suggests that "[t]here are good reasons to doubt" our reading of the word "claim" in *Cristin*, it does not abrogate our holding that, generally, AEDPA's text does not forbid federal courts from developing the facts needed to excuse a procedural default. *Id.* at 1738. But *Shinn* does set limits on *Cristin's* reach. *Shinn* makes clear that, when a prisoner is at fault for failing to develop the record needed to support a constitutional claim on the merits in state court and cannot satisfy section 2254(e)(2)'s exceptions, federal courts may not consider evidence first gathered during an excuse hearing allowed by *Cristin* to decide the constitutional claim on the merits. *Id.* at 1738. *To avoid prolonging federal habeas proceedings, Shinn also instructs that in these cases, federal courts must skip hearings altogether and deny habeas relief unless the prisoner prevails on the merits considering only the state court record. Id.* at 1739.

*Williams*, 45 F.4th at 723-24 (emphasis added).

closing arguments, without supporting that instruction request with Rochon's testimony…. While that isolated request lends some circumstantial support to [the petitioner's] ineffective-assistance claim, it cannot overcome the strong presumption of reasonableness.") (emphasis added) (internal citation and quotations omitted).

Ebo's inability to add evidence to the record in this case because § 2254(e)(2) prohibits it is especially detrimental to his first claim for relief, in which he asserts that trial counsel was ineffective for failing to: object to the alleged hearsay evidence related to Richard Carpenter's identifications; assert that Ebo's rights under the Confrontation Clause had been violated; and move for a mistrial when Carpenter failed to appear at trial to testify. To satisfy his burden with respect to this claim, Ebo first would need to develop evidence, through testimony provided by his trial counsel, Crumbley's trial counsel, the prosecutor, investigators and other relevant witnesses to explain the context upon which this claim is based and why counsel did not object to the testimony at issue or request a mistrial. *Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.") (internal quotations and citations omitted).

Just as importantly, the Court would not be able to grant Ebo relief on this claim without first providing Respondents with the opportunity to challenge Ebo's evidence and introduce counter evidence of their own. It is never the burden of Respondents or the Court to locate a reasonably strategic basis for trial counsel's challenged conduct in the record, let alone on an *undeveloped record*. The burden to show counsel was ineffective is Ebo's and it always remains so. That is why evidentiary development is typically necessary to adjudicate a claim of counsel's ineffectiveness.

As for Ebo's second claim, which relates to trial counsel's alleged failure to ensure an adequate *Kloiber* instruction was given at trial (thereby allegedly depriving Ebo of his right to due process), Respondents have established that the instruction given by the trial court was appropriate under the circumstances. (ECF 10 at 52-59; *see also* Trial Tr. Vol. II at 1314-16 (where the trial court and defense counsel discuss the appropriate instruction to be given regarding Robinson's identification); *id.* at 1464-66 (where the trial court instructed, among other things, that when evaluating Robinson's testimony "[i]dentification testimony must be received with caution if the witness' positive testimony as to identity is weakened by her not identifying the defendants or identifying someone else as the criminals when shown photo arrays at various times before trial.") Considering the instructions given by the trial court as a whole, Ebo has not shown that there is a reasonable likelihood that the instructions given violated his due process rights. Since trial counsel cannot be found ineffective for failing to raise a meritless objection to the instructions given, Ebo cannot establish that trial counsel's "representation fell below an objective standard of reasonableness" for failing to object to the instruction or request a different one, or that he was prejudiced. *Strickland*, 466 U.S. at 688.

In conclusion, both of Ebo's grounds for relief are denied because they are procedurally defaulted. They also lack evidentiary support when evaluated under the closed, undeveloped state court record and therefore also fail on the merits on that record.

## III. Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from…the final order in a habeas corpus proceeding in which the detention complained

of arises out of process issued by a State court[.]" 28 U.S.C. § 2253(c)(1)(A). It also provides that "[a] certificate of appealability may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2).

"When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* Applying those standards here, jurists of reason would not find it debatable whether each of Ebo's claims should be denied for the reasons given herein. Accordingly, the Court will not issue a certificate of appealability on either of Ebo's grounds for relief.

## IV. Conclusion

Based on the above, the Court will deny the Petition and will deny a certificate of appealability with respect to each claim.

An appropriate Order follows.

Date: August 14, 2026

/s/ Patricia L. Dodge
PATRICIA L. DODGE
United States Magistrate Judge